DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for Nir Meir*
605 Third Avenue
New York, New York 10158
(212) 557-7200
ROBERT L. RATTET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

YH LEX ESTATES LLC,                                     District Court Index Number -

                                    Petitioner,

                    -against-                           Supreme Court – New York
                                                        County Index No. 151267/2022

NIR MEIR, RANEE A. BARTOLACCI, and
ERMITAGE ONE, LLC,

                                    Respondents.

-----------------------------------------------------------------x

<u>**NOTICE OF REMOVAL**</u>

**TO THE HONORABLE DISTRICT COURT JUDGE**
**ASSIGNED TO THESE PROCEEDINGS:**

Nir Meir ("Meir"), a party to the above action, by his attorneys, Davidoff Hutcher &

Citron LLP, respectfully provides notice to this Court of removal of the above-captioned special

proceeding (the "State Court Proceeding") from the Supreme Court of the State of New York,

County of New York (the "State Court"), to the United States District Court for the Southern

District of New York, and respectfully represents as follows:

1.      On February 10, 2022, YH Lex Estates LLC, ("YH" or "Plaintiff") commenced

an action (the "State Court Proceeding") against Meir, Ranee A. Bartolacci ("Bartolacci"), and

Ermitage One, LLC ("Ermitage") (collectively, where appropriate, "Defendants"). A copy of the

Petition, Order To Show Cause entered February 16, 2022 (the "February 16, 2022 Order To Show Cause"), Affirmation of Mark H. Hatch-Miller In Support of said Order To Show Cause, and supporting Exhibits are collectively annexed hereto as Exhibit "1".

2.      The State Court Proceeding has been assigned Index Number 151267/2022 in the State Court.

3.      Exhibit "1" constitutes the pleadings in the State Court Proceeding. Any further documents will be provided to this Court or the Bankruptcy Court on request.

4.      The State Court Proceeding seeks an order pursuant to CPLR §§ 5225(a) and (b) compelling Bartolacci and Ermitage to turnover property in their possession which YH alleges was initially fraudulently conveyed by Debtors EAM 40 Meadow Lane LLC and EZL 40 Meadow Lane LLC (the "Debtors") to Bartolacci and Ermitage.

5.      On April 6, 2022, the Debtors filed a Notice of Removal of the State Court Proceeding with this Court, assigned Case no. 22-cv-2836. However, the Debtors intend to immediately withdraw such removal in light of, inter alia, the instant removal herein.

6.      Meir is a principal of each of the Debtors, which Debtors are owners of the causes of action in the State Court Proceeding underlying the alleged fraudulent transferors, and on April 6, 2022 filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, District of Delaware, under Case Nos. 22-10293 and 22-10294, respectively.

7.      This Notice of Removal is being timely filed pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. §1452.

8.      This civil action, as removed, is a "core proceeding" within the meaning of 28 U.S.C §157(b)(2)(A), (B), (F), (G), (H), and (O) in that the action concerns the (i) disposition of

causes of action that constitute property of the Debtors' estates; (ii) determination of a claim of

Plaintiff, a creditor, against Meir and Bartolocci, which claims constitute property of the

Debtors' estates, and determination of ownership of those claims; (iii) ability of the Debtors'

estates to dispose of such claims; and (iv) ability of the Debtors' estates, and Meir's interests

therein, to be properly administered under Chapter 7 of the Bankruptcy Code.

9.      The Debtors are the initial transferors of the alleged fraudulent conveyances and

owners of the underlying claims which are the subject of the State Court Proceeding. The State

Court Proceeding seeks, in substance, to set aside certain transfers initially made by the Debtors

which YH alleges were fraudulent.    These types of actions or special proceedings are inherently

property of the Debtors' estates. See, e.g. In re Barkany, 542 B.R. 662, 688 (Bankr. E.D.N.Y.

2015):

> "Only the trustee has standing to pursue such claims postpetition
> for the benefit of a debtor's bankruptcy estate. As such, creditors
> do not have standing postpetition to pursue a fraudulent
> conveyance action against the recipients of an avoidable transfer of
> a debtor's property. Keene Corp., 164 B.R. at 851 (noting that with
> respect to claims against those who have misused the debtor's
> property, "[t]he Bankruptcy Code authorizes the trustee to
> prosecute such claims for the benefit of all creditors, and
> necessarily deprives individual creditors of standing to pursue the
> same claims for their sole benefit"); St. Paul Fire and Marine Ins.
> Co. v. PepsiCo., Inc., 884 F.2d 688, 701–02 (2d Cir.1989)."

See also In re Ideal Mortg. Bankers, Ltd., 539 B.R. 409, 433 (Bankr. E.D.N.Y. 2015)((citing)

"*Keene Corp. v. Coleman (In re Keene),* 164 B.R. 844, 851 (Bankr.S.D.N.Y.1994) (noting that

with respect to claims against those who have misused the debtor's property, "[t]he Bankruptcy

Code authorizes the trustee to prosecute such claims for the benefit of all creditors, and

necessarily deprives individual creditors of standing to pursue the same claims for their sole

benefit"); *St Paul Fire and Marine Ins. Co. v. Pepsi Co., Inc.,* 884 F.2d 688, 701–02 (2d

3

Cir.1989);  In re Keene Corp., 164 B.R. 844, 850 (Bankr. S.D.N.Y. 1994); In re Madoff, 848 F.

Supp. 2d 469, 487 (S.D.N.Y. 2012), aff'd sub nom, In re Bernard L. Madoff Inv. Sec. LLC, 740

F.3d 81 (2d Cir. 2014).

10.    The Debtors' estates will, in the context of this removed action and likely other

adversary proceedings, need to prosecute and/or resolve the claims in the State Court Proceeding

for the benefit of all of their creditors and equity interest holders including Meir.

11.    Pursuant to 28 U.S.C. Section 1334(d) and the Amended Standing Order Of

Reference of the United States District Court for the Southern District of New York

electronically filed February 1, 2012, 12 Misc.00032, issued pursuant to 28 U.S.C. §157, the

Bankruptcy Court has jurisdiction over, inter alia, (a) property of the Debtors' estates and (b)

allowance and disallowance of claims.

12.    However, since the bankruptcy proceedings are pending in the District of

Delaware, upon removal Meir will promptly seek to transfer this civil action to the United States

District Court for the District of Delaware, and thereafter will seek referral of this matter to the

Bankruptcy Court for the District of Delaware.

13.    Bankruptcy Court determination of these issues is crucial, since the automatic stay

prohibits further action by the State Court in retrieval of fraudulent conveyances belonging to the

Debtors' estates.

14.    Specifically, the ability of the Debtors' Chapter 7 estates to liquidate and be

administered in an orderly manner is based upon the centralization of litigation in one forum.

15.     This action, as removed to this Court, is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. Section 1334 and is one which may be removed to this Court by Meir pursuant to the provisions of 28 U.S.C. Section 1452, in that the matter in controversy is a civil action related to a bankruptcy case.

Dated:    New York, New York
          April 7, 2022

                              DAVIDOFF HUTCHER & CITRON LLP
                              *Attorneys for Nir Meir*
                              605 Third Avenue
                              New York, New York 10158
                              (212) 557-7200


                                  */s/ Robert L. Rattet*
                              By:_____
                                  ROBERT L. RATTET

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

YH LEX ESTATES LLC,

                      Petitioner,

       - against -

NIR MEIR, RANEE A. BARTOLACCI and ERMITAGE ONE, LLC,

                  Respondents.

---

Index No.:

**VERIFIED PETITION PURSUANT TO CPLR §§ 5225(a) AND (b) FOR DELIVERY OF PROPERTY IN THE POSSESSION OF RESPONDENTS**

TO THE SUPREME COURT OF THE STATE OF NEW YORK:

    Petitioner/Judgment Creditor YH Lex Estates LLC ("YH") by and through its undersigned counsel, alleges in this Verified Petition, as follows:

## NATURE OF THE PETITION

1.       This Petition is brought by Judgment Creditor YH pursuant to CPLR Article 4 and CPLR §§ 5225(a) and (b) and 5227, and New York's Consolidated Debtor and Creditor Law (the "DCL") Article 10, § 270 *et seq.*,[1] to (a) set aside Defendant/Judgment Creditor Nir Meir's ("Meir") fraudulent, voidable transfers of money or property to his wife Ranee A. Bartolacci ("Bartolacci") and Bartolacci's single member entity, Ermitage One LLC ("Ermitage"), (b) obtain a money judgment against Bartolacci and Ermitage for the value of any voidable transfers that she or Ermitage have since liquidated, and, (c) for an order of costs and fees against Bartolacci, described herein.

2.       This proceeding arises from YH's efforts to enforce a June 15, 2021 judgment (the "Judgment") against Meir for the sum $19,742,959.81.

3.       This proceeding involves an intra-spousal fraudulent conveyance scheme by and between Meir and Bartolacci, both of whom fled New York to avoid the nearly $20 million Judgment against Meir.

4.       The fraudulent transfers described herein were made by Meir to Bartolacci and Ermitage with the actual intent to hinder, delay and defraud YH.

---

[1] New York adopted the Uniform Voidable Transactions Act, effective on April 4, 2020, and the 95-year-old fraudulent conveyance law embodied in Article 10, Sections 270-281 of the DCL was replaced with new DCL Sections 270-281.

2

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 8 of 109

5.      Specifically, Meir's transfer of more than $12.5 million of the net sale

proceeds from the sale of his $43 million mansion located at 40 Meadow Lane,

Southampton, New York ("40 Meadow Lane") on April 5, 2021, together with various

luxury vehicles, to Bartolacci and Ermitage for no, or nominal consideration, on the

eve of the Court granting summary judgment to YH against Meir—or, in the case of

the vehicles, after the Court had already entered summary judgment against Meir—is a

fraudulent conveyance under the DCL.[2]

6.      Meir's transfers to Bartolacci and Ermitage were made after a substantial

debt had been incurred by Meir in favor of YH; were made for no, or nominal

consideration; Meir proactively concealed the transfers; Meir had already been sued by

YH before certain transfers were made; the transfers were of substantially all of Meir's

assets, purportedly leaving Meir insolvent or nearly insolvent and, yet, Meir and

Bartolacci now reside in a $150,000-per-month rental property in Miami Beach,

Florida; and, remarkably, through his counsel, Meir effectively admitted that his

ultimate intent was to defraud YH, as his creditor.

7.      In this conversion of the pending CPLR § 5225(a) proceedings against

Meir, which was denied without prejudice to YH's pursuit of CPLR § 5225(b)

proceedings including Bartolacci, as authorized by the Court at the hearing on January

31, 2022 and in its written order of February 3, 2022, under Index No. 655980/2020

---

[2] Meir and Bartolacci were aided and abetted in this scheme by their joint New York

3

(all docket entries referenced herein are in that related action), YH seeks to set aside

Meir's voidable conveyance of cash to Bartolacci in the amount of $10,587,387.52 and

to Ermitage in the amount of $2,000,000, from the 40 Meadow Lane net sale proceeds,

and to also set aside Meir's voidable conveyance of his fleet of luxury vehicles to

Bartolacci and/or Ermitage, or to otherwise disregard such conveyances and levy

execution upon the property conveyed and the proceeds thereof.

## BACKGROUND

8.      On November 3, 2020, YH commenced the underlying lawsuit against

Meir by motion for summary judgment in lieu of complaint pursuant to CPLR 3213

with respect to Meir's personal guaranty of loans that YH had made to H F Z Capital

Group LLC ("HFZ").

9.      On April 12, 2021, this Court granted summary judgment against Meir;

the Judgment was entered on June 15, 2021.

10.     Through post-judgment discovery, YH discovered that well over $12.5

million in fraudulent and, thus, voidable cash and property transfers were made by

Meir to Bartolacci and Ermitage.

## THE RESPONDENTS

11.     Meir, age 47, an individual, was domiciled and resident in the State of

New York at the time the fraudulent conveyances described herein were made in New

---

attorneys, the law firm Davidoff Hutcher & Citron LLP ("DHC").

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 1

INDEX NO. 151267/2022
RECEIVED NYSCEF: 02/10/2022

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 10 of 109

York, and thereafter relocated to Florida. Meir now maintains his primary residence at 1826 West 23rd Street, Miami Beach, Florida 33140. At all relevant times, Meir was Bartolacci's husband.

12.    Bartolacci, age 48, an individual, was domiciled and resident in the State of New York at the time the fraudulent conveyances described herein were made in New York, and thereafter relocated to Florida. Bartolacci now maintains her primary residence at 1826 West 23rd Street, Miami Beach, Florida 33140. At all relevant times, Bartolacci was Meir's wife.

13.    Ermitage is a Florida limited liability company formed on July 8, 2021, by DHC, with its principal registered office at DHC's offices at 605 Third Avenue, New York, NY 10158. Ermitage is the successor-in-interest by merger to a New York limited liability company of the same name that was formed in New York by DHC on March 26, 2021 ("Ermitage (New York)"). After the receipt of voidable conveyances from Meir set forth herein, Ermitage (New York) was merged into Ermitage on August 12, 2021. With DHC's assistance, the Ermitage entities were formed and then merged to provide Meir and Bartolacci with the conduit to remove the proceeds of the sale of 40 Meadow Lane from New York State and, thus, evade the Judgment.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Meir's Breach of his $20 Million Personal Guaranty

14.    Between May 15, 2017, and May 3, 2019, YH loaned HFZ the sum of

5

$20,050,000, pursuant to a multi-tranche convertible loan reflected in a series of promissory notes, with respect to a potential mixed residential/commercial development project on the Upper East Side of Manhattan.

15.    After HFZ failed to repay the promissory notes as they matured, Meir and Feldman provided personal guaranties to YH in November 2019 and provided a restated personal guaranty to YH in July 2020.

16.    When HFZ was unable to repay the notes according to the parties' amended agreement, YH sent a series of default notices to Meir advising him of his absolute, unconditional liability under his personal guaranty and that a lawsuit would be filed against Meir imminently, including via default notices dated August 12, 2020, August 24, 2020, September 1, 2020, October 18, 2020, and October 30, 2020.

17.    Notwithstanding the default notices to HFZ and Meir, as personal guarantor, no further payments were forthcoming and, on November 3, 2020, YH commenced the underlying action to compel payment of the debt.

**Meir's Ownership of 40 Meadow Lane**

18.    Meir's ownership of 40 Meadow Lane was established conclusively by the Court at a hearing on January 31, 2022.

19.    Meir is judicially and equitably estopped from challenging his 100% ownership of 40 Meadow Lane, despite Meir's audacious plan to conceal his ownership through a sham "transfer" to Bartolacci of an interest in an entity holding

indirect title to the property.

20.      By way of background, Meir originally entered the contract to purchase

40 Meadow Lane in his own name, which HFZ was to purchase for Meir as part of his

compensation.

21.      Before closing the purchase, HFZ's attorneys formed a Delaware limited

liability company named EAM 40 Meadow Lane LLC ("EAM") to hold title to 40

Meadow Lane.  Under EAM's original limited liability company agreement, dated as

of June 2013, HFZ was the sole member.

22.      However, on December 30, 2013, HFZ then transferred 50% of its

ownership interest in EAM to Meir as compensation. That same day, EAM amended

its limited liability company agreement in a document titled "Second Amended and

Restated Limited Liability Company Agreement", dated as of December 30, 2013, to

reflect the fact that it was now owned equally by Meir and HFZ (the "Second

Amendment").

23.      On March 5, 2019, EZL 40 Meadow Lane LLC ("EZL") was formed

under the laws of Delaware on Meir's behalf by HFZ's attorneys to own and hold

membership interests in EAM. Pursuant to the EZL operating agreement dated March

21, 2019 (the "original EZL Operating Agreement"), Meir was the sole member of

EZL.

24.      On March 21, 2019, Meir transferred his 50% ownership interest in EAM

7

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/10/2022
22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 13 of 109

to EZL, while HFZ concurrently transferred 45% of its remaining 50% ownership interest in EAM to EZL as compensation to Meir, rendering Meir the 100% owner of EZL.

25.    That same day, EAM amended its operating agreement to reflect the fact that it was now owned 95% by EZL and 5% by HFZ (the "EAM Third Amendment"). Thus, through EZL, Meir was the 95% beneficial owner of 40 Meadow Lane and the Managing Member of EAM.

26.    Thereafter, HFZ transferred its remaining 5% of EAM directly to Meir's individual name, rendering Meir the 100% beneficial owner of all right, title and interest in and to 40 Meadow Lane.

27.    Relying on the foregoing transfers and the original EZL Operating Agreement, Meir repeatedly declared and represented to others that he was the sole beneficial owner of 40 Meadow Lane, including in court filings, in real estate transaction documents, in verified statements to tax authorities, in sworn settlement agreements, and in indemnity agreements.

28.    Nevertheless, as part of a fraudulent conveyance scheme, and contrary to the overwhelming record evidence, Meir concocted and then doubled down on an audacious fraud scheme, creating a sham second EZL operating agreement as an

8

excuse to justify transferring proceeds from the sale of 40 Meadow Lane to Bartolacci.[3]

29.    Documents produced by Meir with respect to the sham EZL operating agreement—after months of Meir's evasion of the judgment enforcement subpoenas served upon him in June 2021—demonstrate the following: *First*, the sham operating agreement was created on October 20, 2020, when HFZ was collapsing and Meir knew he was about to be sued by YH, and after Meir had sought to extract additional cash from his remaining equity in 40 Meadow Lane through various personal loan and refinancing transactions; *second*, the document was prepared by an attorney named Daniel Dwyer, then of Meister Seelig & Fein LLP, but who on information and belief is no longer associated with that firm; *third*, the sham operating agreement was purportedly executed on October 21, 2020, but fraudulently back-dated to March 2019; *third*, there is no documentary evidence confirming Bartolacci's participation in, knowledge of, or even signing of the sham document; *fourth*, even after Dwyer and Meir created the sham operating agreement in October 2020, Meir and his other attorneys thereafter continued to rely on the original EZL Operating Agreement in the contemplated refinancing, and for all legal purposes thereafter, up to and including the sale of 40 Meadow Lane, and in Suffolk County Supreme Court as well as the

---

[3] Bartolacci has further exacerbated the costs to YH through her misuse and abuse of judicial process by filing a forum-shopping action in Florida seeking to declare the

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 1

INDEX NO. 151267/2022
RECEIVED NYSCEF: 02/10/2022

22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document
Pg 15 of 109

proceedings before this Court in 2021; *fifth*, during the same time period when Meir's attorneys at DHC represented to this Court in connection with YH's attachment motion and TRO application that Meir alone owned 40 Meadow Lane and that the proceeds from the same were "not going anywhere," DHC secretly assisted Meir in directing the distribution sale proceeds to Bartolacci and Ermitage on April 5, 2021, and DHC took an unusually large fee for that assisting role; and *sixth*, after the fraudulent distribution, Meir and DHC disclosed the sham second operating agreement and began relying on it as a supposed justification for the improper distribution.

### The Fraudulent Conveyance Scheme

30.     With the purpose of avoiding his debt to YH, and with further knowledge that a decision granting summary judgment against Meir was imminent, Meir, with the assistance of DHC, thereafter initiated a series of fraudulent transactions, to secret away millions of dollars from New York and, thus, obstruct YH's ability to satisfy its soon-to-be-entered Judgment.

31.     The fraudulent transfers described herein were made by Meir to Bartolacci and Ermitage in New York. At all times relevant to the voidable transactions at issue in this proceeding, Meir and Bartolacci were domiciled in New York and Ermitage, a New York entity, maintained its principal offices at DHC's offices in New York. And despite Bartolacci's and Ermitage's (via merger) subsequent

sham second EZL operating agreement as valid, in a transparent effort to avoid the

10

moves to Florida, Ermitage continues to maintain its principal offices at DHCs offices in New York. Further, all of the voidable conveyances at issue in this proceeding were effectuated exclusively in New York, by, between and among New York transgressors, and all of the transfers caused injury to YH in New York.

32.     Meir's effort to avoid his guaranty obligation to YH, and later deny YH enforcement of its pending Judgment against him began in March 2021, and involved, at first, a series of undisclosed fraudulent transactions related to 40 Meadow Lane.

33.     On March 24, 2021, YH's counsel wrote to Mr. Meir's counsel, DHC, that, "We recently learned that your client Nir Meir has stipulated to the dismissal of a notice of pendency filed in the EAM 40 Meadow Lane LLC matter in Suffolk County Supreme Court. Please respond as soon as possible confirming that your client Mr. Meir has not, and will not during the pendency of our case against him, assign, dispose of, encumber, or otherwise transfer his direct or indirect interest(s) in the 40 Meadow Lane property. We reserve all rights."

34.     DHC failed to respond and, during the week of their silence, formed Ermitage (New York) for Bartolacci.

35.     Absent any response, YH made application to the Court by order to show cause, on March 30, 2021, requesting a temporary restraining order and order of attachment (the "TRO proceeding") with respect to the sale of 40 Meadow Lane.

---

evidentiary hearing that was held in this Court on January 31, 2022.

36.     A hearing was held on the TRO proceeding on March 31, 2021.

37.     During the March 31, 2021 hearing, the Court was troubled that the money from the sale of an asset valued in excess of $43 million might not be available to satisfy YH's then imminent Judgment (summary judgment arguments were scheduled just days later). To assuage the Court's concerns, Meir, through his counsel, made representations to the Court indicating and assuring that the net sale proceeds would remain available to satisfy any judgment to YH.

38.     Properly relying on counsel for Meir's representations made on behalf of Meir, as officers of the court, the Court denied YH's request for a TRO.

39.     Post-judgment discovery has revealed that counsel for Meir's representations to the Court were misleading. Indeed, post-judgment discovery exposed the fact that, contrary to their representations to the Court, Meir and his attorneys were, at that very moment, assisting Meir's efforts to transfer the net sale proceeds to Bartolacci and Ermitage.

40.     Despite counsel for Meir having represented on the record on March 31, 2021, that the sale of the 40 Meadow Lane Property was only "a contemplated sale [and that t]here is no specific timetable established yet," the truth was that Meir and his attorneys had attempted to close the sale transaction (together with the sale of its $1 million in personal property contents) that *very same day* but were unsuccessful in doing so, including because they had provided the title company and the purchaser's

12

attorney with contradictory information about the ownership of 40 Meadow Lane.

41.    Counsel for Meir apparently admitted to counsel for co-Defendant HFZ the very next day that the timing of the sale was no coincidence. On April 2, 2021, counsel for HFZ laid bare Meir's counsel's admission as to Meir's fraudulent scheme in an email: "You also admitted that you need to close by Monday, not because the buyer will walk, but because your client wants to take the money before a judgement is entered against him on Tuesday in the YH matter. Intent to defraud creditors?  Aiding and abetting?"

42.    The rushed closing of the sale of 40 Meadow Lane was for the express purpose of engaging in a series of fraudulent and voidable transactions made with the intent to hinder, delay, and defraud YH as Meir's creditor. Yet, despite counsel for HFZ's accurate warning to Meir's counsel that their involvement was aiding and abetting Meir's plan to defraud YH, they still marched forward to close the sale of the 40 Meadow Lane on April 5, 2021, while YH's attachment motion was still pending, for a grand total of $44,009,900. Meir, Bartolacci and their joint counsel then took steps, supposedly justified by the sham second operating agreement, to conceal and secret away Meir's assets, to avoid Meir's guaranty obligation and the imminent Judgment against him. Counsel for Meir provided this assistance to Meir even though they knew that Meir had only days earlier disavowed the sham operating agreement, whereupon they represented to the title insurance company that any reference to

13

Bartolacci having an interest in EZL, EAM or 40 Meadow Lane was erroneous, and, at the same time, they assisted Meir in executing an indemnification agreement and tax verification forms as sole beneficial owner of 40 Meadow Lane.

### Meir's Fraudulent and Voidable Transfers to Bartolacci and Ermitage

43.     Meir and his counsel conspired to pay net sale proceeds of the 40 Meadow Lane closing directly to Bartolacci and Ermitage (plus an unusually large payment to DHC) in order to quickly dissipate such funds and avoid Meir's guaranty obligation, and thereby obstruct and frustrate YH's efforts to collect its imminent judgment.

44.     Meir's planned fraudulent distribution scheme, which purposefully bypassed EAM's and EZL's corporate formalities, was so unusual that purchaser's counsel and the title company did not want to be involved in what appeared to be a direct attempt to deceive YH. The title company and purchaser's counsel therefore demanded that all net sale proceeds be made directly to EAM, as the Seller, or DHC, as Escrow Agent, having "assum[ed] some illegitimate purpose for these payments…"

45.     However, Meir and his attorneys insisted that payments be made directly to Bartolacci and Ermitage, based on Meir's claimed sole right to direct such payments.

46.     To protect against their potential liability to YH for actively participating in fraudulent distributions to avoid the guaranty, the title company required that Meir

execute, at closing, an Indemnity and Escrow Agreement escrowing $300,000 for any "Future Actions" by YH as against the title underwriter, AmTrust Title Insurance Company, and its title agent, Advantage Title Agency, Inc.[4]

47.     Having appeased the title company and the purchaser's counsel, Meir then initiated, on April 5, 2021, the first of several fraudulent and voidable transactions to Bartolacci and Ermitage, amounting to nearly $13 million.

48.     Prior to the April 5, 2021 distributions described below, 100% of the proceeds from the sale of 40 Meadow Lane belonged to Meir, and were being held by the title insurance company on his behalf prior to the distributions made at his direction.

49.     *First*, on April 5, 2021, out of the net sale proceeds, Meir directed that the purchaser wire-transfer the sum of $2,000,000 directly to Ermitage, which had no

---

[4] The Indemnity and Escrow Agreement, dated April 5, 2021, the date of the closing, renders clear that everyone recognized, at that time, that the payments outside EAM's corporate formalities were for the express purpose of avoiding claims by YH and that it may place a "cloud" on title to the 40 Meadow Lane Property:  "WHEREAS, YH LEX ESTATES LLC has filed an action in the Supreme Court of the State of New York, County of New York, Index NO. 655980/2020, against Indemnitor [Nir Meir], Ziel Feldman and HFZ CAPITAL GROUP, LLC ("Action"); WHEREAS, Indemnitees are concerned that there could be future legal actions arising from the Action and any other future legal actions related or unrelated to the Action commenced by parties with business dealings with Indemnitor (collectively, "Future Actions"); WHEREAS, AmTrust and Agent have been asked to provide title insurance to Purchaser and are willing to provide such title insurance and to issue an owner's title policy ("Title Policy") to Purchaser free and clear of any exception in respect of any rights or claims arising from the Action and Future Actions affecting title to the

right, title or interest in or to EAM or its Managing Member, EZL, or 40 Meadow Lane.

50.     Neither Meir, nor EAM, nor EZL received any economic value from Ermitage in exchange for this $2,000,000 cash distribution to Ermitage.

51.     Ermitage, which was then an unfunded New York limited liability company, had nothing to give Meir in exchange, since DHC had formed it on March 26, 2021, using DHC's New York office address as its business address.

52.     Ultimately, Ermitage was merged into the Florida successor entity, as part of Meir and Bartolacci's fraud scheme and has provided a conduit for Meir and Bartolacci to hide the remaining proceeds of the sale of 40 Meadow Lane.

53.     Thus, the wire transfer to Ermitage of $2,000,000 is a fraudulent and voidable transaction.

54.     *Second*, on April 5, 2021, out of the net sale proceeds, Meir also directed that the purchaser wire-transfer the sum of $10,587,387.52 directly to Bartolacci, who had no right, title, or interest in or to EAM, EZL or 40 Meadow Lane. In fact, Meir and DHC had expressly represented to the title company, purchaser's counsel, and the Suffolk County Supreme Court that Bartolacci was not an owner of 40 Meadow Lane.

55.     Meir, EAM, and EZL did not receive any economic value from Bartolacci in exchange for this cash distribution to her.

Property provided that Indemnitor shall execute and deliver this Agreement to

16

56.     Thus, Meir's wire transfer to Bartolacci of $10,587,387.52 is a fraudulent and voidable transaction.

57.     Rather than immediately disclosing the foregoing distributions of nearly $13 million to Bartolacci and Ermitage, Meir's counsel misled the Court, in furtherance of Meir's scheme to evade his debt to YH, when, one week after the closing, during another hearing before the Court on April 12, 2021 as well as in a brief filed that day, DHC again falsely indicated to the Court that the net sale proceeds had not been disposed of and that there had been no attempt to shield them from YH.

### Bartolacci's and Ermitage's Role in the Disappearance of the Closing Proceeds

58.     While record title ownership required that the 40 Meadow Lane net sale proceeds be distributed 95% to EAM and 5% to Meir, EAM was entirely bypassed. Rather, on April 5, 2021, out of the 40 Meadow Lane net sale proceeds, Meir fraudulently transferred $10,587,387.52 directly to Bartolacci and Meir fraudulently transferred $2,000,000 directly to Ermitage.

59.     The $10,587,387.52 in funds that Meir fraudulently transferred to Bartolacci were wired to Bartolacci's JPMorgan Chase Bank, N.A. ("Chase") Account ending in -5760. From there, Bartolacci then dissipated the funds down to $605.47 with the intent to hinder and defraud YH.

60.     The $2,000,000 in funds that Meir fraudulently transferred to Bartolacci

Indemnitees."

were wired to Ermitage's Chase Account ending in -0193. Meir delayed Chase's production of records from this account by filing a baseless motion to quash, which was denied on February 3, 2022.

61. Despite Meir, Bartolacci and DHC's refusal to reveal the full details of the dissipation of the $12,587,387.52 through their efforts to block all post-judgment discovery, YH has successfully traced the following funds:

- On April 28, 2021, Bartolacci transferred away the sum of $1,625,000 to an attorney trust account *in Florida* to fund the prepayment of rent for Meir's and her Miami Beach luxury rental property;

- Bartolacci transferred approximately $5 million to the Ermitage Chase Account ending in -0193 and, from there, transferred approximately $3.75 million to an account in the name of Ermitage at Morgan Stanley; and

- Ermitage transferred at least $3.7 million back to Meir after April 2021.

62. Nonetheless, almost $5.7 million of funds that passed through Ermitage are unaccounted for. YH reasonably infers that Ermitage was created to serve as the primary pipeline for the concealment and use of the fraudulently transferred funds. Upon information and belief, in a perpetuation of the Ermitage charade, Meir and

18

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 1
INDEX NO. 151267/2022
RECEIVED NYSCEF: 02/10/2022
22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document
Pg 24 of 109

Bartolacci have now caused the remaining balance in the Ermitage accounts to be transferred to Applied Bank, a bank in Delaware that appears to advertise itself as a haven for asset protection schemes.

63.     In advance of summary judgment and the Judgment, DHC initially formed Ermitage as a New York limited liability company on March 26, 2021, which was only ten days prior to the 40 Meadow Lane closing and only five days before March 31, 2021 TRO hearing in the underlying case.

64.     However, on July 8, 2021, Judgment was entered, DHC then formed a second Ermitage entity, as a Florida limited liability company. And, on July 29, 2021, DHC then merged Ermitage (New York) into Ermitage (Florida), thereby enabling Meir and Bartolacci to secretly move all of Ermitage's assets outside the jurisdiction and evade the Judgment.

65.     Worse still, DHC formed Ermitage (Florida) and merged all its assets into this Florida entity shortly after counsel for Meir made a separate representation, as an officer of the Court, to a Justice of the Appellate Court, that there would be no transfers from *any* Meir accounts, including any accounts under Meir's custody or control.

66.     This cycle of transactions—from the net sale proceeds of the 40 Meadow Lane to Bartolacci and Ermitage, and then in some instances back to Meir for his own use, all under concealment—lacked economic substance. Rather, these transfers were

19

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 25 of 109

designed to avoid having EAM transfer the 40 Meadow Lane Property net sale proceeds directly to their true beneficial owner, Meir, but to still permit Meir to use the net sale proceeds.

### Meir's Voidable Conveyances of Luxury Automobiles

67.    As more fully detailed below, after the decision on the summary judgment motion on April 12, 2021, and before the Clerk's entry of the Judgment on June 15, 2021, Meir engaged in other fraudulent and, thus, voidable transactions with respect to transferring the titles of his fleet of luxury cars to Bartolacci and Ermitage.

68.    Once Judgment was entered, Meir and Bartolacci attempted to secretly auction away their luxury cars through eBay and small New Jersey- and California-based car brokers in order to further dissipate their assets.

69.    The facts of Meir's fraudulent conveyances with respect to his fleet of luxury vehicles have been fully documented in Motion Sequence No. 18, NYDCEF Doc. Nos. 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530 and 591-592, which are incorporated herein by reference, as follows:

- 2010 blue convertible Aston Martin (the "Aston Martin") (registered to Meir): Without a shred of proof, Meir claims to have encumbered the vehicle up to 100% of its value.

- 2001 Mercedes-Benz G500 Cabriolet: Purchased by Meir in September 2020, Meir has disclosed a facially invalid, undated document purporting to show "reassignment of ownership" to Bartolacci.

20

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/10/2022
22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 26 of 109

- <u>2018 Porsche GT2</u>: Meir purchased the Porsche on the day of the closing of the sale of 40 Meadow Lane and then purportedly re-registered the vehicle to Ermitage, for no consideration, on May 14, 2021.

- <u>2019 Porsche 911</u>: Meir re-registered this vehicle in the name of Ermitage, for no consideration, on May 14, 2021.

- <u>2021 Mercedes-Benz GLS63 AMG</u>: This vehicle was purchased in the name of Bartolacci from the 40 Meadow Lane net sale proceeds that were fraudulently conveyed to Bartolacci.

## <u>FIRST CAUSE OF ACTION</u>
(Turnover under CPLR § 5225(a) against Meir)

70.     YH repeats and realleges the foregoing allegations as if fully set forth herein.

71.     Meir is the sole beneficial owner of EAM and EZL.

72.     The aggregate current fair market value of EAM and EZL is currently less than the Judgment.

73.     Meir executed an agreement with the title company for the closing directing that $300,000 of the 40 Meadow Lane net sale proceeds be held pursuant to the Indemnity and Escrow Agreement, dated April 5, 2021, as a specific fund for Future Actions by YH against the title company; those funds are scheduled to be released one year after the agreement.

74.     Meir is the title owner of a 2010 blue convertible Aston Martin.

75.     By reason of the foregoing, YH is entitled to judgment and order

declaring that it holds all right, title and interest in EAM and EZL as well as the

$300,000 currently held in escrow with the title company, and to the Aston Martin

automobile, and Meir shall immediately deliver to YH any and all other funds in

accounts belonging to EAM and EZL, and all other tangible and intangible assets of

EAM and EZL, and shall provide an accounting thereof, and shall immediately assign

all right, title and interest to the $300,000 escrow deposit and agreement to YH and, as

such, relinquishing the payment of such funds to him, and shall execute the necessary

transfer of ownership forms, and pay all applicable title transfer fees and taxes in

connection with the Aston Martin.

### SECOND CAUSE OF ACTION
(Turnover under CPLR § 5225(b) and DCL §§273 and 274)

76.     YH repeats and realleges the foregoing allegations as if fully set forth

herein.

77.     DCL Section 273 (Transfers or obligations voidable as to present or

future creditor) provides that conveyances and obligations incurred with the actual

intent to hinder, delay, or defraud a creditor or without receiving a reasonably

equivalent value in exchange for the transactions is voidable as to both present and

future creditors.

78.     DCL § 274 (Transfers or obligations voidable as to present creditor)

provides that a transfer made by a debtor is voidable as to a creditor whose claim arose

before the transfer and the transfer was made without receiving reasonably equivalent value or was made to an insider.

79. Each of the transfers of cash from the net sale proceeds of the sale of 40 Meadow Lane to Bartolacci and Ermitage were made with the actual intent to hinder, delay, or defraud YH.

80. Each of the foregoing conveyances were also made without the debtor receiving a reasonably equivalent value in exchange for the transactions and is therefore voidable.

81. YH's claim against Meir arose prior to the transfers to Bartolacci and Ermitage, described herein; each transfer was made without Meir receiving reasonably equivalent value; each transfer was made to an insider; and therefore each transfer is voidable.

82. Each of the foregoing transfers were made with the actual intent to hinder, delay, or defraud YH, as demonstrated by the numerous badges of fraud (per DCL § 273(b)) including, but not limited to, the following:

- The transfers were concealed from YH.

- The transfers were made after the debt from Meir to YH was incurred and were made after YH sued Meir.

- The transfers were of substantially all of Meir's assets.

23

- The debtor and the transferees fled the jurisdiction and removed concealed assets from the jurisdiction.

- The value of the consideration received by the debtor from the transferees was not reasonably equivalent to the value of the assets transferred by the debtor to the transferees.

- The debtor was insolvent or became insolvent shortly after the transfers were made.

83.     Bartolacci and Ermitage knowingly received the foregoing transfers in willful and wanton derogation of YH's rights as a creditor of Meir.

84.     By reason of the foregoing, YH is entitled to a judgment and order setting aside the foregoing transfers as voidable fraudulent conveyances, and/or a judgment and order directing Bartolacci and Ermitage to immediately pay to YH the total sum $12,587,387.52, including an order directing Ermitage to pay to YH all sums received directly from the closing of the sale of 40 Meadow Lane, and all sums received indirectly from Bartolacci, or to deliver to YH the value of the assets fraudulently conveyed, plus profits thereon in an amount to be determined by the Court, plus interest from the date of each transfer, together with punitive damages.

### THIRD CAUSE OF ACTION
(Turnover under CPLR § 5225(b) and DCL §§273 and 274)

85.     YH repeats and realleges the foregoing allegations as if fully set forth herein.

86.     Each of the transfers of title to the following luxury vehicles, as described in Paragraph 69 above, were made with the actual intent to hinder, delay, or defraud YH:

- 2001 Mercedes-Benz G500 Cabriolet
- 2018 Porsche GT2
- 2019 Porsche 911
- 2021 Mercedes-Benz GLS63 AMG

87.     Each of the foregoing conveyances were also made without the debtor receiving a reasonably equivalent value in exchange for the transactions and is therefore voidable.

88.     The claim of YH against Meir arose prior to the transfers to Bartolacci and Ermitage, described herein; each transfer was made without Meir receiving reasonably equivalent value; each transfer was made to an insider; and therefore each transfer is voidable.

89.     Each of the foregoing transfers were made with the actual intent to hinder, delay, or defraud YH, as demonstrated by the numerous badges of fraud including, but not limited to, the following:

- The transfers were concealed from YH.

- The transfers were made after the debt from Meir to YH was incurred and were made after YH sued Meir.

- The transfers were of substantially all of Meir's assets.

25

- The debtor and the transferees fled the jurisdiction and removed concealed assets from the jurisdiction

- The value of the consideration received by the debtor from the transferees was not reasonably equivalent to the value of the assets transferred by the debtor to the transferees.

- The debtor was insolvent or became insolvent shortly after the transfers were made.

90.    Bartolacci and Ermitage knowingly received the transfers in willful and wanton derogation of YH's rights as a creditor of Meir.

91.    By reason of the foregoing, YH is entitled to a judgment and order setting aside the foregoing transfers as voidable fraudulent conveyances, and/or a judgment and order directing Bartolacci and Ermitage to deliver to YH the value of the assets fraudulently conveyed, plus profits thereon, in an amount to be determined by the Court, plus interest from the date of each transfer, together with punitive damages.

## FOURTH CAUSE OF ACTION
(Under DCL §276)

92.    YH repeats and realleges the foregoing allegations as if fully set forth herein.

93.    Meir's conveyances were made by the debtor, and received by the transferees Bartolacci and Ermitage, with actual intent to hinder, delay or defraud Meir's creditor YH.

94.    YH is therefore entitled to an award of attorneys' fees against the Respondents in the enforcement of this action as an additional amount required to satisfy YH's claim and is entitled to judgment therefor against the debtor and the transferees in a sum to be determined by the Court.

## FIFTH CAUSE OF ACTION
(Turnover under CPLR § 5227)

95.    YH repeats and realleges the foregoing allegations as if fully set forth herein.

96.    The Respondents are or will become indebted to YH.

97.    By reason of the foregoing, YH is entitled to a judgment and order directing Respondents to deliver such indebtedness to YH.

## SIXTH CAUSE OF ACTION
(Accounting)

98.    YH repeats and realleges the foregoing allegations as if fully set forth herein.

99.    By reason of the foregoing, YH is entitled to an accounting of the assets received by Bartolacci and Ermitage with respect to all of the foregoing voidable transfers.

## REQUEST FOR RELIEF

WHEREFORE, YH hereby petitions this Court for an Order:

27

a.  Directing Meir to turn over all right, title, and interest in and to EAM and EZL to YH, and to account for the assets and proceeds of sale of any assets of EAM and EZL.

b.  Directing Bartolacci to pay to YH the sum of $12,587,387.52, including the $2,000,000 transferred to Ermitage from the sale of 40 Meadow Lane, including an order directing Ermitage to pay to YH all sums received from the closing of the sale of 40 Meadow Lane directly, and indirectly from Bartolacci, with interest.

c.  Setting aside the transfers described in this Petition.

d.  Directing Meir, Bartolacci and/or Ermitage to deliver to YH the automobiles referred to in the Third Cause of Action, or, alternatively, to pay the value of the fraudulently conveyed automobiles, plus profits thereon and interest, in an amount to be determined by the Court, plus interest from the date of each transfer.

e.  Directing Bartolacci and Ermitage to deliver to YH their current and future indebtedness to YH.

f.  Granting reasonable attorneys' fees in an amount to be determined by the Court, in accordance with DCL § 276.

g.  Directing an accounting of all assets received by Bartolacci and Ermitage.

28

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 1

22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document
Pg 34 of 109

INDEX NO. 151267/2022
RECEIVED NYSCEF: 02/10/2022

h.  All the foregoing with punitive damages and the costs of disbursements

of judgment enforcement proceedings herein.

i.  For such other and further relief as the Court may find just and proper.

Dated:      New York. New York
            February 10, 2022

                                    **SUSMAN GODFREY L.L.P.**


                                    Mark H. Hatch-Miller (State Bar No.
                                    4981635)
                                    mhatch-miller@susmangodfrey.com
                                    1301 Avenue of the Americas, 32nd Floor
                                    New York, New York 10019
                                    Telephone: (212) 336-8330
                                    Facsimile: (212) 336-8340

## **VERIFICATION**

STATE OF NEW YORK      )

                               ss.:

COUNTY OF NEW YORK   )

ANDREW W. HEYMANN, being duly sworn, states as follows:

1.       I am the manager of Plaintiff/Judgment Creditor/Petitioner in the above-caption action.

2.       I have read the foregoing Verified Petition and am familiar with its contents. The contents of the Verified Petition are true to my own knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe it to be true.

_____
Andrew W. Heymann

Subscribed and sworn to before me

this 10th day of February, 2022

_____
Notary Public

My commission expires:

ROBERT A. LADISLAW
Notary Public, State of New York
No. 02LA6157534
Qualified in New York County
My Commission Expires December 11, 20___

At an I.A.S. Part ____, of the Supreme Court
of the State of New York, held in and for the
County of New York at the Courthouse
thereof, located at 60 Centre Street, New
York, New York, on the ____ day of
_____, 2022.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

YH LEX ESTATES LLC,

                    Petitioner,

       - against -

NIR MEIR, RANEE A. BARTOLACCI and ERMITAGE
ONE, LLC,

                  Respondents.

---

Index No.:

**ORDER TO SHOW CAUSE WHY
PETITIONER SHOULD NOT BE
GRANTED RELIEF ON ITS
PETITION PURSUANT TO CPLR
§§ 5225(a) AND (b) FOR
DELIVERY OF PROPERTY IN
THE POSSESSION OF
RESPONDENTS**

Pursuant to CPLR 403(d), upon reading and filing the accompanying Petition pursuant to

CPLR §§ 5225(a) and (b), the accompanying Affirmation of Mark H. Hatch-Miller, and upon all

other pleadings herein including the related proceedings under Index No. 655980/2020, let

Judgment Debtor/Respondent Nir Meir ("Meir"), and Respondents Ranee A. Bartolacci

("Bartolacci"), and Ermitage One LLC ("Ermitage One"), show cause before IAS Part ____ of

this Court on _____, 2022 (the "Return Date"), at _____ o'clock on that day

or as soon thereafter as counsel can be heard, at Courtroom 208, New York County Courthouse,

60 Centre Street, New York, New York, why an Order should not be issued granting Judgment

Creditor/Petitioner YH Lex Estates LLC ("YH") all of the relief sought via the Petition; and it is

further

      **ORDERED** that Meir's, Bartolacci's, and Ermitage's opposition papers shall be

electronically filed and served via the Court's NYSCEF system on or before the ___ day of _____, 2022; and it is further

**ORDERED** that YH's reply papers shall be electronically filed and served via the Court's NYSCEF system on or before the ___ day of _____, 2022; and it is further

**ORDERED** that service of this order and the pleadings and other papers upon which it is based be made on or before the ____ day of _____, 2022, pursuant to CPLR § 313 ("Service without the state giving personal jurisdiction"), or by other means if agreed to by Petitioner and Respondents, and that such service shall constitute good and sufficient service.

ENTERED:

_____

HON.

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 3

INDEX NO. 151267/2022

RECEIVED NYSCEF: 02/10/2022

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 38 of 109

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |
|---|---|
| YH LEX ESTATES LLC, <br><br> Petitioner, <br><br> - against - <br><br> NIR MEIR, RANEE A. BARTOLACCI and ERMITAGE ONE, LLC, <br><br> Respondents. | Index No.: <br><br> **AFFIRMATION OF MARK H. HATCH-MILLER IN SUPPORT OF ORDER TO SHOW CAUSE WHY PETITIONER SHOULD NOT BE GRANTED RELIEF ON ITS PETITION PURSUANT TO CPLR §§ 5225(a) AND (b) FOR DELIVERY OF PROPERTY IN THE POSSESSION OF RESPONDENTS** |

MARK H. HATCH-MILLER, a member of the bar of this Court and the State of New York, affirms the following under penalties of perjury:

1.      I am a Partner at Susman Godfrey LLP, counsel to Judgment Creditor/Petitioner YH Lex Estates LLC ("YH"), and am fully familiar with the matters set forth herein.

2.      YH respectfully requests that the Court enter turnover and other relief against Judgment Debtor/Respondent Nir Meir ("Meir"); Meir's wife, Respondent Ranee Bartolacci ("Bartolacci"); and Bartolacci's solely-owned entity, Respondent Ermitage One LLC ("Ermitage"), for the reasons stated in the Petition, and based on the evidence detailed in the Petition and previously submitted to this Court (Hon. Joel M. Cohen) under Index No. 655980/2020, regarding Meir's, Bartolacci's, and Ermitage's fraudulent transfer scheme to avoid enforcement of the Court's prior judgment against Meir, including but not limited to at the hearing on a previously CPLR 5225(a) motion against Meir held on January 31, 2022. *See* Index No. 655980/2020, NYSCEF Doc. No. 630.

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 39 of 109

3.      Pursuant to CPLR 2217, some of the relief requested via the Petition and via this Order to Show Cause was previously requested via CPLR 5225(a) motion against Meir under Index No. 655980/2020, at NYSCEF Doc. No. 250.

4.      On February 3, 2022, the Court denied the relevant CPLR 5225(a) motion without prejudice to YH's refiling via Petition under CPLR 5225(b) naming Bartolacci. *See* Index No. 655980/2020, NYSCEF Doc. No. 608.

5.      The present Petition now includes additional Respondents, including Bartolacci as well as her entity Ermitage.

6.      On February 4, 2022, Petitioner filed a Petition against Meir, Bartolacci, and Ermitage in support of an Order to Show Cause under Index No. 655980/2020, at NYSCEF Doc. No. 615.

7.      On February 7, 2022, the Court accepted Petitioner's filing and entered Petitioner's Order to Show Cause, and further, set a rapid schedule for discovery, to be followed (if necessary) by a jury trial to be held against Meir, Bartolacci, and Ermitage starting in just over two months, on April 19, 2022. Index No. 655980/2020, NYSCEF Doc. No. at 627. A true and correct copy of the previously signed and entered Order to Show Cause is attached as **Exhibit A** hereto.

8.      However, on February 9, 2022, a court administrator unexpectedly deleted the Petition from the docket of Index No. 655980/2020, despite the Court's entry of the Order to Show Cause (which still remains pending on the other docket). *See* NYSCEF Doc. No. 616 (now reflecting "Document Deleted").

9.      After seeking clarification from the Court via email regarding how to proceed, and receiving instructions from the Court via email on February 9, 2022, Petitioner is now refiling an Order to Show Cause and a Petition to obtain a second Index Number related to the existing matter

2

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 3

22-01077-jlg  Doc 1  Filed 04/08/22  Entered 04/08/22 10:40:09  Main Document
Pg 40 of 109

INDEX NO. 151267/2022
RECEIVED NYSCEF: 02/10/2022

before Justice Cohen, pursuant to the Court's authority to enforce its own prior Judgment against Meir, with the understanding from the Court that "any orders/schedules made with respect to the existing Petition will be carried forward to a new one." See **Exhibit B** attached hereto.

10.    The Petition accompanying this Order to Show Cause is identical to the one filed on February 4, 2022, under Index No. 655980/2020, except that: (1) paragraph 7 adds a reference to the related case Index Number; (2) a typo in a date in paragraph 29 was corrected, (3) a typo in a heading between paragraphs 29 and 30 was corrected, (4) a typo in paragraph 58 was corrected, (5) a dollar amount was updated in paragraph 61, and (6) a typo in paragraph 64 was corrected.

11.    Petitioner had already begun service attempts of the prior Order to Show Case, and had already successfully served certain Respondents with the prior Petition, prior to court administrator's unexpectedly deletion of the prior Petition from the related docket.

Dated: New York, New York
           February 10, 2022

_____
Mark H. Hatch-Miller

## **WORD COUNT CERTIFICATION**

Pursuant to Rule 17 of subdivision (g) of section 202.70 of the Uniform Rules for the Supreme Court and County Court (Rules of Practice for the Commercial Division of the Supreme Court), I hereby certify that the total number of words in this affirmation, excluding the caption, signature block, and word count certification is 627.

_____
Mark H. Hatch-Miller

3

3 of 3

# EXHIBIT A

At an I.A.S. Part 3, of the Supreme Court of the State of New York, held in and for the County of New York at the Courthouse thereof, located at 60 Centre Street, New York, New York on February 7, 2022.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

YH LEX ESTATES LLC,

                         Plaintiff,

        - against -

H F Z CAPITAL GROUP LLC, ZIEL FELDMAN and NIR MEIR,

                         Defendants.

---

Index No.:  655980/2020

Hon. Joel M. Cohen

Mot. Seq. 021

**ORDER TO SHOW CAUSE WHY JUDGMENT CREDITOR SHOULD NOT BE GRANTED RELIEF ON ITS PETITION PURSUANT TO CPLR §§ 5225(a) AND (b) FOR DELIVERY OF PROPERTY IN THE POSSESSION OF RESPONDENTS**

---

YH LEX ESTATES LLC,

                         Petitioner/Judgment Creditor,

        - against -

NIR MEIR, RANEE A. BARTOLACCI and ERMITAGE ONE, LLC,

                         Respondents.

---

Pursuant to CPLR 403(d), upon reading and filing the accompanying Petition Pursuant to CPLR §§ 5225(a) and (b), and upon all other pleadings and proceedings herein, let Judgment Debtor Nir Meir ("Meir"), third party Ranee A. Bartolacci ("Bartolacci"), and third party Ermitage

One LLC ("Ermitage One"), show cause before IAS Part 3 of this Court on **April 19, 2022** (the "Return Date"), at 9:30 am on that day or as soon thereafter as counsel can be heard, at Courtroom 208, New York County Courthouse, 60 Centre Street, New York, New York, why an Order should not be issued granting all of the relief sought via the Petition; and it is further

**ORDERED** that Meir's, Bartolacci's, and Ermitage's opposition papers shall be electronically filed and served via the Court's NYSCEF system on or before March 14, 2022; and it is further

**ORDERED** that Judgment Creditor YH Lex Estates LLC's reply papers shall be electronically filed and served via the Court's NYSCEF system on or before March 28, 2022; and it is further

**ORDERED** that service of this order and the pleadings and other papers upon which it is based be made on or before the February 11, 2022, pursuant to CPLR § 313 ("Service without the state giving personal jurisdiction"), or by other means if agreed to by Petitioner and Respondents, and that such service shall constitute good and sufficient service.

ENTERED:

Hon. JOEL M. COHEN, J.S.C.

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 5

INDEX NO. 151267/2022

RECEIVED NYSCEF: 02/10/2022

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 44 of 109

# EXHIBIT B

| | |
|---|---|
| **Subject:** | RE: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020 |
| **Date:** | Wednesday, February 9, 2022 at 5:06:10 PM Eastern Standard Time |
| **From:** | SFC-PART3 |
| **To:** | Mark Hatch-Miller, Ripin, Peter M. |
| **CC:** | Wolter, Richard, Tiffany J. Klinger, SFC-PART3, Vanessa Santos, Armstead Lewis, Hutcher, Larry, Ellen Sullivan-Vasquez |
| **Attachments:** | image001.jpg |

EXTERNAL Email

The CPLR permits the Petition to proceed by order to show cause.   As I believe we discussed on the record, there was no clear authority as to whether such a Petition can be filed as part of an existing case or instead must be initiated under a new number.  If the Clerk's office requires that it be under a new number, that is what you will have to do.  The parties should assume that any orders/schedules made with respect to the existing Petition will be carried forward to a new one.

*Hon. Joel M. Cohen*
*New York State Supreme Court*
*60 Centre Street - Room 620*
*New York, NY 10007*
*(646) 386-4927*

---

**From:** Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>
**Sent:** Wednesday, February 9, 2022 4:13 PM
**To:** Hon. Joel M. Cohen <jmcohen@nycourts.gov>; Ripin, Peter M. <PMR@dhclegal.com>
**Cc:** Wolter, Richard <rw@dhclegal.com>; Tiffany J. Klinger <TJKLINGE@nycourts.gov>; SFC-PART3 <sfc-part3@nycourts.gov>; Vanessa Santos <VSantos@susmangodfrey.com>; Armstead Lewis <ALewis@susmangodfrey.com>; Hutcher, Larry <LKH@dhclegal.com>; Ellen Sullivan-Vasquez <ESullivan-Vasquez@susmangodfrey.com>
**Subject:** Re: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

Justice Cohen's Chambers:

Despite the Court signing and entering our order to show cause, we just received an ECF notification that the Petition against Bartolacci and Ermitage was "removed" by someone in the clerk's office. See below. Since this appears to contradict the Court's entry of the order and its acceptance of the filing, we request a few minutes of Your Honor's time when you are available to address how to resolve this development to the Court's satisfaction.

"**Reason for Removing:** Document type "Petition" can only be used upon commencement. Therefore, this filing is being removed from the system. Thank you and enjoy the rest of your day."

Best,
Mark

Mark H. Hatch-Miller
Partner
Susman Godfrey LLP
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 9

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 46 of 109

INDEX NO. 151267/2022
RECEIVED NYSCEF: 02/10/2022

(212) 336-8332

---

**From:** Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>
**Date:** Monday, February 7, 2022 at 10:58 AM
**To:** "Hon. Joel M. Cohen" <jmcohen@nycourts.gov>, "Ripin, Peter M." <PMR@dhclegal.com>
**Cc:** "Wolter, Richard" <rw@dhclegal.com>, "Tiffany J. Klinger" <TJKLINGE@nycourts.gov>, SFC-PART3 <sfc-part3@nycourts.gov>, Vanessa Santos <VSantos@susmangodfrey.com>, Armstead Lewis <ALewis@susmangodfrey.com>, "Hutcher, Larry" <LKH@dhclegal.com>, Ellen Sullivan-Vasquez <ESullivan-Vasquez@susmangodfrey.com>
**Subject:** Re: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

Justice Cohen's Chambers:

Attached is a further order to show cause that we are in process of filing, based on significant new information obtained on Friday. We hope the Court will consider entering it today.

Best,
Mark

Mark H. Hatch-Miller
Partner
Susman Godfrey LLP
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
(212) 336-8332

---

**From:** "Hon. Joel M. Cohen" <jmcohen@nycourts.gov>
**Date:** Saturday, February 5, 2022 at 1:27 PM
**To:** "Ripin, Peter M." <PMR@dhclegal.com>
**Cc:** "Wolter, Richard" <rw@dhclegal.com>, Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>, "Tiffany J. Klinger" <TJKLINGE@nycourts.gov>, SFC-PART3 <sfc-part3@nycourts.gov>, Vanessa Santos <VSantos@susmangodfrey.com>, Armstead Lewis <ALewis@susmangodfrey.com>, "Hutcher, Larry" <LKH@dhclegal.com>, Ellen Sullivan-Vasquez <ESullivan-Vasquez@susmangodfrey.com>
**Subject:** RE: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

EXTERNAL Email
We will send a Teams invitation on Monday.

*Hon. Joel M. Cohen*
*New York State Supreme Court*
*60 Centre Street - Room 620*
*New York, NY 10007*
*(646) 386-4927*

---

**From:** Ripin, Peter M. <PMR@dhclegal.com>
**Sent:** Saturday, February 5, 2022 11:18 AM
**To:** Hon. Joel M. Cohen <jmcohen@nycourts.gov>
**Cc:** Wolter, Richard <rw@dhclegal.com>; Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>; Tiffany J. Klinger <TJKLINGE@nycourts.gov>; SFC-PART3 <sfc-part3@nycourts.gov>; Vanessa Santos

<VSantos@susmangodfrey.com>; Armstead Lewis <ALewis@susmangodfrey.com>; Hutcher, Larry
<LKH@dhclegal.com>; Ellen Sullivan-Vasquez <ESullivan-Vasquez@susmangodfrey.com>
**Subject:** Re: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

We are available.

_____

**Peter M. Ripin, Esq.**
Davidoff Hutcher & Citron LLP
605 Third Avenue, New York, NY 10158
646.428.3209
Fax: 212.286.1884
pmr@dhclegal.com
www.dhclegal.com

On Feb 5, 2022, at 10:24 AM, Hon. Joel M. Cohen <jmcohen@nycourts.gov> wrote:

**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT
TRUST**

Let's have a brief Teams conference on Monday to discuss the schedule.  I would propose 2:15.

*Hon. Joel M. Cohen*
*New York State Supreme Court*
*60 Centre Street - Room 620*
*New York, NY 10007*
*(646) 386-4927*

**From:** Wolter, Richard <rw@dhclegal.com>
**Sent:** Friday, February 4, 2022 5:03 PM
**To:** Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>; Tiffany J. Klinger
<TJKLINGE@nycourts.gov>; SFC-PART3 <sfc-part3@nycourts.gov>; Ripin, Peter M.
<PMR@dhclegal.com>
**Cc:** Vanessa Santos <VSantos@susmangodfrey.com>; Armstead Lewis
<ALewis@susmangodfrey.com>; Hutcher, Larry <LKH@dhclegal.com>; Ellen Sullivan-Vasquez
<ESullivan-Vasquez@susmangodfrey.com>
**Subject:** RE: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

Dear Ms. Klinger:

Mr. Hatch-Miller's proposed schedule is entirely unreasonable.  Until today, Ms. Bartolacci and
Ermitage have never been named as parties to this proceeding and the instant application is the
judgment-creditor's first attempt to provide them with the requisite notice of the claims
asserted against them and an opportunity to respond.  The petition requires a substantive
response akin to an opposition to a motion for summary judgment.  Mr. Hatch-Miller's attempt

to equate Ms. Bartolacci's and Ermitage's positions in this matter with Mr. Meir's should be rejected (and certainly provides no basis to deprive them of a reasonable opportunity to respond). Moreover, we understand that Ms. Bartolacci and Ermitage will be retaining new counsel.

Accordingly, we propose:

- 7 days to serve (or negotiate agreement to accept service), to February 11;
- 45 days from February 11 to submit opposition, (*i.e.* March 28); and
- 14 days to submit reply (*i.e.* April 11).

We further propose that, in lieu of scheduling a hearing at this time, the Court schedule a conference after briefing is completed to discuss any needed discovery or any other issues that may arise in connection with the hearing.



**Richard Wolter, Esq.**
Davidoff Hutcher & Citron LLP
605 Third Avenue, New York, NY 10158
Firm: 212.557.7200   Direct: 646.428.3269
Fax: 212.286.1884   Email: rw@dhclegal.com
Website

**From:** Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>
**Sent:** Friday, February 4, 2022 4:07 PM
**To:** Tiffany J. Klinger <TJKLINGE@nycourts.gov>; SFC-PART3 <sfc-part3@nycourts.gov>; Ripin, Peter M. <PMR@dhclegal.com>
**Cc:** Wolter, Richard <rw@dhclegal.com>; Vanessa Santos <VSantos@susmangodfrey.com>; Armstead Lewis <ALewis@susmangodfrey.com>; Hutcher, Larry <LKH@dhclegal.com>; Ellen Sullivan-Vasquez <ESullivan-Vasquez@susmangodfrey.com>
**Subject:** Re: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST**

Plaintiff proposes one week to serve (or negotiate agreement to accept service), to February 11; one further week for oppositions (two weeks total—all respondents already have actual notice, today, through their counsel copied here), to February 18; and one week for reply, to February 25. We respectfully request a hearing the week of February 28.

Mark H. Hatch-Miller
Partner
Susman Godfrey LLP
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
(212) 336-8332

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 49 of 109

**From:** "Tiffany J. Klinger" <TJKLINGE@nycourts.gov>
**Date:** Friday, February 4, 2022 at 3:02 PM
**To:** Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>, SFC-PART3 <sfc-part3@nycourts.gov>, "Ripin, Peter M." <PMR@dhclegal.com>
**Cc:** "Wolter, Richard" <rw@dhclegal.com>, Vanessa Santos <VSantos@susmangodfrey.com>, Armstead Lewis <ALewis@susmangodfrey.com>, "Hutcher, Larry" <LKH@dhclegal.com>, Ellen Sullivan-Vasquez <ESullivan-Vasquez@susmangodfrey.com>
**Subject:** Re: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

EXTERNAL Email
Counsel, could you either agree to a schedule on the proposed OSC or at least suggest a proposed schedule?

Thank you.

---

**From:** Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>
**Sent:** Friday, February 4, 2022 3:37 PM
**To:** SFC-PART3; Ripin, Peter M.; Tiffany J. Klinger
**Cc:** Wolter, Richard; Vanessa Santos; Armstead Lewis; Hutcher, Larry; Ellen Sullivan-Vasquez
**Subject:** Re: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

Attached is plaintiff's filed order to show cause in word version for the Court's consideration.

Mark H. Hatch-Miller
Partner
Susman Godfrey LLP
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
(212) 336-8332

---

**From:** SFC-PART3 <sfc-part3@nycourts.gov>
**Date:** Friday, February 4, 2022 at 11:47 AM
**To:** Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>, SFC-PART3 <sfc-part3@nycourts.gov>, "Ripin, Peter M." <PMR@dhclegal.com>, "Tiffany J. Klinger" <TJKLINGE@nycourts.gov>
**Cc:** "Wolter, Richard" <rw@dhclegal.com>, Vanessa Santos <VSantos@susmangodfrey.com>, Armstead Lewis <ALewis@susmangodfrey.com>, "Hutcher, Larry" <LKH@dhclegal.com>, Ellen Sullivan-Vasquez <ESullivan-Vasquez@susmangodfrey.com>
**Subject:** RE: YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

EXTERNAL Email
Plaintiff may proceed by Order to Show Cause.

---

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
                                    Pg 50 of 109

**From:** Mark Hatch-Miller <MHatch-Miller@susmangodfrey.com>
**Sent:** Friday, February 4, 2022 12:44 PM
**To:** SFC-PART3 <sfc-part3@nycourts.gov>; Ripin, Peter M. <PMR@dhclegal.com>; Tiffany J. Klinger <TJKLINGE@nycourts.gov>
**Cc:** Wolter, Richard <rw@dhclegal.com>; Vanessa Santos <VSantos@susmangodfrey.com>; Armstead Lewis <ALewis@susmangodfrey.com>; Hutcher, Larry <LKH@dhclegal.com>; Ellen Sullivan-Vasquez <ESullivan-Vasquez@susmangodfrey.com>
**Subject:** YH Lex Estates LLC v. HFZ Capital Group LLC; Index No. 655980/2020

Justice Cohen's Chambers:

Plaintiff plans to file, today, a petition for relief against Meir, Bartolacci, and Ermitage One LLC, including asserting fraudulent transfer claims related to the distribution of proceeds from the sale of 40 Meadow Lane. CPLR 403 permits the filing of such petition either by Notice of Petition, or via Order to Show Cause. See CPLR 403(d). Given the imminent need to stop the dissipation of Meir's fraudulently transferred assets, and the need to keep the schedule for this requested relief in the Court's hands rather than in the hands of other court administrators (Meir has repeatedly sought to unreasonably delay motions brought by notice, through repeat continuance requests processed by other court administrators), Plaintiff respectfully requests permission to proceed with the filing today via Order to Show Cause rather than Notice of Petition. Please advise.

Best,
Mark

Mark H. Hatch-Miller
Partner
Susman Godfrey LLP
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
(212) 336-8332

Please be CAREFUL when clicking links or opening attachments from external senders.

**IMPORTANT NOTICE:** Beware of Cyber Fraud. You should never wire money to any bank account that our office provides to you via email

without first speaking with our office. Further,do not accept emailed
wiring instructions from anyone else without voice verification from a known
employee of our office. Even if an email looks like it has come from this
office or someone involved in your transaction. Please call us first at a number
you know to be correct for this office to verify the information before wiring
any money. Be particularly wary of any request to change wiring instructions
you already received.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any
attachments to this message are intended for the exclusive use of the
addressee(s) and may contain confidential or privileged information.
If you are not the intended recipient, please notify us immediately
by email reply to sender or by telephone to Davidoff Hutcher & Citron
LLP at (800) 793-2843, ext. 3284, and destroy all copies of this
message and any attachments.

IRS DISCLOSURE NOTICE
In accordance with Internal Revenue Service Circular 230, we inform
you that any discussion of a federal tax issue contained in this
communication (including any attachments) is not intended or written
to be used, and it cannot be used, by any recipient for the purpose of
(i) avoiding penalties that may be imposed on the recipient under
United States federal tax laws, or (ii) promoting, marketing or
recommending to another party any tax-related matters addressed herein.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IMPORTANT NOTICE:**Beware of Cyber Fraud. You should never
wire money to any bank account that our office provides to you via email
without first speaking with our office. Further,do not accept emailed
wiring instructions from anyone else without voice verification from a known
employee of our office. Even if an email looks like it has come from this
office or someone involved in your transaction. Please call us first at a number
you know to be correct for this office to verify the information before wiring
any money. Be particularly wary of any request to change wiring instructions
you already received.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any
attachments to this message are intended for the exclusive use of the
addressee(s) and may contain confidential or privileged information.
If you are not the intended recipient, please notify us immediately

by email reply to sender or by telephone to Davidoff Hutcher & Citron
LLP at (800) 793-2843, ext. 3284, and destroy all copies of this
message and any attachments.

IRS DISCLOSURE NOTICE
In accordance with Internal Revenue Service Circular 230, we inform
you that any discussion of a federal tax issue contained in this
communication (including any attachments) is not intended or written
to be used, and it cannot be used, by any recipient for the purpose of
(i) avoiding penalties that may be imposed on the recipient under
United States federal tax laws, or (ii) promoting, marketing or
recommending to another party any tax-related matters addressed herein.
************************************************************************

FILED: NEW YORK COUNTY CLERK 03/14/2022 04:22 PM INDEX NO. 151267/2022

NYSCEF DOC. NO. 16    22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document    RECEIVED NYSCEF: 03/14/2022

Pg 53 of 109

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

YH LEX ESTATES LLC,

                                                Petitioner,

                        -against-

NIR MEIR, RANEE A. BARTOLACCI and
ERMITAGE ONE, LLC,

                                                Respondents.

---

Index No. 151267/2022

**VERIFIED ANSWER,
AFFIRMATIVE DEFENSES,
AND OBJECTIONS IN POINT
OF LAW OF RESPONDENT
NIR MEIR**

Respondent NIR MEIR ("Meir"), by his attorneys, Davidoff Hutcher & Citron LLP, respectfully submits this Verified Answer, Affirmative Defenses, and Objections in Point of Law to the Verified Petition ("Petition") of Petitioner YH LEX ESTATES LLC ("Petitioner").

### NATURE OF THE PETITION

1.      Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 1 of the Petition, except expressly denies that any fraudulent and/or voidable transfers occurred and that Petitioner is entitled to any relief.

2.      Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 2 of the Petition.

3.      Denies the allegations contained in paragraph 3 of the Petition.

4.      Denies the allegations contained in paragraph 4 of the Petition.

5.      Denies the allegations contained in paragraph 5 of the Petition, including the footnote thereto.

6.      Denies the allegations contained in paragraph 6 of the Petition.

7.      Denies the allegations contained in paragraph 7 of the Petition.

1

## BACKGROUND

8.      Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 8 of the Petition.

9.      Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 9 of the Petition.

10.     Denies the allegations contained in paragraph 10 of the Petition.

## THE RESPONDENTS

11.     Denies the allegations contained in paragraph 11 of the Petition.

12.     Denies the allegations contained in paragraph 12 of the Petition.

13.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 13 of the Petition, except expressly denies that any fraudulent and/or voidable transfers occurred.

## FACTS COMMON TO ALL CAUSES OF ACTION

14.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 14 of the Petition.

15.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 15 of the Petition.

16.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 16 of the Petition.

17.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 17 of the Petition.

18.     Denies the allegations contained in paragraph 18 of the Petition.

19.     Denies the allegations contained in paragraph 19 of the Petition.

2

20.     Denies the allegations contained in paragraph 20 of the Petition.

21.     Denies the allegations contained in paragraph 21 of the Petition.

22.     Denies the allegations contained in paragraph 22 of the Petition and respectfully refers the Court to the Second Amended and Restated Limited Liability Company Agreement for a complete and accurate statement of its contents.

23.     Denies the allegations contained in paragraph 23 of the Petition.

24.     Denies the allegations contained in paragraph 24 of the Petition

25.     Denies the allegations contained in paragraph 25 of the Petition and respectfully refers the Court to the EAM Third Amendment for a complete and accurate statement of its contents,

26.     Denies the allegations contained in paragraph 26 of the Petition.

27.     Denies the allegations contained in paragraph 27 of the Petition.

28.     Denies the allegations contained in paragraph 28 of the Petition.

29.     Denies the allegations contained in paragraph 29 of the Petition.

30.     Denies the allegations contained in paragraph 30 of the Petition.

31.     Denies the allegations contained in paragraph 31 of the Petition.

32.     Denies the allegations contained in paragraph 32 of the Petition.

33.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 33 of the Petition.

34.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 34 of the Petition.

35.     Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 35 of the Petition.

3

36. Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 36 of the Petition.

37. Denies the allegations contained in paragraph 37 of the Petition.

38. Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 38 of the Petition.

39. Denies the allegations contained in paragraph 39 of the Petition.

40. Denies the allegations contained in paragraph 40 of the Petition.

41. Denies the allegations contained in paragraph 41 of the Petition.

42. Denies the allegations contained in paragraph 42 of the Petition.

43. Denies the allegations contained in paragraph 43 of the Petition.

44. Denies the allegations contained in paragraph 44 of the Petition.

45. Denies the allegations contained in paragraph 45 of the Petition.

46. Denies the allegations contained in paragraph 46 of the Petition and respectfully refers the Court to the Indemnity and Escrow Agreement referenced therein for a complete and accurate statement of its contents.

47. Denies the allegations contained in paragraph 47 of the Petition.

48. Denies the allegations contained in paragraph 48 of the Petition.

49. Denies the allegations contained in paragraph 49 of the Petition.

50. Denies the allegations contained in paragraph 50 of the Petition.

51. Denies the allegations contained in paragraph 51 of the Petition.

52. Denies the allegations contained in paragraph 52 of the Petition.

53. Denies the allegations contained in paragraph 53 of the Petition.

54. Denies the allegations contained in paragraph 54 of the Petition.

4

55.    Denies the allegations contained in paragraph 55 of the Petition.

56.    Denies the allegations contained in paragraph 56 of the Petition.

57.    Denies the allegations contained in paragraph 57 of the Petition.

58.    Denies the allegations contained in paragraph 58 of the Petition.

59.    Denies the allegations contained in paragraph 59 of the Petition.

60.    Denies the allegations contained in paragraph 60 of the Petition.

61.    Denies the allegations contained in paragraph 61 of the Petition.

62.    Denies the allegations contained in paragraph 62 of the Petition.

63.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 63 of the Petition.

64.    Denies the allegations contained in paragraph 64 of the Petition.

65.    Denies the allegations contained in paragraph 65 of the Petition.

66.    Denies the allegations contained in paragraph 66 of the Petition.

67.    Denies the allegations contained in paragraph 67 of the Petition.

68.    Denies the allegations contained in paragraph 68 of the Petition.

69.    Denies the allegations contained in paragraph 69 of the Petition.

### FIRST CAUSE OF ACTION
**(Turnover under CPLR § 5225(a) against Meir)**

70.    Meir repeats and realleges each and every response to the preceding paragraphs as though fully set forth herein.

71.    Denies the allegations contained in paragraph 71 of the Petition.

72.    Denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 72 of the Petition.

5

73.     Denies the allegations contained in paragraph 73 of the Petition and respectfully refers the Court to the Indemnity and Escrow Agreement referenced therein for a complete and accurate statement of its contents.

74.     Admits the allegations contained in paragraph 74 of the Petition.

75.     Denies the allegations contained in paragraph 75 of the Petition.

**SECOND CAUSE OF ACTION**
**(Turnover under CPLR § 5225(b) and DCL §§273 and 274)**

76.     Meir repeats and realleges each and every response to the preceding paragraphs as though fully set forth herein.

77.     The allegations contained in paragraph 77 of the Petition contain conclusions of law, and therefore no response is required.

78.     The allegations contained in paragraph 78 of the Petition contain conclusions of law, and therefore no response is required.

79.     Denies the allegations contained in paragraph 79 of the Petition.

80.     Denies the allegations contained in paragraph 80 of the Petition.

81.     Denies the allegations contained in paragraph 81 of the Petition.

82.     Denies the allegations contained in paragraph 82 of the Petition.

83.     Denies the allegations contained in paragraph 83 of the Petition.

84.     Denies the allegations contained in paragraph 84 of the Petition.

**THIRD CAUSE OF ACTION**
**(Turnover under CPLR § 5225(b) and DCL §§273 and 274)**

85.     Meir repeats and realleges each and every response to the preceding paragraphs as though fully set forth herein.

86.     Denies the allegations contained in paragraph 86 of the Petition.

6

87.     Denies the allegations contained in paragraph 87 of the Petition.

88.     Denies the allegations contained in paragraph 88 of the Petition.

89.     Denies the allegations contained in paragraph 89 of the Petition.

90.     Denies the allegations contained in paragraph 90 of the Petition.

91.     Denies the allegations contained in paragraph 91 of the Petition.

## FOURTH CAUSE OF ACTION
### (Under DCL §276)

92.     Meir repeats and realleges each and every response to the preceding paragraphs as though fully set forth herein.

93.     Denies the allegations contained in paragraph 93 of the Petition.

94.     Denies the allegations contained in paragraph 94 of the Petition.

## FIFTH CAUSE OF ACTION
### (Turnover under CPLR § 5227)

95.     Meir repeats and realleges each and every response to the preceding paragraphs as though fully set forth herein.

96.     The allegations contained in paragraph 96 of the Petition contain conclusions of law, and therefore no response is required.  To the extent, if any, a response is deemed to be required, Meir denies the allegations contained in paragraph 96 of the Petition.

97.     The allegations contained in paragraph 97 of the Petition contain conclusions of law, and therefore no response is required.  To the extent, if any, a response is deemed to be required, Meir denies the allegations contained in paragraph 97 of the Petition.

## SIXTH CAUSE OF ACTION
### (Accounting)

98.     Meir repeats and realleges each and every response to the preceding paragraphs as though fully set forth herein.

7

99.     The allegations contained in paragraph 99 of the Petition contain conclusions of law, and therefore no response is required.  To the extent, if any, a response is deemed to be required, Meir denies the allegations contained in paragraph 99 of the Petition.

100.     Denies each and every allegation as against Meir set forth in the WHEREFORE paragraph, and specifically denies that Petitioner is entitled to any relief against Meir.

101.     Denies each and every other allegation contained in the Petition not expressly admitted in this Answer.

## AFFIRMATIVE DEFENSES & OBJECTIONS IN POINT OF LAW

1.     Petitioner has not satisfied its initial burden and/or made a prima facie showing entitling it to summary relief.

2.     Summary determination is not warranted based on the record submitted in support of the petition.

3.     An evidentiary hearing and/or jury trial is required to resolve disputed issues of fact.

4.     Petitioner's claims, in whole or in part, fail to state a claim upon which relief may be granted.

5.     Petitioner's claims are barred, in whole or in part, by documentary evidence.

6.     Petitioner's allegations concerning the alleged fraudulent and/or voidable transfers of the proceeds from the sale of the 40 Meadow Lane property are conclusively refuted by documentary evidence demonstrating that, at all relevant times, Bartolacci was the 95% owner of EZL, the 90.25% beneficial owner of the 40 Meadow Lane property, the rightful recipient of 90.25% of the proceeds from the sale of the 40 Meadow Lane property, and the 100% owner of Ermitage.  *See* Index No. 655980/2020, NYSCEF Doc. Nos. 280 (Meir Affidavit), 283 (EZL

8

Operating Agreement), 311 (Bartolacci Affidavit) (all of which are incorporated by reference herein).

7.    Petitioner's claims concerning the alleged fraudulent and/or voidable transfers of the automobiles are conclusively refuted by the evidence submitted by Meir in opposition to Motion Sequence No. 18 demonstrating that Meir never owned the automobiles at issue and/or that the alleged transfers never took place. *See* Index No. 655980/2020, NYSCEF Doc. Nos. 591 (Meir Affidavit), 592 (Vehicle Title), 593 (Vehicle Purchase Contract), 594 (Memorandum of Law) (all of which are incorporated by reference herein).

8.    The complained-of transfers were made for adequate and/or reasonably equivalent consideration.

9.    The complained-of transfers were not made with intent to frustrate and/or hinder collection of the judgment and/or in derogation of Petitioner's rights.

10.    The complained-of transfers did not constitute transfers of substantially all of the Meir's assets.

11.    The complained-of transfers did not render Meir insolvent at the time or shortly thereafter.

12.    Meir did not and does not have any possessory or ownership interest in the property at issue and thus Petitioner is not entitled to any relief pursuant to CPLR 5225 as against Meir.

## **RESERVATION OF RIGHTS**

Meir gives notice that he intends to rely on any additional affirmative defenses and objections in point of law that become available or apparent over the course of this matter and thus reserves the right to amend this Answer to assert such additional defenses.

9

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 62 of 109

## JURY DEMAND

**PLEASE TAKE NOTICE** that pursuant to CPLR §§ 410 and 4102, Respondent Nir Meir,

hereby demands a trial by jury of all issues and claims in this proceeding.

Dated: New York, New York
March 14, 2022

s/ *Larry Hutcher*

Larry Hutcher, Esq.
Peter M. Ripin, Esq.
Richard C. Wolter, Esq.
DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for Defendant Nir Meir*
605 Third Avenue
New York, NY 10158
Tel: (212) 557-7200

10

FILED: NEW YORK COUNTY CLERK 03/14/2022 04:22 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 16
RECEIVED NYSCEF: 03/14/2022

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 63 of 109

## VERIFICATION

STATE OF FLORIDA            )
                           ) ss:
COUNTY OF MIAMI-DADE        )

I, NIR MEIR, am a named respondent in this proceeding.  I have read the foregoing answer and know the contents thereof.  The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
NIR MEIR

Subscribed and sworn to before me
on this _14_ day of March, 2022

_____
Notary Public

GABRIEL ALBELO
NOTARY
My Comm. Expires
October 21, 2023
No. GG 924478
STATE OF FLORIDA
PUBLIC

11

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM INDEX NO. 151267/2022

NYSCEF DOC. NO. 18                    22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document    RECEIVED NYSCEF: 03/21/2022

Pg 64 of 109

EXHIBIT 1

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18    22-010-7-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document   RECEIVED NYSCEF: 03/21/2022
Pg 65 of 109

1

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK: TRIAL TERM PART 3
 2   - - - - - - - - - - - - - - - - - - - - - X
     YH LEX ESTATES LLC,
 3
                              Petitioner,
 4                                                  INDEX NO.
          - against -                               151267/22
 5

 6   NIR MEIR, RANEE BARTOLACCI and
     ERMITAGE ONE LLC,
 7
                              Respondents.
 8   - - - - - - - - - - - - - - - - - - - - - X
                         60 Centre Street
 9                       New York, New York
                         March 16, 2022
10                       VIA MICROSOFT TEAMS

11
     BEFORE:  HONORABLE JOEL M. COHEN,
12                                        Justice

13
     APPEARANCES:
14
          SUSMAN GODFREY L.L.P.
15        Attorneys for the Petitioner
          1301 Avenue of the Americas, 32nd Floor
16        New York, New York  10019
          BY:  MARK H. HATCH-MILLER, ESQ.
17             JENNIFER DAYRIT, ESQ.

18        DAVIDOFF HUTCHER & CITRIN LLP
          Attorneys for Nir Meir
19        605 Third Avenue
          New York, New York  10158
20        BY:  PETER M. RIPIN, ESQ.
               RICHARD WOLTER, ESQ.
21
          YK LAW
22        Attorneys for Respondents
          Ranee Bartolacci and Ermitage One LLC
23        32 East 57th Street - 8th Floor
          New York, New York  10022
24        BY:  PANKAJ MALIK, ESQ.

25
```

2

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK: TRIAL TERM PART 3
 2   - - - - - - - - - - - - - - - - - - - - - X
     YH LEX ESTATES LLC,
 3
                          Plaintiff,
 4                                            INDEX NO.
          - against -                         655980/20
 5
     H F Z CAPITAL GROUP LLC, ZIEL FELDMAN and
 6   NIR MEIR,
 7                          Defendants.
     - - - - - - - - - - - - - - - - - - - - - X
 8                    60 Centre Street
                      New York, New York
 9                    March 16, 2022
                      VIA MICROSOFT TEAMS
10
     BEFORE:  HONORABLE JOEL M. COHEN,
11                                      Justice
12   APPEARANCES:
13       SUSMAN GODFREY L.L.P.
         Attorneys for the Plaintiff
14       1301 Avenue of the Americas, 32nd Floor
         New York, New York  10019
15       BY:   MARK H. HATCH-MILLER, ESQ.
               JENNIFER DAYRIT, ESQ.
16
         DAVIDOFF HUTCHER & CITRIN LLP
17       Attorneys for Nir Meir
         605 Third Avenue
18       New York, New York  10158
         BY:   PETER M. RIPIN, ESQ.
19             RICHARD WOLTER, ESQ.
20       MORRISON COHEN LLP
         Attorneys for the Defendants
21       HFZ Capital Group and Ziel Feldman
         909 Third Avenue
22       New York, New York  10022
         BY:  CHRISTOPHER MILITO, ESQ.
23            JAY SPEYER, ESQ.
24                    Bonnie Piccirillo
                   Official Court Reporter
25
```

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 18
RECEIVED NYSCEF: 03/21/2022

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 67 of 109

3

Proceedings

1

2              THE COURT:  Good morning.  We have a trial

3      waiting for us, so I'd like to be as efficient as we can

4      today.  I don't mean your trial.  I mean another trial

5      that's going on right now.

6              I'd like to start with appearances, beginning

7      with the plaintiff.

8              MR. HATCH-MILLER:  Good morning, your Honor.

9      Mark Hatch-Miller from Susman Godfrey for the Plaintiff

10     in 655980-2020 and Petitioner in 151267-2022.  And with

11     me is my colleague, Jennifer Dayrit, and I believe our

12     client representative, Andrew Heyman may be on the phone.

13             THE COURT:  I forgot to mention, we have two

14     index numbers.

15             For the defendants, let's start with the 2020

16     case.  The HFZ case, defendants in that case.

17             MR. MILITO:  Good morning, your Honor.  This is

18     Christopher Milito of Morrison Cohen LLP.  I'm joined by

19     my colleague, Jay Speyer, for HFZ Capital Group LLC and

20     Ziel Feldman.

21             MR. WOLTER:  Richard Wolter, Davidoff Hutcher &

22     Citrin for Defendant, Nir Meir.

23             THE COURT:  Mr. Meir is also a party to the 22

24     case, correct?

25             MR. WOLTER:  Correct, respondent in that case.

4

Proceedings

1          THE COURT:  For the other respondents in the

2     2022 case.

3          MS. MALIK:  Good morning, your Honor, Pankaj

4     Malik from YK Law, 32 East 57th Street, 8th Floor, New

5     York, New York.

6          Good morning, I'm appearing for respondents

7     Ranee Bartolacci and Ermitage LLC.

8          THE COURT:  Good morning, and welcome to you.

9          So, let's -- let me start with the 2020 case

10    which I think is a little more straightforward.

11          I've read the papers.  Look, the way I see it is

12    the Appellate Division has granted the motion for summary

13    judgment.  I don't have any -- I don't think -- any

14    motion to grant.  It has been granted if you look at

15    their order.

16          All I have to do is enter judgment at their

17    direction; and it seems to me, Mr. Milito, that I'm fine

18    with you giving comments on the proposed order quickly.

19    I don't think we need to go through the formal settlement

20    process, which can be a little bit clunky.  And I, also,

21    don't think this is terribly complicated so I would ask

22    you to have whatever counterproposal you have by the end

23    of the day tomorrow.

24          MR. MILITO:  Your Honor, is that to -- am I

25    understand that to mean the counter-order on summary

5

Proceedings

1    judgment or the counter-judgment itself, counter-proposed

2    judgment.

3           THE COURT:  It is the judgment.  I don't see a

4    need -- do I need to decide the motion for summary

5    judgment?  It's been decided.  The Appellate Division is

6    part of the Supreme Court.

7           MR. MILITO:  Absolutely, your Honor.  I thought

8    that as a procedural matter it would be cleaner if there

9    were an order from this Court that granted summary

10   judgment, directed the clerk to enter judgment, perhaps

11   directed parties to settle judgment; but I understand

12   your Honor is looking to move past that so-to-speak.

13          THE COURT:  I think you can have a whereas

14   clause in the judgment just explaining if you want and it

15   may -- Mr. Hatch-Miller's may already do that.  I'm not

16   sure.  I think we can go straight to entry of judgment

17   pursuant to the mandate from the First Department.

18          MR. MILITO:  So, your Honor, if I could we

19   respectfully request, we do have copies of proposed

20   judgments from the plaintiff.

21          If we're to follow 22 -- Section 22, I think it

22   is 404.28, we have five days to take a look and submit

23   counters.  I imagine that at some point we're going to be

24   back before your Honor on the topic of the appropriate

25   language.

Proceedings

1        So, if I could suggest that perhaps today is

2    Wednesday, we set a date for early next week, we'll give

3    Mr. Hatch-Miller our comments before then; and then we

4    can come back and have the discussion as to which of the

5    two computing judgments are the proper ones.

6        THE COURT:  I just think that's too much process

7    for where we are right now.  This is a motion for summary

8    judgment.  Not even that, a motion for summary judgment

9    in lieu of complaint.  I don't really see what the moving

10   pieces are other than to calculate interest or something

11   along those lines.

12       So, that's way too long and way too much.  So

13   I'll either see a need for argument, I don't think if you

14   put in a proposed counter judgment; and if you all can

15   agree on it, fine.  That's fantastic.  If not, I'll just

16   review the two and enter the judgment I think is

17   appropriate.

18       MR. MILITO:  At what point, should we submit to

19   the Court either the agreed-upon judgment or the

20   competing judgments?

21       THE COURT:  End of the day tomorrow.

22       I mean, I have not heard from anybody.  This is

23   not a complicated judgment I don't think.  It is a money

24   judgment based on an instrument for the payment of money

25   only.

Proceedings

1              You've now been -- your client has now been --

2         summary judgment has been entered by the First

3         Department.  That's it.

4              The whole point of 3213 is to have an efficient

5         streamline procedure.

6              So is there something about the judgment I'm

7         missing?  What's the difficult part of it?

8              MR. MILITO:  I think the real difficult part,

9         your Honor, was in the order that the plaintiffs had

10        proposed to the Court and I think that was the major

11        stumbling block that brings us here today; but it seems

12        that since the Court is inclined to dispense with the

13        step of the order, in any event, that the major stumbling

14        block has been removed and we'll take a look at their

15        judgment.  And I couldn't tell you off the top of my head

16        any real problems with it.  Obviously, we'll look at the

17        numbers again and get a draft to Mr. Hatch-Miller.  It

18        may be that there are no comments that require the

19        Court's attention.

20             THE COURT:  I don't need that interim step of an

21        order directing you to submit a judgment.

22             I would suggest the two of you try to work it

23        out because I think when you look at the actual judgment

24        language, A) as they point out, I think I've already

25        issued a judgment against Mr. Meir which is on the same

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM
INDEX NO. 151267/2022

NYSCEF DOC. NO. 18
RECEIVED NYSCEF: 03/21/2022

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 72 of 109

8

Proceedings

1    instrument.  If you have any tweaks that you think are

2    important and if you can't work it out, just send it in

3    with a letter explaining why you think the changes are

4    necessary and absent something unusual, I'll just do it

5    on the papers.  And it should have a line for me to sign

6    and a line for the clerk.

7              I will look at, if I approve it, I'll sign it.

8    It will be uploaded as a judgment from the Court to the

9    clerk and we'll move on from there.

10             MR. MILITO:  I'll note, your Honor,

11   Mr. Hatch-Miller has correctly already included a line

12   for your Honor and the clerk on his proposed form.

13             THE COURT:  Is there anything else we need to do

14   on that case, Mr. Hatch-Miller?

15             MR. HATCH-MILLER:  Let me look over my notes.

16   There are some cleanup points I wanted to raise very

17   quickly.

18             Motion Sequence 15 is still pending, which was a

19   sealing motion in connection with the post-discovery

20   summary judgment.  There were very few dispute issues in

21   it.  It's still waiting for a decision.

22             And related to HFZ, there's a couple of other

23   motions related to Meir in that case.  But Motion

24   Sequence No. 20 is the post-discovery summary judgment

25   motion which can be closed out as mooted by the First

9

Proceedings

1    Department decision.  I just wanted to raise those two

2    points.

3              Everything else pending on the docket in the

4    2020 case relates to Meir.

5              THE COURT:  And in the triage, the sealing

6    motion sometimes are behind some of the others because in

7    the interim, the documents remain sealed and the sealing

8    if it's not causing a problem, we do get to them, but --

9              MR. HATCH-MILLER:  Yes, your Honor.  I just

10   wanted to flag it for you.  As a former law clerk,

11   myself, I know sometimes it's good to be able to kind of

12   know which motions you could close out easily and I

13   wanted to let you know those two.

14             THE COURT:  There's little more satisfying than

15   closing out waves of motion after judgments are entered,

16   so I appreciate that.

17             All right, so let's move on to the '22 case.

18             And, Bonnie, this is YH Lex Estates versus Nir

19   Meir, Ranee Bartolacci and Ermitage One LLC, 151267-2022.

20             A couple of things, and then I'll let you all

21   talk.

22             Mr. Hatch-Miller, you're letter was the first

23   time I had heard that the proceeding in April was a jury

24   trial, or maybe I heard it and had forgotten it.  I

25   didn't see a jury demand.  I just -- can you -- that just

BP

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM
NYSCEF DOC. NO. 18

22-0107-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 74 of 109

INDEX NO. 151267/2022
RECEIVED NYSCEF: 03/21/2022

10

Proceedings

1    affects some of the logistics around what we're going to

2    be doing.

3            Is that clear, that that's a jury trial as

4    opposed to a bench?

5            MR. HATCH-MILLER:  Yes -- well, no, your Honor,

6    it is not clear; but I put it in there because it was

7    suggested by Mr. Hutcher, by Mr. Meir's counsel.  When

8    you initially set the schedule on the order to show cause

9    and you indicated that you had a trial date open for

10   April 19th that you were going to hold for us if you

11   found that there was a triable fact issue, Mr. Meir's

12   counsel said it would have to be a jury trial.  It's on

13   the transcript, I believe.  So I don't know what they're

14   going to request.

15           My expectation, especially based on what we've

16   seen so far, there no jury issue.  Even if there is a

17   jury trial demand, this is a summary judgment posture if

18   there ever was one.

19           THE COURT:  Well, I get that.  You don't have to

20   argue that part, but the petition has weaves in equitable

21   claims and claims for damages so it's a little more

22   complicated to do it this way.

23           I guess I'll hear from the -- Ms. Malik, I know

24   you have the timing issue that we have to discuss as

25   well.  But just on the question of jury, has there been a

Proceedings

1    demand for a jury trial?  Is that where the defendants

2    are and how does that work exactly?

3                MR. WOLTER:  Yes, your Honor, respondent Meir

4    submitted an answer which included a jury demand, and we

5    previously briefed maybe indirectly the issue of the

6    right to a jury trial, at least on some of the claims

7    that seek money damages or a money judgment.

8                So, our jury demand is pending.

9                THE COURT:  Where is that motion?  Is that in

10   this new case or in the old case or where?

11               MR. WOLTER:  No, I think it is in the 2020 case

12   in connection with we made arguments related to due

13   process so -- not specifically parsing out the claims at

14   issue and whether or not they're equitable or monetary,

15   but just to let your Honor know that we've made it clear

16   for quite awhile that we thought at least some of the

17   claims were susceptible to a jury trial.

18               THE COURT:  Okay.

19               Ms. Malik, do you have any thoughts on that

20   issue before we get to the schedule?  You're on mute.

21               MS. MALIK:  My apologies, I'm having work done

22   at the house.  I didn't want anything to disturb the

23   proceedings.

24               Your Honor, as is apparent, I'm the new kid on

25   the block.  These other counsel have had quite extensive

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 76 of 109

12

Proceedings

1    experience with this case, and they have been involved

2    with this and a lot longer than I have.  I was retained

3    on Friday, and I do not know if I'm going to include a

4    jury demand with my responsive papers at this present

5    time.

6            THE COURT:  Well, you may have read that we're

7    now -- the court system has changed spacing rules to make

8    sure trials, hopefully, a lot less complicated, and I'm

9    looking to the day when all the Plexiglass is going to be

10   removed, which I'm assured it is near.

11           So, that's fine, but the logistics of calling a

12   jury and all is still not quite back where it was before.

13   So if it is a jury trial, I'm going to need to alert

14   folks downstairs roughly a month in advance, which is

15   roughly now, that we need a jury for a given week.

16           So let's move to the timing of this all, and I

17   guess, Ms. Malik, I do appreciate the fact that you've

18   been retained recently.  At the same time, this is not a

19   new case and your client made the decision to change

20   counsel late.  And while I think that some courtesy is

21   due to give you time to get up to speed, I think the

22   notion of throwing off the whole schedule because one of

23   or two of the respondents decides to change counsel is a

24   little troublesome to me.

25           MS. MALIK:  Well, your Honor, correct me if I'm

BP

Proceedings

1    wrong, my clients were not parties to the 2020 action or

2    the 2021 proceeding.  My clients just now have been

3    brought into this litigation just by virtue of the fact

4    that my client, Ranee Bartolacci, is married to the prior

5    respondent, Nir Meir and there are -- I looked through

6    plaintiff's papers against my client, and they're replete

7    with assumptions and allegations that basically ask the

8    Court to ignore the fact that my client and Ermitage are

9    separate and divisible individuals and entities.  And he

10   wants the Court to rely on his assumptions and, quite

11   frankly, his conclusory allegations that they're

12   alteregos of Nir Meir.

13        Now, I have not had the opportunity to

14   provide -- to conduct my only due diligence and

15   investigation into plaintiff's claims.  From what my

16   understanding is -- and, please, forgive me if I misspeak

17   because I'm just familiarizing myself with the

18   proceedings that have gone on before I was retained --

19   there was a hearing, an all day evidentiary hearing on

20   January 31st at which point your Honor stated that you

21   did not have jurisdiction to make any kind of findings

22   against Ranee Bartolacci and Ermitage LLC as they were

23   not parties to the prior proceeding and that they had

24   their due process rights to be represented by counsel.

25        Now, to be represented by counsel and for me to

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18   22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document   RECEIVED NYSCEF: 03/21/2022
Pg 78 of 109

14

Proceedings

1    provide any type of meaningful representation, I need the

2    time to investigate plaintiff's claims.  I need the time

3    to investigate my client's separate property.

4           For example, plaintiff's papers claim that the

5    Hamptons estate was Meir's property.  I don't know that

6    that's the case, your Honor.  I still need to understand

7    how much of her own separate and divisible property were

8    invested in the property, if this was fair consideration,

9    payments that he made to her and that's the burden that,

10   honestly, plaintiff has to prove that there was no fair

11   consideration.

12          So, in order to come up with, you know, to

13   basically investigate, review my clients' bank

14   statements, their inter-marital investments or what is

15   separate and whether or not his debt and fraud is

16   separate and apart from her; it just can't be imputed

17   just on plaintiff's say so.

18          I just need to make sure that I have the

19   evidence to be able to raise triable issues of fact in

20   response to his order to show cause and petition.

21          At that point if -- and I anticipate that I will

22   be able to do so.  At that point if the Court determines

23   that there are triable issues of fact, then there has to

24   be some sort of discovery.

25          Now, my client was served with an information

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM   INDEX NO. 151267/2022
NYSCEF DOC. NO. 18   22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document   RECEIVED NYSCEF: 03/21/2022
Pg 79 of 109

15

Proceedings

1    subpoena -- not the individual -- the LLC was served with

2    an information subpoena and a subpoena duces tecum.

3            So just let me give off little bit of the

4    chronology from my perspective.  I'm retained on

5    March 11th.  I immediately request an extension of time.

6    Mr. Hatch-Miller refuses.  I immediately reach out to the

7    Court to make an application.  Then I get served copies

8    of the subpoena duces tecum, copies of the information

9    subpoena.  I got e-mails from Mr. Hatch-Miller regarding

10   a jury trial.  I got e-mails from him regarding upcoming

11   depositions.

12           Now, any depositions, I don't know if it was

13   scheduled in connection with this proceeding or if it was

14   scheduled in connection with deposing her as a non-party

15   in the prior proceeding.

16           There are just so many issues that need to be

17   weeded through, but my most pressing job is to review my

18   client's position, her documentation, to the extent to

19   which all her property and investments in Ermitage or in

20   the Hamptons property are separate and indivisible from

21   Meir's interest and his obligations and that I need time

22   for that, Judge.  I cannot do that in 48 hours or seven

23   days.

24           THE COURT:  Well, I certainly have sympathy for

25   where you are, having been retained on Friday.  The

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM
NYSCEF DOC. NO. 18
INDEX NO. 151267/2022
RECEIVED NYSCEF: 03/21/2022

22-0107-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 80 of 109

16

Proceedings

1    complicating factor for the Court and the other parties

2    is that that is a situation of your client's own making.

3    I don't want to go through the entire record, not all of

4    which obviously you had a chance to look through.  I do

5    not believe I said that I didn't have jurisdiction.  I

6    said that the better way to proceed I thought in the end

7    of the day was to go under -- go the petition route, so

8    that.

9            MS. MALIK:  One thing --

10           THE COURT:  Hang on.  So that your client would

11   have a -- your client was given the opportunity to

12   participate in the other proceeding, but I won't go

13   through all of it.

14           So, this is not really new.  All the evidence

15   that you're talking about should be in your client's or

16   her husband's possession.  This is not a situation where

17   you need information from the plaintiff to figure out

18   what's going on.

19           But, look, having said all that, I do want this

20   procedure to be a fair one and I want to get to the right

21   result, whether it is on the papers, on summary judgment

22   or a trial, whatever type of trial that is.  So, I'll let

23   you finish and then I'm going to ask Mr. Hatch-Miller to

24   weigh in and Mr. Wolter to weigh in on the schedule.

25           I'm also not a huge fan of embedding into this

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM          INDEX NO. 151267/2022
NYSCEF DOC. NO. 18  22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document   RECEIVED NYSCEF: 03/21/2022
Pg 81 of 109

17

Proceedings

1    process of potential Appellate issue that's unnecessary

2    if we can adjust it with small number of days.

3         MS. MALIK:  I totally agree with your Honor.

4         The only thing I think I'd like to correct is

5    that my understanding was that this is the first time my

6    clients were actually named in the proceeding.  They --

7    the filing was sometime mid February.  Since then my

8    client consulted with no less than three attorneys, two

9    of which were conflicted out because of Andrew Heyman --

10   prior involvement with Andrew Heyman who I think is

11   affiliated with the plaintiff in some manner; and I was

12   this a third attorney she consulted with and I did not

13   have a conflict, and I was retained on Friday.

14        So I don't know that she delayed in changing

15   counsel.  That's the only thing --

16        THE COURT:  Look, I think once you review the

17   record you may have a sense of where I'm coming from on

18   this.

19        I don't think that's the only way to look at the

20   timing of all of this.  This issue of whether Ms.

21   Bartolacci's assets are subject to the judgment

22   enforcement proceedings has been around for quite

23   sometime, and there's been a lot of chasing around

24   through in Florida.  There were representations made to

25   me about who owned that property which at least I've seen

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18    22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document    RECEIVED NYSCEF: 03/21/2022
Pg 82 of 109

18

Proceedings

1    some indication were not accurate.

2            There's a lot, and it goes back a long time; and

3    from my perspective the notion that your client was not

4    aware of this for a very long time is not news to me,

5    and, in fact, that doesn't seem credible to me.

6            Now, it is true that procedurally this separate

7    proceeding began in February, but it in fact began a lot

8    longer ago than that.

9            Now, Mr. Hatch-Miller, I understand the benefits

10    of getting this done as soon as possible.  At the same

11    time, I do want to make sure that there can be no doubt

12    that whatever result we reach in either direction is a

13    fair one and that procedurally, it's been fair and that

14    one can't look back on it and say, well, you've got to

15    start over again because you didn't do it in a careful

16    way.

17            MR. HATCH-MILLER:  I understand completely, your

18    Honor.  What I proposed earlier when Ms. Malik contacted

19    me was a one-week extension, despite all the statements

20    the Court made at the hearings a month or so ago

21    anticipating exactly this might happen, that Ms.

22    Bartolacci would claim, you know, her due process rights,

23    require her participation and then try to frustrate the

24    schedule of the court set by delay.  That's exactly what

25    happened.  Nevertheless, I proposed a one-week extension,

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18    22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document   RECEIVED NYSCEF: 03/21/2022
Pg 83 of 109

19

Proceedings

1    and I'd be willing to agree to a little more than that as

2    long as we don't lose the April placeholder date for a

3    trial if the Court finds that evidence submitted by

4    Ms. Bartolacci or Mr. Meir raises a fact issue.

5         I expect there's not going to be a need for the

6    trial because the truth is Meir, alone, owned this entity

7    and he orchestrated a cash fraudulent transfer of the

8    proceeds to his wife and Ermitage last year so that

9    there's no fact issues standing in the way of a

10   $13 million roughly judgment.

11        Nevertheless, the Court's trial date that it

12   picked is what should take precedence, and I'm happy to

13   work backwards from that to figure out the most generous

14   schedule possible to Ms. Malik that would not risk losing

15   that.

16        So, a possibility, your Honor, is if -- I would

17   be willing to agree to a further week extension of the

18   paper opposition to March 28th.  In that circumstance, I

19   would be prepared to file reply papers which,

20   essentially, I anticipate are going to point out the

21   absence of any fact issue that's been raised requiring

22   trial by April 8th.  That would allow us to have the week

23   of April 11th for the Court to review the papers, call in

24   the parties if necessary and appear for a trial,

25   potentially, the week of April 18th if the Court finds

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18    22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document    RECEIVED NYSCEF: 03/21/2022
Pg 84 of 109

20

Proceedings

1    there's some issue requiring trial, or if maybe the Court

2    would instead have effectively a summary-judgment type

3    argument that week, if the Court is leaning toward no

4    trial fact issue.  I just don't want to lose that April

5    date, your Honor.

6           And part of the reason that this issue is so

7    pressing relates to the new evidence we found last week

8    that we e-mailed you about at the end of the day on

9    Friday, and it's just, you know, every time we get more

10   discovery in this case, your Honor, we find more and more

11   evidence that what Meir has done for the last year is

12   hide behind his wife and spend outrageous amounts of

13   money from her accounts, which he actually has control

14   over.

15          Ms. Bartolacci is not the one spending 1,000 to

16   3,000 dollars a night at a strip club in Miami on an Am

17   Ex card.  Yet, her accounts are being used to repay those

18   bills.  They're being used to repay $10,000 plus

19   expenditures on high-end wine merchants, private jet

20   travel, the strip clubs, dinners at Michelin star

21   restaurants and the money that's going out is in the many

22   hundreds of thousands a month.

23          And so time is of the essence, your Honor.  We

24   anticipate asking you in this order to show cause to the

25   full extent permitted by New York procedural law put a

21

Proceedings

1    stop to spending from Bartolacci's account immediately.

2              THE COURT:  What do you have in mind in that

3    regard?

4              MR. HATCH-MILLER:  Well, your Honor, what I have

5    in mind is the following:

6              CPLR 6201 provides for attachment where a

7    defendant is a non-domiciliary, and it, also, as you

8    know, provides for attachment when there's evidence of

9    disposition of assets which there is here, removal of

10   assets from the jurisdiction which is what happened last

11   year when the fraudulent transfer occurred.  The money

12   moved to Florida and it's been put in accounts in Florida

13   and Delaware and elsewhere.

14             And the Court of Appeals has held in the 71

15   Mezzanine Lender case that New York courts have authority

16   when there's personal jurisdiction over an out-of-state

17   defendant to order attachment of out-of-state assets, to

18   order the defendant to bring assets to New York to secure

19   the judgment.

20             So what do we know about?  We know about some

21   bank accounts in Florida where Ms. Bartolacci's money is

22   currently being used to repay the $3,000 a month or so

23   that Mr. Meir's is putting on his Am Ex card.

24             We know about a collection of high-end cars,

25   some worth as much as half a million --

22

Proceedings

1           THE COURT:  I get all that.

2           What do you envision I can do by order that

3    would help?

4           MR. HATCH-MILLER:  It is an order to attach

5    Ms. Bartolacci's separate assets up to the amount of the

6    $13 million roughly, to require her to bring those assets

7    to New York, including the car collection, as security

8    for the judgment.

9           I suspect she may not honor those, your Honor.

10   We've had restraining notices out to Meir, Bartolacci and

11   Ermitage and one for more than a year, and they have

12   never been honored.  Not only have the restraining

13   notices not been honored, but Mr. Meir flagrantly

14   disregarded a First Department order last summer that

15   required him to stop the spending and the spending goes

16   on and on.

17          It is just a piece of paper, your Honor, as you

18   know and they may ignore it; but there are consequences

19   and there should be consequences, including additional

20   fines; and I don't say this lightly, but the risk of

21   possibility of imprisonment for disregarding court orders

22   in this context.

23          So I think you should issue some orders that

24   require security to be provided, and it's at Meir's and

25   Bartolacci's risk to ignore those orders.

BP

23

Proceedings

1          THE COURT:  Ms. Malik, I am trying to work out a

2     way to give you a little more time.  As it happens,

3     there's a little more flexibility in my trial schedule,

4     given another trial and maybe another one going away.

5          I do based on a long and difficult time in this

6     case have some concerns that as time goes by, the assets

7     that were represented to me many, many months ago were

8     available to satisfy this judgment are dissipating.

9          I have a concern by that, and I think just

10    giving more time without any kind of ability to ensure

11    that that is not prejudicial to the plaintiffs because,

12    again, I do start from the position that your client's

13    decision to retain you this late really was up to her.

14    But how can I get some comfort there is some security in

15    case.  You know, there's a judgment against Mr. Meir, but

16    some judgment in case there is a judgment against your

17    client as well?

18          MR. MALIK:  Well, your Honor, from my limited

19    consultations and conversations with my client, my client

20    came into this marriage with Mr. Meir with her own

21    independent standing, substantial separate assets.  She's

22    a mom of three, raising three kids under 12.  She was not

23    overly involved with Mr. Meir's business transactions.

24          The credibility, your Honor mentioned something

25    about Credibility, and Mr. Hatch-Miller is imputing the

BP

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18    22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document   RECEIVED NYSCEF: 03/21/2022
Pg 88 of 109

24
Proceedings

1    credibility determination that has been made against

2    Mr. Meir to my client.  She's never been deposed in this

3    case.  She's never made any type of appearance in this

4    case.

5         I think Mr. Hatch-Miller has to -- it's his

6    burden to prove that his plaintiff's rights are superior

7    than to Ranee Bartolacci's rights to any payment that she

8    received from her husband.  It does not even take into

9    account any investments of her own money that she made

10   into the property or that she was paid back.

11        THE COURT:  Well, let me ask you this because I

12   have sifted through this record, I've had a little more

13   time than you have so far and I've read however many

14   hundreds pages of Mr. Meir's deposition and all the other

15   things.  There's plenty to be concerned about here from

16   my perspective.

17        There is some reference to your client having

18   assets coming into the marriage, but never any

19   explanation of what that might be.

20        There is some reference to her having a

21   business, but no business reference to what that is.

22        There was a reference -- there was a question

23   asked even about I think whether there was a joint tax

24   return and to which Mr. Meir said he didn't know or he

25   didn't remember.  I mean, all of stuff is awfully odd.

25

Proceedings

1          Now, if you tell me that Ms. Bartolacci came

2     into this marriage with hundreds of millions of dollars

3     from her prior business or whatever, she has an

4     independent business now which was described as sort of

5     an event planning business that has been generating the

6     kind of revenue that generates the spending that I'm

7     hearing about, that may be a different story; but I've

8     really never gotten anything to explain what that might

9     be.

10          But, look, I would be sensitive.  I mean, she

11     has her own individual rights, I get that.  But if this

12     money really is just flowing from Mr. Meir's business, it

13     certainly seems to be some commingling that at least has

14     been alleged.

15          Anyway, I wanted to give you -- I do want to

16     give you a chance and, frankly, I'm hoping that you can

17     persuade me that my suspicions are unfounded because

18     they're troubling, and I don't really want them to be

19     true; but if they are, they are.

20          So, I mean, is that what we're talking about

21     here?  Is did she come into this relationship with tens

22     of millions of dollars?

23          MS. MALIK:  Yes, your Honor, yes.  And of her

24     own individual money and she didn't come into this

25     marriage empty handed.  This is not the wife that's been

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM          INDEX NO. 151267/2022
NYSCEF DOC. NO. 18    22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document   RECEIVED NYSCEF: 03/21/2022
Pg 90 of 109

26

Proceedings

1    dependent upon her husband to pay her lifestyle and her

2    standard of living.

3              Are we really going to sit here and judge how

4    they spend their money as a married couple?  It's fine, I

5    understand the fraud or whatever decisions have been made

6    against Meir.  They just can't be imputed to my client

7    who hasn't even had the opportunity to present her

8    position to the Court.

9              And to go from thirty days -- I requested thirty

10   days which I think is sufficient for me to present my

11   responsive papers in writing.  However, to go from that

12   to go to a potential jury trial on April 19th and if I

13   need to bring in an expert to show to support the

14   forensic calculations, to show her separate involvement

15   and her investment into this marriage and into the

16   properties, I don't know that -- I'm pretty sure I'm not

17   going to be ready by April 18th or 19th.

18             I understand Mr. Hatch-Miller has a time crunch

19   and I respect what he's trying to do; however, it's also,

20   like, a little bit unfair because on -- as soon as I was

21   retained I reached out to him.  He knew I was going to

22   come into the court and I did request the time to defend

23   my client appropriately and professionally; and I get an

24   e-mail from him yesterday saying that your client is now

25   in default.  I said how can my client be in default if

Proceedings

1    I've already put in the a request for an extension of

2    time?

3              So I understand that he's doing -- representing

4    his client zealously and aggressively, but I have to do

5    the same form my client.

6              All I'm asking for is thirty days for responsive

7    papers; and if there's an issue of fact which I

8    anticipate there will be that is raised by my responsive

9    papers, then we'd be given the appropriate discovery and

10   trial schedule.

11             THE COURT:  Well, just so I'm sure, you're

12   asking for thirty more days from when?

13             MS. MALIK:  From Friday when I was retained.

14   The papers were due on the 14th, so thirty days from the

15   14th.  So if I could have till April 14th to submit my

16   papers, then he could have week two weeks, three weeks if

17   he wants for a reply.  And if there's oral arguments, I

18   can be prepared for oral arguments thereafter.

19             And as far as his request for an attachment

20   under 6201, I believe in his e-mail -- he submitted an

21   e-mail that this is what's happening and that Ranee is

22   paying the Am Ex bill; but he's had hundreds of pages of

23   responsive documents to subpoenas.  I haven't seen any of

24   them.

25             I would request that he provide copies to my

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 18
22-0107-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
RECEIVED NYSCEF: 03/21/2022
Pg 92 of 109

28

Proceedings

1    office of all the discovery that he has, and I'd like the

2    opportunity to review them.  And if he's going to make an

3    order to show cause for a TRO to restrain my client's

4    accounts without first making the showing that he's

5    entitled to even have the relief against her assets, I

6    think it is a little premature.

7            The other thing is that information subpoena and

8    duces tecum I mentioned earlier, he indexed it under the

9    prior index number where my client is not a party.  So

10    does he want her to respond as a nonparty or a party?

11    Does he want to depose her as a party or a nonparty?  I

12    mean, I need those things.

13            THE COURT:  I get it.  Give me a minute.  I'm

14    going to chat with my law clerk about scheduling.  Hold

15    on.

16            (Brief pause)

17            THE COURT:  So here's what I can do, at least a

18    caveat or a suggestion.

19            I can move this to May 2nd for the trial.  I can

20    give you -- as long as I have whatever briefing I need,

21    including the reply brief by let's say April 20th -- it

22    could be earlier than that.

23            MR. HATCH-MILLER:  Your Honor, we couldn't hear

24    the date.

25            MR. MALIK:  Sorry, I couldn't hear it.

Proceedings

1          THE COURT:  The week of May 2nd.

2          MR. MALIK:  And for the briefing schedule, to be

3    complete by what date?

4          THE COURT:  I think that that can -- if you have

5    your brief in by April 11th and then the reply by let's

6    say April 18th, will give me time to make a decision.  We

7    may end up -- you're going to be hurdling towards trial,

8    which is what we'd be doing anyway.

9          We'll give you -- I want to have a full and fair

10   chance for you to put whatever evidence you want to put

11   in, both sides to put in.

12         The deposition, which I understand has been

13   scheduled, I don't see any reason why it shouldn't go

14   forward as planned; but that way -- although, with that

15   deposition when it is planned give you time still to

16   write a brief by April 11th?

17         MR. MALIK:  It is scheduled for April 11th, your

18   Honor.  So I would request at least the following week

19   because I also have to confirm with my client that she's

20   comfortable doing it virtually or she's going to come up

21   to New York.

22         THE COURT:  Why don't you just do the deposition

23   earlier?  I'm not slowing -- I have absolutely no

24   patience to slow this thing down.  So May 2nd I can give

25   you; and if you work out the briefing so that I get the

Proceedings

1   papers in enough time to be able to review them and if

2   either make a decision -- and I don't know whether these

3   are being pitched as summary judgment papers or not,

4   but --

5            MR. HATCH-MILLER:  Your Honor, can I make a

6   suggestion on the timing?  Because I think it's important

7   that Ms. Bartolacci's papers stating whatever her

8   position is be submitted prior to that April 11th

9   deposition.  I need to know --

10           THE COURT:  That doesn't make any sense to me.

11   There should be -- let's take a step back, okay.

12           This briefing when you all do it should be based

13   on the record as best can you make it, just like a

14   summary judgment wouldn't happen until after discovery is

15   over.

16           So, I think what you need to do, Ms. Malik, is

17   turn up the jets on the discovery front-loading mat so

18   that this deposition happens much sooner.

19           We're not talking about deposing the CEO of a

20   multimillion -- a global corporation who has to go

21   through 7 million records to figure out what's going on.

22   This is her personal life.

23           So while you need to get up to speed, what I'm

24   going to suggest is that you accelerate on both sides

25   whatever discovery you need to do so that -- and I mean

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18    22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document    RECEIVED NYSCEF: 03/21/2022
Pg 95 of 109

31
Proceedings

1    really accelerate it and get it done.  So that when you

2    file your brief -- you asked for thirty days and I'm

3    giving it to you, April 11th, that should be based on

4    pretty much what the record is going to be.

5         So there's a little bit of flexibility in this,

6    I guess, if we're going to have May 2nd; but we're not

7    talking about you put your brief in, then you have a

8    deposition, then the record is different.

9         I want when you file your papers, you should

10   have your act together, including what your client's on

11   the record saying and everything.

12         MR. MALIK:  Your Honor, I just want to point out

13   one -- may I proceed, your Honor?

14         THE COURT:  Yes.

15         MR. MALIK:  I just want to point out one thing.

16   My client from my conversations with her is not just some

17   simple person that came into it with one or two bank

18   accounts.

19         THE COURT:  Just to be clear, I didn't mean that

20   to sound -- what I meant to say is that she doesn't have

21   500 employees to get e-mails from and everything else.

22         MR. MALIK:  So the only thing I would request

23   then that if the deposition is supposed to stay -- let me

24   just check my calendar, one second, for April 11th.  I

25   didn't know if I had anything else on the date, but I

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 18
22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document
RECEIVED NYSCEF: 03/21/2022
Pg 96 of 109

32

Proceedings

1    would like it to be rather than me working on preparing

2    for the deposition and the brief, I'd like it to be so

3    that I'm done with the brief by April 10th, which is a

4    Sunday, April 11th and then do the deposition on the 12th

5    or the 13th.

6            THE COURT:  No, you're not listening to me,

7    okay.

8            I want you to be able in your brief to put in

9    whatever evidence you have put into discovery, including

10   your client's testimony.  I don't want there to be a

11   brief and then the -- without you being able to include

12   whatever relevant evidence there should be.

13           So let's do this the way this normally works,

14   which is you have discovery first and then you put

15   summary judgment papers in.  The price of us moving this

16   trial is that while you are getting up to speed,

17   discovery that is very targeted and solely for purposes

18   of this trial has to be accelerated substantially so that

19   you get all discovery done.  And, again, if it's not

20   April 11th, but sometime that week, and as long as I get

21   papers the next week in reply, that's fine, but I want it

22   to be on a full record.

23           MS. MALIK:  Your Honor --

24           THE COURT:  Let me hear from Mr. Hatch-Miller

25   real quickly, and then I have to wrap this up.

BP

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18  22-01017-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document   RECEIVED NYSCEF: 03/21/2022
Pg 97 of 109

33

Proceedings

1          MR. HATCH-MILLER:  And I appreciate everything

2      that you're doing today, your Honor, and will respect

3      your time.

4          I on the discovery front for weeks, even before

5      Ms. Malik appeared, I've been asking Mr. Hutcher's firm

6      and now Ms. Malik's firm to tell me that they'll agree to

7      accept service on counsel of discovery papers.  We can

8      serve discovery papers and under the judgment enforcement

9      provisions, we're entitled to get responses, information,

10     basically interrogatories in seven days, documents in

11     ten.

12         I haven't been able to serve them yet.  They're

13     going to be very limited because no one will accept

14     service.  I can serve the requests today if either Ms.

15     Malik will confirm that she'll agree to e-mail service or

16     if your Honor on the record orders acceptance of e-mail

17     service so that --

18         THE COURT:  Here are of the choices, here are of

19     the choices, Ms. Malik.  We either keep the current

20     schedule and you all do whatever you're going to do with

21     these discovery things and whatever is going on with

22     service; or I give you the extra time, you commit --

23     everyone commits to finishing discovery within the next

24     really two weeks and so that you have a full and fair

25     opportunity the week of April 11th -- we can come up with

BP

22-01017-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document

1    a specific date -- but, really in that week and so that

2    we have a record upon which summary judgment can be

3    evaluated without deposition transcripts coming in over

4    the transom after your brief is over with where you will

5    certainly ask for a sur-reply at that point and we're

6    jury's not going to do that.

7              So if you are willing to -- well, I'm putting in

8    a discovery -- an accelerated discovery period where I

9    want discovery finished by April 8th, all submissions,

10   all documents, everything.

11             MS. MALIK:  Your Honor, I would just request,

12   Mr. Hatch-Miller, what exactly are the discovery

13   documents --

14             THE COURT:  Hang on.  I really have got to get

15   moving.  What I'm telling you is that the discovery for

16   this proceeding should be completed by April 8th, and

17   then I'll give you till April --

18             MR. HATCH-MILLER:  April 15th is the Friday,

19   your Honor.

20             THE COURT:  April 15th to file your opposition

21   and then the 22nd for reply.

22             MR. HATCH-MILLER:  And, your Honor, just to

23   state very quickly on the record my intention.

24             I intend to send Ms. Malik and to ask her to

25   accept e-mail service of a very limited information

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 18
RECEIVED NYSCEF: 03/21/2022

22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document
Pg 99 of 109
35

Proceedings

1    subpoena and document subpoena under the judgment

2    enforcement provisions by tomorrow the 17th.  That would

3    make the documents -- the written response is due on the

4    24th, the documents due on the 28th.

5             And we're just going to ask, basically, for

6    whatever documents they have related to Ms. Bartolacci's

7    claim that she owned Ermitage -- sorry -- that she own

8    the 40 Meadow Lane property, the EZL entity and EAM

9    entity, and anything she has that supports her claim that

10   this was not a $13 million fraudulent transfer.  So, if

11   she's got e-mails that show she really owned this thing,

12   her correspondence and e-mails with Mr. Meir or others

13   about the sale of the property and the transfers, it's

14   pretty limited and we'll get those out tomorrow and my

15   expectation is we'll get a date for Ms. Bartolacci's

16   deposition, which should be the only deposition we take

17   the week of April -- sometime the week of April 4th as

18   you said to complete discovery by the 8th.

19            MS. MALIK:  So, I will take -- I haven't seen

20   the demands --

21            THE COURT:  Honestly, I'm not negotiating this

22   right now.  If they're narrowly targeted discovery

23   requests, you can assume I'll enforce them.  If they are

24   far and wide, then there's going to be objections, I

25   expect that.

36

Proceedings

1          If that happens, then I'll deal with it.  You

2     need to work out a schedule to be done by the 8th.  I'll

3     give you to the 15th which is now more than thirty days

4     that you've asked for to have your opposition and that's

5     it.

6          Now, I'm hopeful I do not need in the interim,

7     but I will accept it if it needs to be filed, about some

8     request about restraining assets.  If we move this with

9     this speed and there are no problems and nothing new

10    comes up, I'm willing to just get things done on this

11    schedule.

12         But --

13         MR. HATCH-MILLER:  And I'll take into account,

14    your Honor, in deciding whether to do that, the

15    representations that have been made today that

16    Ms. Bartolacci does have significant assets so that such

17    that she's not going to try to hide behind poverty once

18    the 13 million dollar judgment is hopefully entered.

19    I'll consider that in deciding whether to file this

20    motion.

21         THE COURT:  I took that as the representation as

22    well.  Well, actually, what I think was said is that she

23    came into the marriage with substantial assets.  I don't

24    know whether they have been dissipated, but we just need

25    to wrap this up.

37

Proceedings

1           So, I give you your extra time subject to full

2      discovery, responding to targeted requests, limited to

3      what's at issue in this proceeding which is a narrowly

4      tailored proceeding.  Get it done by the 8th.  Get the

5      briefs in by the 15th and the 22nd and figure out whether

6      this is a jury trial or not, and we'll have to arrange

7      for a jury to be called in because I think we're still

8      calling in jurors for specific trials, although that may

9      be changing.

10           All right, let's all I have time for today.  Is

11      I hope the message is clear.

12           MR. MALIK:  Thank you very much, your Honor, for

13      your courtesies and your ruling.

14           Who I do contact to get a copy of the transcript

15      for today's proceedings?

16           THE COURT:  Bonnie will give her e-mail address

17      in the chat box at the bottom of the screen.

18           Thank you, all.  Please stay safe and healthy,

19      and I will see you soon.

20

21

22

23

24

25

1

2

3                    **C E R T I F I C A T I O N**

4

5        INDEX 151267/22 and 655980/20   YH Lex v Nir Meir et al

6

7                              ---

8

9                              THIS IS HEREBY CERTIFIED TO BE A
                               TRUE AND CORRECT TRANSCRIPT.
10

11
                               BONNIE PICCIRILLO
12                             OFFICIAL COURT REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM    INDEX NO. 151267/2022
NYSCEF DOC. NO. 18    22-0107-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document    RECEIVED NYSCEF: 03/21/2022
Pg 103 of 109

1

**$**

**$10,000** [1] - 20:18
**$13** [3] - 19:10, 22:6, 35:10
**$3,000** [1] - 21:22

**'**

**'22** [1] - 9:17

**1**

**1,000** [1] - 20:15
**10019** [2] - 1:16, 2:14
**10022** [2] - 1:23, 2:22
**10158** [2] - 1:19, 2:18
**10th** [1] - 32:3
**11th** [11] - 15:5, 19:23, 29:5, 29:16, 29:17, 30:8, 31:3, 31:24, 32:4, 32:20, 33:25
**12** [1] - 23:22
**12th** [1] - 32:4
**13** [1] - 36:18
**1301** [2] - 1:15, 2:14
**13th** [1] - 32:5
**14th** [3] - 27:14, 27:15
**15** [1] - 8:18
**151267-2022** [2] - 3:10, 9:19
**151267/22** [1] - 1:4
**15th** [4] - 34:18, 34:20, 36:3, 37:5
**16** [2] - 1:9, 2:9
**17th** [1] - 35:2
**18th** [3] - 19:25, 26:17, 29:6
**19th** [3] - 10:10, 26:12, 26:17

**2**

**20** [1] - 8:24
**2020** [5] - 3:15, 4:9, 9:4, 11:11, 13:1
**2021** [1] - 13:2
**2022** [3] - 1:9, 2:9, 4:2
**20th** [1] - 28:21
**22** [3] - 3:23, 5:21
**22nd** [2] - 34:21, 37:5
**24th** [1] - 35:4
**28th** [2] - 19:18, 35:4
**2nd** [4] - 28:19, 29:1, 29:24, 31:6

**3**

**3** [2] - 1:1, 2:1
**3,000** [1] - 20:16

**31st** [1] - 13:20
**32** [2] - 1:23, 4:4
**3213** [1] - 7:4
**32nd** [2] - 1:15, 2:14

**4**

**40** [1] - 35:8
**404.28** [1] - 5:22
**48** [1] - 15:22
**4th** [1] - 35:17

**5**

**500** [1] - 31:21
**57th** [2] - 1:23, 4:4

**6**

**60** [2] - 1:8, 2:8
**605** [2] - 1:19, 2:17
**6201** [2] - 21:6, 27:20
**655980-2020** [1] - 3:10
**655980/20** [1] - 2:4

**7**

**7** [1] - 30:21
**71** [1] - 21:14

**8**

**8th** [8] - 1:23, 4:4, 19:22, 34:9, 34:16, 35:18, 36:2, 37:4

**9**

**909** [1] - 2:21

**A**

**ability** [1] - 23:10
**able** [7] - 9:11, 14:19, 14:22, 30:1, 32:8, 32:11, 33:12
**absence** [1] - 19:21
**absent** [1] - 8:4
**absolutely** [2] - 5:7, 29:23
**accelerate** [2] - 30:24, 31:1
**accelerated** [2] - 32:18, 34:8
**accept** [4] - 33:7, 33:13, 34:25, 36:7
**acceptance** [1] - 33:16
**account** [3] - 21:1, 24:9, 36:13
**accounts** [6] - 20:13,

20:17, 21:12, 21:21, 28:4, 31:18
**accurate** [1] - 18:1
**act** [1] - 31:10
**action** [1] - 13:1
**actual** [1] - 7:23
**additional** [1] - 22:19
**address** [1] - 37:16
**adjust** [1] - 17:2
**advance** [1] - 12:14
**affects** [1] - 10:1
**affiliated** [1] - 17:11
**aggressively** [1] - 27:4
**ago** [3] - 18:8, 18:20, 23:7
**agree** [6] - 6:15, 17:3, 19:1, 19:17, 33:6, 33:15
**agreed** [1] - 6:19
**agreed-upon** [1] - 6:19
**alert** [1] - 12:13
**allegations** [2] - 13:7, 13:11
**alleged** [1] - 25:14
**allow** [1] - 19:22
**alone** [1] - 19:6
**alteregos** [1] - 13:12
**Americas** [2] - 1:15, 2:14
**amount** [1] - 22:5
**amounts** [1] - 20:12
**Andrew** [3] - 3:12, 17:9, 17:10
**answer** [1] - 11:4
**anticipate** [4] - 14:21, 19:20, 20:24, 27:8
**anticipating** [1] - 18:21
**anyway** [2] - 25:15, 29:8
**apart** [1] - 14:16
**apologies** [1] - 11:21
**apparent** [1] - 11:24
**Appeals** [1] - 21:14
**appear** [1] - 19:24
**appearance** [1] - 24:3
**appearances** [1] - 3:6
**APPEARANCES** [2] - 1:13, 2:12
**appeared** [1] - 33:5
**appearing** [1] - 4:6
**Appellate** [4] - 4:12, 5:5, 17:1
**application** [1] - 15:7
**appreciate** [3] - 9:16, 12:17, 33:1
**appropriate** [1] - 5:24,

6:17, 27:9
**appropriately** [1] - 26:23
**approve** [1] - 8:7
**April** [29] - 9:23, 10:10, 19:2, 19:22, 19:23, 19:25, 20:4, 26:12, 26:17, 27:15, 28:21, 29:5, 29:6, 29:16, 29:17, 30:8, 31:3, 31:24, 32:3, 32:4, 32:20, 33:25, 34:9, 34:16, 34:17, 34:18, 34:20, 35:17
**argue** [1] - 10:20
**argument** [2] - 6:13, 20:3
**arguments** [3] - 11:12, 27:17, 27:18
**arrange** [1] - 37:6
**assets** [14] - 17:21, 21:9, 21:10, 21:17, 21:18, 22:5, 22:6, 23:6, 23:21, 24:18, 28:5, 36:8, 36:16, 36:23
**assume** [1] - 35:23
**assumptions** [2] - 13:7, 13:10
**assured** [1] - 12:10
**attach** [1] - 22:4
**attachment** [4] - 21:6, 21:8, 21:17, 27:19
**attention** [1] - 7:19
**attorney** [1] - 17:12
**Attorneys** [6] - 1:15, 1:18, 1:22, 2:13, 2:17, 2:20
**attorneys** [1] - 17:8
**authority** [1] - 21:15
**available** [1] - 23:8
**Avenue** [5] - 1:15, 1:19, 2:14, 2:17, 2:21
**aware** [1] - 18:4
**awfully** [1] - 24:25
**awhile** [1] - 11:16

**B**

**backwards** [1] - 19:13
**bank** [3] - 14:13, 21:21, 31:17
**Bartolacci** [11] - 1:22, 4:7, 9:19, 13:4, 13:22, 18:22, 19:4, 20:15, 22:10, 25:1, 36:16
**BARTOLACCI** [1] - 1:6

**Bartolacci's** [9] - 17:21, 21:1, 21:21, 22:5, 22:25, 24:7, 30:7, 35:6, 35:15
**based** [5] - 6:24, 10:15, 23:5, 30:12, 31:3
**BEFORE** [2] - 1:11, 2:10
**began** [2] - 18:7
**beginning** [1] - 3:6
**behind** [3] - 9:6, 20:12, 36:17
**bench** [1] - 10:4
**benefits** [1] - 18:9
**best** [1] - 30:13
**better** [1] - 16:6
**bill** [1] - 27:22
**bills** [1] - 20:18
**bit** [4] - 4:20, 15:3, 26:20, 31:5
**block** [3] - 7:11, 7:14, 11:25
**Bonnie** [3] - 2:24, 9:18, 37:16
**bottom** [1] - 37:17
**box** [1] - 37:17
**brief** [11] - 28:16, 28:21, 29:5, 29:16, 31:2, 31:7, 32:2, 32:3, 32:8, 32:11, 34:4
**briefed** [1] - 11:5
**briefing** [4] - 28:20, 29:2, 29:25, 30:12
**briefs** [1] - 37:5
**bring** [3] - 21:18, 22:6, 26:13
**brings** [1] - 7:11
**brought** [1] - 13:3
**burden** [2] - 14:9, 24:6
**business** [7] - 23:23, 24:21, 25:3, 25:4, 25:5, 25:12
**BY** [6] - 1:16, 1:20, 1:24, 2:15, 2:18, 2:22

**B**

**backwards** [1] - 19:13
**bank** [3] - 14:13, 21:21, 31:17
**Bartolacci** [11] - 1:22, 4:7, 9:19, 13:4, 13:22, 18:22, 19:4, 20:15, 22:10, 25:1, 36:16
**BARTOLACCI** [1] - 1:6

**C**

**calculate** [1] - 6:10
**calculations** [1] - 26:14
**calendar** [1] - 31:24
**cannot** [1] - 15:22
**CAPITAL** [1] - 2:5
**Capital** [2] - 2:21, 3:19
**car** [1] - 22:7
**card** [2] - 20:17, 21:23
**careful** [1] - 18:15

cars [1] - 21:24
case [24] - 3:16, 3:24, 3:25, 4:2, 4:9, 8:14, 8:23, 9:4, 9:17, 11:10, 11:11, 12:1, 12:19, 14:6, 20:10, 21:15, 23:6, 23:15, 23:16, 24:3, 24:4
cash [1] - 19:7
causing [1] - 9:8
caveat [1] - 28:18
Centre [2] - 1:8, 2:8
CEO [1] - 30:19
certainly [3] - 15:24, 25:13, 34:5
chance [3] - 16:4, 25:16, 29:10
change [2] - 12:19, 12:23
changed [1] - 12:7
changes [1] - 8:3
changing [2] - 17:14, 37:9
chasing [1] - 17:23
chat [2] - 28:14, 37:17
check [1] - 31:24
choices [2] - 33:18, 33:19
CHRISTOPHER [1] - 2:22
Christopher [1] - 3:18
chronology [1] - 15:4
circumstance [1] - 19:18
Citrin [1] - 3:22
CITRIN [2] - 1:18, 2:16
claim [4] - 14:4, 18:22, 35:7, 35:9
claims [7] - 10:21, 11:6, 11:13, 11:17, 13:15, 14:2
clause [1] - 5:14
cleaner [1] - 5:8
cleanup [1] - 8:16
clear [5] - 10:3, 10:6, 11:15, 31:19, 37:11
clerk [6] - 5:10, 8:6, 8:9, 8:12, 9:10, 28:14
client [25] - 3:12, 7:1, 12:19, 13:4, 13:6, 13:8, 14:25, 16:10, 16:11, 17:8, 18:3, 23:17, 23:19, 24:2, 24:17, 26:6, 26:23, 26:24, 26:25, 27:4, 27:5, 28:9, 29:19, 31:16
client's [8] - 14:3, 15:18, 16:2, 16:15,

23:12, 28:3, 31:10, 32:10
clients [3] - 13:1, 13:2, 17:6
clients' [1] - 14:13
close [1] - 9:12
closed [1] - 8:25
closing [1] - 9:15
club [1] - 20:16
clubs [1] - 20:20
clunky [1] - 4:20
COHEN [3] - 1:11, 2:10, 2:20
Cohen [1] - 3:18
colleague [2] - 3:11, 3:19
collection [2] - 21:24, 22:7
comfort [1] - 23:14
comfortable [1] - 29:20
coming [3] - 17:17, 24:18, 34:3
comments [3] - 4:18, 6:3, 7:18
commingling [1] - 25:13
commit [1] - 33:22
commits [1] - 33:23
competing [1] - 6:20
complaint [1] - 6:9
complete [2] - 29:3, 35:18
completed [1] - 34:16
completely [1] - 18:17
complicated [4] - 4:21, 6:23, 10:22, 12:8
complicating [1] - 16:1
computing [1] - 6:5
concern [1] - 23:9
concerned [1] - 24:15
concerns [1] - 23:6
conclusory [1] - 13:11
conduct [1] - 13:14
confirm [2] - 29:19, 33:15
conflict [1] - 17:13
conflicted [1] - 17:9
connection [4] - 8:19, 11:12, 15:13, 15:14
consequences [2] - 22:18, 22:19
consider [1] - 36:19
consideration [2] - 14:8, 14:11
consultations [1] - 23:19

consulted [2] - 17:8, 17:12
contact [1] - 37:14
contacted [1] - 18:18
context [1] - 22:22
control [1] - 20:13
conversations [2] - 23:19, 31:16
copies [4] - 5:19, 15:7, 15:8, 27:25
copy [1] - 37:14
corporation [1] - 30:20
correct [4] - 3:24, 3:25, 12:25, 17:4
correctly [1] - 8:11
correspondence [1] - 35:12
counsel [9] - 10:7, 10:12, 11:25, 12:20, 12:23, 13:24, 13:25, 17:15, 33:7
counter [4] - 4:25, 5:1, 6:14
counter-judgment [1] - 5:1
counter-order [1] - 4:25
counter-proposed [1] - 5:1
counterproposal [1] - 4:22
counters [1] - 5:23
COUNTY [2] - 1:1, 2:1
couple [3] - 8:22, 9:20, 26:4
court [4] - 12:7, 18:24, 22:21, 26:22
COURT [43] - 1:1, 2:1, 3:2, 3:13, 3:23, 4:1, 4:8, 5:3, 5:13, 6:6, 6:21, 7:20, 8:13, 9:5, 9:14, 10:19, 11:9, 11:18, 12:6, 15:24, 16:10, 17:16, 21:2, 22:1, 23:1, 24:11, 27:11, 28:13, 28:17, 29:1, 29:4, 29:22, 30:10, 31:14, 31:19, 32:6, 32:24, 33:18, 34:14, 34:20, 35:21, 36:21, 37:16
Court [20] - 2:24, 5:6, 5:9, 6:19, 7:10, 7:12, 8:8, 13:8, 13:10, 14:22, 15:7, 16:1, 18:20, 19:3, 19:23, 19:25, 20:1, 20:3, 21:14, 26:8
Court's [2] - 7:19,

19:11
courtesies [1] - 37:13
courtesy [1] - 12:20
courts [1] - 21:15
CPLR [1] - 21:6
credibility [3] - 23:24, 23:25, 24:1
credible [1] - 18:5
crunch [1] - 26:18
current [1] - 33:19

## D

damages [2] - 10:21, 11:7
date [10] - 6:2, 10:9, 19:2, 19:11, 20:5, 28:24, 29:3, 31:25, 34:1, 35:15
Davidoff [1] - 3:21
DAVIDOFF [2] - 1:18, 2:16
Dayrit [1] - 3:11
DAYRIT [2] - 1:17, 2:15
days [11] - 5:22, 15:23, 17:2, 26:9, 26:10, 27:6, 27:12, 27:14, 31:2, 33:10, 36:3
deal [1] - 36:1
debt [1] - 14:15
decide [1] - 5:4
decided [1] - 5:5
decides [1] - 12:23
deciding [2] - 36:14, 36:19
decision [6] - 8:21, 9:1, 12:19, 23:13, 29:6, 30:2
decisions [1] - 26:5
default [2] - 26:25
defend [1] - 26:22
Defendant [1] - 3:22
defendant [3] - 21:7, 21:17, 21:18
Defendants [2] - 2:7, 2:20
defendants [3] - 3:15, 3:16, 11:1
Delaware [1] - 21:13
delay [1] - 18:24
delayed [1] - 17:14
demand [6] - 9:25, 10:17, 11:1, 11:4, 11:8, 12:4
demands [1] - 35:20
Department [4] - 5:17, 7:3, 9:1, 22:14
dependent [1] - 26:1

depose [1] - 28:11
deposed [1] - 24:2
deposing [2] - 15:14, 30:19
deposition [13] - 24:14, 29:12, 29:15, 29:22, 30:9, 30:18, 31:8, 31:23, 32:2, 32:4, 34:3, 35:16
depositions [2] - 15:11, 15:12
described [1] - 25:4
despite [1] - 18:19
determination [1] - 24:1
determines [1] - 14:22
different [2] - 25:7, 31:8
difficult [3] - 7:7, 7:8, 23:5
diligence [1] - 13:14
dinners [1] - 20:20
directed [2] - 5:10, 5:11
directing [1] - 7:21
direction [2] - 4:17, 18:12
discovery [26] - 8:19, 8:24, 14:24, 20:10, 27:9, 28:1, 30:14, 30:17, 30:25, 32:9, 32:14, 32:17, 32:19, 33:4, 33:7, 33:8, 33:21, 33:23, 34:8, 34:9, 34:12, 34:15, 35:18, 35:22, 37:2
discuss [1] - 10:24
discussion [1] - 6:4
dispense [1] - 7:12
disposition [1] - 21:9
dispute [1] - 8:20
disregarded [1] - 22:14
disregarding [1] - 22:21
dissipated [1] - 36:24
dissipating [1] - 23:8
disturb [1] - 11:22
divisible [1] - 13:9, 14:7
Division [2] - 4:12, 5:5
docket [1] - 9:3
document [1] - 35:1
documentation [1] - 15:18
documents [8] - 9:7, 27:23, 33:10, 34:10, 34:13, 35:3, 35:4, 35:6
dollar [1] - 36:18

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM INDEX NO. 151267/2022
NYSCEF DOC. NO. 18 22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09   Main Document RECEIVED NYSCEF: 03/21/2022
Pg 105 of 109

3

**dollars** [3] - 20:16, 25:2, 25:22
**domiciliary** [1] - 21:7
**done** [9] - 11:21, 18:10, 20:11, 31:1, 32:3, 32:19, 36:2, 36:10, 37:4
**doubt** [1] - 18:11
**down** [1] - 29:24
**downstairs** [1] - 12:14
**draft** [1] - 7:17
**duces** [3] - 15:2, 15:8, 28:8
**due** [8] - 11:12, 12:21, 13:14, 13:24, 18:22, 27:14, 35:3, 35:4

## E

**e-mail** [7] - 26:24, 27:20, 27:21, 33:15, 33:16, 34:25, 37:16
**e-mailed** [1] - 20:8
**e-mails** [5] - 15:9, 15:10, 31:21, 35:11, 35:12
**EAM** [1] - 35:8
**early** [1] - 6:2
**easily** [1] - 9:12
**East** [2] - 1:23, 4:4
**effectively** [1] - 20:2
**efficient** [2] - 3:3, 7:4
**either** [6] - 6:13, 6:19, 18:12, 30:2, 33:14, 33:19
**elsewhere** [1] - 21:13
**embedding** [1] - 16:25
**employees** [1] - 31:21
**empty** [1] - 25:25
**end** [7] - 4:22, 6:21, 16:6, 20:8, 20:19, 21:24, 29:7
**enforce** [1] - 35:23
**enforcement** [3] - 17:22, 33:8, 35:2
**ensure** [1] - 23:10
**enter** [3] - 4:16, 5:10, 6:16
**entered** [3] - 7:2, 9:15, 36:18
**entire** [1] - 16:3
**entities** [1] - 13:9
**entitled** [2] - 28:5, 33:9
**entity** [3] - 19:6, 35:8, 35:9
**entry** [1] - 5:16
**envision** [1] - 22:2
**equitable** [2] - 10:20, 11:14

**ERMITAGE** [1] - 1:6
**Ermitage** [9] - 1:22, 4:7, 9:19, 13:8, 13:22, 15:19, 19:8, 22:11, 35:7
**especially** [1] - 10:15
**ESQ** [11] - 1:16, 1:17, 1:20, 1:20, 1:24, 2:15, 2:15, 2:18, 2:19, 2:22, 2:23
**essence** [1] - 20:23
**essentially** [1] - 19:20
**estate** [1] - 14:5
**Estates** [1] - 9:18
**ESTATES** [2] - 1:2, 2:2
**evaluated** [1] - 34:3
**event** [2] - 7:13, 25:5
**evidence** [6] - 14:19, 16:14, 19:3, 20:7, 20:11, 21:8, 29:10, 32:9, 32:12
**evidentiary** [1] - 13:19
**Ex** [3] - 20:17, 21:23, 27:22
**exactly** [4] - 11:2, 18:21, 18:24, 34:12
**example** [1] - 14:4
**expect** [2] - 19:5, 35:25
**expectation** [2] - 10:15, 35:15
**expenditures** [1] - 20:19
**experience** [1] - 12:1
**expert** [1] - 26:13
**explain** [1] - 25:8
**explaining** [2] - 5:14, 8:3
**explanation** [1] - 24:19
**extension** [5] - 15:5, 18:19, 18:25, 19:17, 27:1
**extensive** [1] - 11:25
**extent** [2] - 15:18, 20:25
**extra** [2] - 33:22, 37:1
**EZL** [1] - 35:8

## F

**fact** [13] - 10:11, 12:17, 13:3, 13:8, 14:19, 14:23, 18:5, 18:7, 19:4, 19:9, 19:21, 20:4, 27:7
**factor** [1] - 16:1
**fair** [7] - 14:8, 14:10, 16:20, 18:13, 29:9, 33:24

**familiarizing** [1] - 13:17
**fan** [1] - 16:25
**fantastic** [1] - 6:15
**far** [4] - 10:16, 24:13, 27:19, 35:24
**February** [2] - 17:7, 18:7
**FELDMAN** [1] - 2:5
**Feldman** [2] - 2:21, 3:20
**few** [1] - 8:20
**figure** [4] - 16:17, 19:13, 30:21, 37:5
**file** [5] - 19:19, 31:2, 31:9, 34:20, 36:19
**filed** [1] - 36:7
**filing** [1] - 17:7
**findings** [1] - 13:21
**fine** [5] - 4:17, 6:15, 12:11, 26:4, 32:21
**fines** [1] - 22:20
**finish** [1] - 16:23
**finished** [1] - 34:9
**finishing** [1] - 33:23
**firm** [2] - 33:5, 33:6
**first** [4] - 9:22, 17:5, 28:4, 32:14
**First** [4] - 5:17, 7:2, 8:25, 22:14
**five** [1] - 5:22
**flag** [1] - 9:10
**flagrantly** [1] - 22:13
**flexibility** [2] - 23:3, 31:5
**Floor** [4] - 1:15, 1:23, 2:14, 4:4
**Florida** [4] - 17:24, 21:12, 21:21
**flowing** [1] - 25:12
**folks** [1] - 12:14
**follow** [1] - 5:21
**following** [2] - 21:5, 29:18
**forensic** [1] - 26:14
**forgive** [1] - 13:16
**forgot** [1] - 3:13
**forgotten** [1] - 9:24
**form** [2] - 8:12, 27:5
**formal** [1] - 4:19
**former** [1] - 9:10
**forward** [1] - 29:14
**frankly** [2] - 13:11, 25:16
**fraud** [2] - 14:15, 26:5
**fraudulent** [3] - 19:7, 21:11, 35:10
**Friday** [6] - 12:3, 15:25, 17:13, 20:9,

27:13, 34:18
**front** [2] - 30:17, 33:4
**front-loading** [1] - 30:17
**frustrate** [1] - 18:23
**full** [5] - 20:25, 29:9, 32:22, 33:24, 37:1

## G

**generates** [1] - 25:6
**generating** [1] - 25:5
**generous** [1] - 19:13
**given** [4] - 12:15, 16:11, 23:4, 27:9
**global** [1] - 30:20
**Godfrey** [1] - 3:9
**GODFREY** [2] - 1:14, 2:13
**grant** [1] - 4:14
**granted** [3] - 4:12, 4:14, 5:9
**GROUP** [1] - 2:5
**Group** [2] - 2:21, 3:19
**guess** [3] - 10:23, 12:17, 31:6

## H

**half** [1] - 21:25
**Hamptons** [2] - 14:5, 15:20
**handed** [1] - 25:25
**hang** [2] - 16:10, 34:14
**happy** [1] - 19:12
**HATCH** [15] - 1:16, 2:15, 3:8, 8:15, 9:9, 10:5, 18:17, 21:4, 22:4, 28:23, 30:5, 33:1, 34:18, 34:22, 36:13
**Hatch** [16] - 3:9, 5:15, 6:3, 7:17, 8:11, 8:14, 9:22, 15:6, 15:9, 16:23, 18:9, 23:25, 24:5, 26:18, 32:24, 34:12
**HATCH-MILLER** [15] - 1:16, 2:15, 3:8, 8:15, 9:9, 10:5, 18:17, 21:4, 22:4, 28:23, 30:5, 33:1, 34:18, 34:22, 36:13
**Hatch-Miller** [15] - 3:9, 6:3, 7:17, 8:11, 8:14, 9:22, 15:6, 15:9, 16:23, 18:9, 23:25, 24:5, 26:18, 32:24, 34:12

**Hatch-Miller's** [1] - 5:15
**head** [1] - 7:15
**healthy** [1] - 37:18
**hear** [4] - 10:23, 28:23, 28:25, 32:24
**heard** [3] - 6:22, 9:23, 9:24
**hearing** [3] - 13:19, 25:7
**hearings** [1] - 18:20
**held** [1] - 21:14
**help** [1] - 22:3
**Heyman** [3] - 3:12, 17:9, 17:10
**HFZ** [4] - 2:21, 3:16, 3:19, 8:22
**hide** [2] - 20:12, 36:17
**high** [2] - 20:19, 21:24
**high-end** [2] - 20:19, 21:24
**hold** [2] - 10:10, 28:14
**honestly** [2] - 14:10, 35:21
**Honor** [44] - 3:8, 3:17, 4:3, 4:24, 5:7, 5:12, 5:18, 5:24, 7:9, 8:10, 8:12, 9:9, 10:5, 11:3, 11:15, 11:24, 12:25, 13:20, 14:6, 17:3, 18:18, 19:16, 20:5, 20:10, 20:23, 21:4, 22:9, 22:17, 23:18, 23:24, 25:23, 28:23, 29:18, 30:5, 31:12, 31:13, 32:23, 33:2, 33:16, 34:11, 34:19, 34:22, 36:14, 37:12
**honor** [1] - 22:9
**HONORABLE** [2] - 1:11, 2:10
**honored** [2] - 22:12, 22:13
**hope** [1] - 37:11
**hopeful** [1] - 36:6
**hopefully** [2] - 12:8, 36:18
**hoping** [1] - 25:16
**hours** [1] - 15:22
**house** [1] - 11:22
**huge** [1] - 16:25
**hundreds** [4] - 20:22, 24:14, 25:2, 27:22
**hurdling** [1] - 29:7
**husband** [2] - 24:8, 26:1
**husband's** [1] - 16:16
**Hutcher** [2] - 3:21, 10:7
**HUTCHER** [2] - 1:18,

**FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM** INDEX NO. 151267/2022
NYSCEF DOC. NO. 18 22-01077-jlg   Doc 1   Filed 04/08/22   Entered 04/08/22 10:40:09   Main Document RECEIVED NYSCEF: 03/21/2022
Pg 106 of 109

4

2:16
**Hutcher's** [1] - 33:5

## I

**ignore** [3] - 13:8,
22:18, 22:25
**imagine** [1] - 5:23
**immediately** [3] -
15:5, 15:6, 21:1
**important** [2] - 8:2,
30:6
**imprisonment** [1] -
22:21
**imputed** [2] - 14:16,
26:6
**imputing** [1] - 23:25
**inclined** [1] - 7:12
**include** [2] - 12:3,
32:11
**included** [2] - 8:11,
11:4
**including** [5] - 22:7,
22:19, 28:21, 31:10,
32:9
**independent** [2] -
23:21, 25:4
**INDEX** [2] - 1:4, 2:4
**index** [2] - 3:14, 28:9
**indexed** [1] - 28:8
**indicated** [1] - 10:9
**indication** [1] - 18:1
**indirectly** [1] - 11:5
**individual** [3] - 15:1,
25:11, 25:24
**individuals** [1] - 13:9
**indivisible** [1] - 15:20
**information** [7] -
14:25, 15:2, 15:8,
16:17, 28:7, 33:9,
34:25
**instead** [1] - 20:2
**instrument** [2] - 6:24,
8:1
**intend** [1] - 34:24
**intention** [1] - 34:23
**inter** [1] - 14:14
**inter-marital** [1] -
14:14
**interest** [2] - 6:10,
15:21
**interim** [3] - 7:20, 9:7,
36:6
**interrogatories** [1] -
33:10
**invested** [1] - 14:8
**investigate** [3] - 14:2,
14:3, 14:13
**investigation** [1] -
13:15

**investment** [1] - 26:15
**investments** [3] -
14:14, 15:19, 24:9
**involved** [2] - 12:1,
23:23
**involvement** [2] -
17:10, 26:14
**issue** [16] - 10:11,
10:16, 10:24, 11:5,
11:14, 11:20, 17:1,
17:20, 19:4, 19:21,
20:1, 20:4, 20:6,
22:23, 27:7, 37:3
**issued** [1] - 7:25
**issues** [5] - 8:20,
14:19, 14:23, 15:16,
19:9
**itself** [1] - 5:1

## J

**January** [1] - 13:20
**Jay** [1] - 3:19
**JAY** [1] - 2:23
**JENNIFER** [2] - 1:17,
2:15
**Jennifer** [1] - 3:11
**jet** [1] - 20:19
**jets** [1] - 30:17
**job** [1] - 15:17
**JOEL** [2] - 1:11, 2:10
**joined** [1] - 3:18
**joint** [1] - 24:23
**judge** [1] - 26:3
**Judge** [1] - 15:22
**judgment** [47] - 4:13,
4:16, 5:1, 5:2, 5:3,
5:5, 5:10, 5:11, 5:14,
5:16, 6:8, 6:14, 6:16,
6:19, 6:23, 6:24, 7:2,
7:6, 7:15, 7:21, 7:23,
7:25, 8:8, 8:20, 8:24,
10:17, 11:7, 16:21,
17:21, 19:10, 20:2,
21:19, 22:8, 23:8,
23:15, 23:16, 30:3,
30:14, 32:15, 33:8,
34:2, 35:1, 36:18
**judgments** [4] - 5:20,
6:5, 6:20, 9:15
**jurisdiction** [4] -
13:21, 16:5, 21:10,
21:16
**jurors** [1] - 37:8
**jury** [20] - 9:23, 9:25,
10:3, 10:12, 10:16,
10:17, 10:25, 11:1,
11:4, 11:6, 11:8,
11:17, 12:4, 12:12,
12:13, 12:15, 15:10,

26:12, 37:6, 37:7
**jury's** [1] - 34:6
**Justice** [2] - 1:12, 2:11

## K

**keep** [1] - 33:19
**kid** [1] - 11:24
**kids** [1] - 23:22
**kind** [4] - 9:11, 13:21,
23:10, 25:6

## L

**L.L.P** [2] - 1:14, 2:13
**Lane** [1] - 35:8
**language** [2] - 5:25,
7:24
**last** [5] - 19:8, 20:7,
20:11, 21:10, 22:14
**late** [2] - 12:20, 23:13
**law** [3] - 9:10, 20:25,
28:14
**LAW** [1] - 1:21
**Law** [1] - 4:4
**leaning** [1] - 20:3
**least** [6] - 11:6, 11:16,
17:25, 25:13, 28:17,
29:18
**Lender** [1] - 21:15
**less** [2] - 12:8, 17:8
**letter** [2] - 8:3, 9:22
**LEX** [2] - 1:2, 2:2
**Lex** [1] - 9:18
**lieu** [1] - 6:9
**life** [1] - 30:22
**lifestyle** [1] - 26:1
**lightly** [1] - 22:20
**limited** [5] - 23:18,
33:13, 34:25, 35:14,
37:2
**line** [3] - 8:5, 8:6, 8:11
**lines** [1] - 6:11
**listening** [1] - 32:6
**litigation** [1] - 13:3
**living** [1] - 26:2
**LLC** [10] - 1:2, 1:6,
1:22, 2:2, 2:5, 3:19,
4:7, 9:19, 13:22,
15:1
**LLP** [4] - 1:18, 2:16,
2:20, 3:18
**loading** [1] - 30:17
**logistics** [2] - 10:1,
12:11
**look** [14] - 4:11, 4:14,
5:22, 7:14, 7:16,
7:23, 8:7, 8:15, 16:4,
16:19, 17:16, 17:19,
18:14, 25:10

**looked** [1] - 13:5
**looking** [2] - 5:12,
12:9
**lose** [2] - 19:2, 20:4
**losing** [1] - 19:14

## M

**mail** [7] - 26:24, 27:20,
27:21, 33:15, 33:16,
34:25, 37:16
**mailed** [1] - 20:8
**mails** [5] - 15:9, 15:10,
31:21, 35:11, 35:12
**major** [2] - 7:10, 7:13
**Malik** [12] - 4:4, 10:23,
11:19, 12:17, 18:18,
19:14, 23:1, 30:16,
33:5, 33:15, 33:19,
34:24
**Malik's** [1] - 33:6
**MALIK** [19] - 1:24, 4:3,
11:21, 12:25, 16:9,
17:3, 23:18, 25:23,
27:13, 28:25, 29:2,
29:17, 31:12, 31:15,
31:22, 32:23, 34:11,
35:19, 37:12
**mandate** [1] - 5:17
**manner** [1] - 17:11
**March** [4] - 1:9, 2:9,
15:5, 19:18
**marital** [1] - 14:14
**mark** [1] - 3:9
**MARK** [2] - 1:16, 2:15
**marriage** [6] - 23:20,
24:18, 25:2, 25:25,
26:15, 36:23
**married** [2] - 13:4,
26:4
**mat** [1] - 30:17
**matter** [1] - 5:8
**Meadow** [1] - 35:8
**mean** [10] - 3:4, 4:25,
6:22, 24:25, 25:10,
25:20, 28:12, 30:25,
31:19
**meaningful** [1] - 14:1
**meant** [1] - 31:20
**MEIR** [2] - 1:6, 2:6
**Meir** [22] - 1:18, 2:17,
3:22, 3:23, 7:25,
8:23, 9:4, 9:19, 11:3,
13:5, 13:12, 19:4,
19:6, 20:11, 22:10,
22:13, 23:15, 23:20,
24:2, 24:24, 26:6,
35:12
**Meir's** [9] - 10:7,
10:11, 14:5, 15:21,

21:23, 22:24, 23:23,
24:14, 25:12
**mention** [1] - 3:13
**mentioned** [2] - 23:24,
28:8
**merchants** [1] - 20:19
**message** [1] - 37:11
**Mezzanine** [1] - 21:15
**Miami** [1] - 20:16
**Michelin** [1] - 20:20
**MICROSOFT** [2] -
1:10, 2:9
**mid** [1] - 17:7
**might** [3] - 18:21,
24:19, 25:8
**Milito** [2] - 3:18, 4:17
**MILITO** [8] - 2:22,
3:17, 4:24, 5:7, 5:18,
6:18, 7:8, 8:10
**MILLER** [15] - 1:16,
█:█, █:█, █:█, █:9,
10:5, 18:17, 21:4,
22:4, 28:23, 30:5,
33:1, 34:18, 34:22,
36:13
**Miller** [15] - 3:9, 6:3,
7:17, 8:11, 8:14,
9:22, 15:6, 15:9,
16:23, 18:9, 23:25,
24:5, 26:18, 32:24,
34:12
**Miller's** [1] - 5:15
**million** [6] - 19:10,
21:25, 22:6, 30:21,
35:10, 36:18
**millions** [2] - 25:2,
25:22
**mind** [2] - 21:2, 21:5
**minute** [1] - 28:13
**missing** [1] - 7:7
**misspeak** [1] - 13:16
**mom** [1] - 23:22
**monetary** [1] - 11:14
**money** [12] - 6:23,
6:24, 11:7, 20:13,
20:21, 21:11, 21:21,
24:9, 25:12, 25:24,
26:4
**month** [4] - 12:14,
18:20, 20:22, 21:22
**months** [1] - 23:7
**mooted** [1] - 8:25
**morning** [6] - 3:2, 3:8,
3:17, 4:3, 4:6, 4:8
**Morrison** [1] - 3:18
**MORRISON** [1] - 2:20
**most** [2] - 15:17,
19:13
**motion** [12] - 4:12,
4:14, 5:4, 6:7, 6:8,

FILED: NEW YORK COUNTY CLERK 03/21/2022 10:43 AM
NYSCEF DOC. NO. 18

22-01077-jlg    Doc 1    Filed 04/08/22    Entered 04/08/22 10:40:09    Main Document
Pg 107 of 109

INDEX NO. 151267/2022
RECEIVED NYSCEF: 03/21/2022

5

8:18, 8:19, 8:25, 9:6, 9:15, 11:9, 36:20
**Motion** [1] - 8:23
**motions** [2] - 8:23, 9:12
**move** [6] - 5:12, 8:9, 9:17, 12:16, 28:19, 36:8
**moved** [1] - 21:12
**moving** [3] - 6:9, 32:15, 34:15
**MR** [32] - 3:8, 3:17, 3:21, 3:25, 4:24, 5:7, 5:18, 6:18, 7:8, 8:10, 8:15, 9:9, 10:5, 11:3, 11:11, 18:17, 21:4, 22:4, 23:18, 28:23, 28:25, 29:2, 29:17, 30:5, 31:12, 31:15, 31:22, 33:1, 34:18, 34:22, 36:13, 37:12
**MS** [10] - 4:3, 11:21, 12:25, 16:9, 17:3, 25:23, 27:13, 32:23, 34:11, 35:19
**multimillion** [1] - 30:20
**mute** [1] - 11:20

**N**

**named** [1] - 17:6
**narrowly** [2] - 35:22, 37:3
**near** [1] - 12:10
**necessary** [2] - 8:4, 19:24
**need** [26] - 4:19, 5:4, 6:13, 7:20, 8:13, 12:13, 12:15, 14:1, 14:2, 14:6, 14:18, 15:16, 15:21, 16:17, 19:5, 26:13, 28:12, 28:20, 30:9, 30:16, 30:23, 30:25, 36:2, 36:6, 36:24
**needs** [1] - 36:7
**negotiating** [1] - 35:21
**never** [5] - 22:12, 24:2, 24:3, 24:18, 25:8
**nevertheless** [2] - 18:25, 19:11
**new** [6] - 11:10, 11:24, 12:19, 16:14, 20:7, 36:9
**NEW** [4] - 1:1, 1:1, 2:1, 2:1
**New** [23] - 1:9, 1:16, 1:19, 1:23, 2:8, 2:14, 2:18, 2:22, 4:4, 4:5,

20:25, 21:15, 21:18, 22:7, 29:21
**news** [1] - 18:4
**next** [6] - 6:2, 32:21, 33:23
**night** [1] - 20:16
**NIR** [2] - 1:6, 2:6
**Nir** [6] - 1:18, 2:17, 3:22, 9:18, 13:5, 13:12
**NO** [2] - 1:4, 2:4
**non** [2] - 15:14, 21:7
**non-domiciliary** [1] - 21:7
**non-party** [1] - 15:14
**nonparty** [2] - 28:10, 28:11
**normally** [1] - 32:13
**note** [1] - 8:10
**notes** [1] - 8:15
**nothing** [1] - 36:9
**notices** [2] - 22:10, 22:13
**notion** [2] - 12:22, 18:3
**number** [2] - 17:2, 28:9
**numbers** [2] - 3:14, 7:17

**O**

**objections** [1] - 35:24
**obligations** [1] - 15:21
**obviously** [2] - 7:16, 16:4
**occurred** [1] - 21:11
**odd** [1] - 24:25
**OF** [6] - 1:1, 1:1, 2:1, 2:1
**office** [1] - 28:1
**Official** [1] - 2:24
**old** [1] - 11:10
**once** [2] - 17:16, 36:17
**one** [16] - 10:18, 12:22, 16:9, 16:20, 18:13, 18:14, 18:19, 18:25, 20:15, 22:11, 23:4, 31:13, 31:15, 31:17, 31:24, 33:13
**ONE** [1] - 1:6
**One** [2] - 1:22, 9:19
**one-week** [2] - 18:19, 18:25
**ones** [1] - 6:5
**open** [1] - 10:9
**opportunity** [5] - 13:13, 16:11, 26:7, 28:2, 33:25
**opposed** [1] - 10:4

**opposition** [3] - 19:18, 34:20, 36:4
**oral** [2] - 27:17, 27:18
**orchestrated** [1] - 19:7
**order** [17] - 4:15, 4:18, 4:25, 5:9, 7:9, 7:13, 7:21, 10:8, 14:12, 14:20, 20:24, 21:17, 21:18, 22:2, 22:4, 22:14, 28:3
**orders** [4] - 22:21, 22:23, 22:25, 33:16
**out-of-state** [2] - 21:16, 21:17
**outrageous** [1] - 20:12
**overly** [1] - 23:23
**own** [7] - 14:7, 16:2, 23:20, 24:9, 25:11, 25:24, 35:7
**owned** [4] - 17:25, 19:6, 35:7, 35:11

**P**

**pages** [2] - 24:14, 27:22
**paid** [1] - 24:10
**Pankaj** [1] - 4:3
**PANKAJ** [1] - 1:24
**paper** [2] - 19:18, 22:17
**papers** [21] - 4:11, 8:5, 12:4, 13:6, 14:4, 16:21, 19:19, 19:23, 26:11, 27:7, 27:9, 27:14, 27:16, 30:1, 30:3, 30:7, 31:9, 32:15, 32:21, 33:7, 33:8
**parsing** [1] - 11:13
**part** [5] - 5:6, 7:7, 7:8, 10:20, 20:6
**PART** [2] - 1:1, 2:1
**participate** [1] - 16:12
**participation** [1] - 18:23
**parties** [5] - 5:11, 13:1, 13:23, 16:1, 19:24
**party** [5] - 3:23, 15:14, 28:9, 28:10, 28:11
**past** [1] - 5:12
**patience** [1] - 29:24
**pause** [1] - 28:16
**pay** [1] - 26:1
**paying** [1] - 27:22
**payment** [2] - 6:24, 24:7

**payments** [1] - 14:9
**pending** [3] - 8:18, 9:3, 11:8
**perhaps** [2] - 5:10, 6:1
**period** [1] - 34:8
**permitted** [1] - 20:25
**person** [1] - 31:17
**personal** [2] - 21:16, 30:22
**perspective** [3] - 15:4, 18:3, 24:16
**persuade** [1] - 25:17
**PETER** [2] - 1:20, 2:18
**petition** [3] - 10:20, 14:20, 16:7
**Petitioner** [2] - 1:3, 1:15, 3:10
**phone** [1] - 3:12
**Piccirillo** [1] - 2:24
**picked** [1] - 19:12
**piece** [1] - 22:17
**pieces** [1] - 6:10
**pitched** [1] - 30:3
**placeholder** [1] - 19:2
**Plaintiff** [3] - 2:3, 2:13, 3:9
**plaintiff** [5] - 3:7, 5:20, 14:10, 16:17, 17:11
**plaintiff's** [6] - 13:6, 13:15, 14:2, 14:4, 14:17, 24:6
**plaintiffs** [2] - 7:9, 23:11
**planned** [2] - 29:14, 29:15
**planning** [1] - 25:5
**plenty** [1] - 24:15
**Plexiglass** [1] - 12:9
**plus** [1] - 20:18
**point** [15] - 5:23, 6:18, 7:4, 7:24, 13:20, 14:21, 14:22, 19:20, 31:12, 31:15, 34:5
**points** [2] - 8:16, 9:2
**position** [4] - 15:18, 23:12, 26:8, 30:8
**possession** [1] - 16:16
**possibility** [2] - 19:16, 22:21
**possible** [2] - 18:10, 19:14
**post** [2] - 8:19, 8:24
**post-discovery** [2] - 8:19, 8:24
**posture** [1] - 10:17
**potential** [2] - 17:1, 26:12
**potentially** [1] - 19:25
**poverty** [1] - 36:17

**precedence** [1] - 19:12
**prejudicial** [1] - 23:11
**premature** [1] - 28:6
**prepared** [2] - 19:19, 27:18
**preparing** [1] - 32:1
**present** [3] - 12:4, 26:7, 26:10
**pressing** [2] - 15:17, 20:7
**pretty** [3] - 26:16, 31:4, 35:14
**previously** [1] - 11:5
**price** [1] - 32:15
**private** [1] - 20:19
**problem** [1] - 9:8
**problems** [2] - 7:16, 36:9
**procedural** [2] - 5:8, 20:25
**procedurally** [2] - 18:6, 18:13
**procedure** [2] - 7:5, 16:20
**proceed** [2] - 16:6, 31:13
**proceeding** [11] - 9:23, 13:2, 13:23, 15:13, 15:15, 16:12, 17:6, 18:7, 34:16, 37:3, 37:4
**proceedings** [4] - 11:23, 13:18, 17:22, 37:15
**proceeds** [1] - 19:8
**process** [6] - 4:20, 6:6, 11:13, 13:24, 17:1, 18:22
**professionally** [1] - 26:23
**proper** [1] - 6:5
**properties** [1] - 26:16
**property** [10] - 14:3, 14:5, 14:7, 14:8, 15:19, 15:20, 17:25, 24:10, 35:8, 35:13
**proposed** [8] - 4:18, 5:1, 5:19, 6:14, 7:10, 8:12, 18:18, 18:25
**prove** [2] - 14:10, 24:6
**provide** [3] - 13:14, 14:1, 27:25
**provided** [1] - 22:24
**provides** [2] - 21:6, 21:8
**provisions** [2] - 33:9, 35:2
**purposes** [1] - 32:17
**pursuant** [1] - 5:17

put [12] - 6:14, 10:6, 20:25, 21:12, 27:1, 29:10, 29:11, 31:7, 32:8, 32:9, 32:14
putting [2] - 21:23, 34:7

**Q**

quickly [4] - 4:18, 8:17, 32:25, 34:23
quite [5] - 11:16, 11:25, 12:12, 13:10, 17:22

**R**

raise [3] - 8:16, 9:1, 14:19
raised [2] - 19:21, 27:8
raises [1] - 19:4
raising [1] - 23:22
RANEE [1] - 1:6
Ranee [7] - 1:22, 4:7, 9:19, 13:4, 13:22, 24:7, 27:21
rather [1] - 32:1
reach [2] - 15:6, 18:12
reached [1] - 26:21
read [3] - 4:11, 12:6, 24:13
ready [1] - 26:17
real [3] - 7:8, 7:16, 32:25
really [6] - 6:9, 16:14, 23:13, 25:8, 25:12, 25:18, 26:3, 31:1, 33:24, 34:1, 34:14, 35:11
reason [2] - 20:6, 29:13
received [1] - 24:8
recently [1] - 12:18
record [11] - 16:3, 17:17, 24:12, 30:13, 31:4, 31:8, 31:11, 32:22, 33:16, 34:2, 34:23
records [1] - 30:21
reference [4] - 24:17, 24:20, 24:21, 24:22
refuses [1] - 15:6
regard [1] - 21:3
regarding [2] - 15:9, 15:10
related [4] - 8:22, 8:23, 11:12, 35:6
relates [2] - 9:4, 20:7
relationship [1] -

25:21
relevant [1] - 32:12
relief [1] - 28:5
rely [1] - 13:10
remain [1] - 9:7
remember [1] - 24:25
removal [1] - 21:9
removed [2] - 7:14, 12:10
repay [3] - 20:17, 20:18, 21:22
replete [1] - 13:6
reply [7] - 19:19, 27:17, 28:21, 29:5, 32:21, 34:5, 34:21
Reporter [1] - 2:24
representation [2] - 14:1, 36:21
representations [2] - 17:24, 36:15
representative [1] - 3:12
represented [3] - 13:24, 13:25, 23:7
representing [1] - 27:3
request [11] - 5:19, 10:14, 15:5, 26:22, 27:1, 27:19, 27:25, 29:18, 31:22, 34:11, 36:8
requested [1] - 26:9
requests [3] - 33:14, 35:23, 37:2
require [4] - 7:18, 18:23, 22:6, 22:24
required [1] - 22:15
requiring [2] - 19:21, 20:1
respect [2] - 26:19, 33:2
respectfully [1] - 5:19
respond [1] - 28:10
respondent [3] - 3:25, 11:3, 13:5
Respondents [2] - 1:7, 1:22
respondents [3] - 4:1, 4:6, 12:23
responding [1] - 37:2
response [2] - 14:20, 35:3
responses [1] - 33:9
responsive [5] - 12:4, 26:11, 27:6, 27:8, 27:23
restaurants [1] - 20:21
restrain [1] - 28:3
restraining [3] - 22:10, 22:12, 36:8

result [2] - 16:21, 18:12
retain [1] - 23:13
retained [8] - 12:2, 12:18, 13:18, 15:4, 15:25, 17:13, 26:21, 27:13
return [1] - 24:24
revenue [1] - 25:6
review [7] - 6:16, 14:13, 15:17, 17:16, 19:23, 28:2, 30:1
RICHARD [2] - 1:20, 2:19
richard [1] - 3:21
rights [5] - 13:24, 18:22, 24:6, 24:7, 25:11
RIPIN [2] - 1:20, 2:18
risk [3] - 19:14, 22:20, 22:25
roughly [4] - 12:14, 12:15, 19:10, 22:6
route [1] - 16:7
rules [1] - 12:7
ruling [1] - 37:13

**S**

safe [1] - 37:18
sale [1] - 35:13
satisfy [1] - 23:8
satisfying [1] - 9:14
schedule [12] - 10:8, 11:20, 12:22, 16:24, 18:24, 19:14, 23:3, 27:10, 29:2, 33:20, 36:2, 36:11
scheduled [4] - 15:13, 15:14, 29:13, 29:17
scheduling [1] - 28:14
screen [1] - 37:17
sealed [1] - 9:7
sealing [3] - 8:19, 9:5, 9:7
second [1] - 31:24
Section [1] - 5:21
secure [1] - 21:18
security [3] - 22:7, 22:24, 23:14
see [7] - 4:11, 5:3, 6:9, 6:13, 9:25, 29:13, 37:19
seek [1] - 11:7
seem [1] - 18:5
send [2] - 8:2, 34:24
sense [2] - 17:17, 30:10
sensitive [1] - 25:10
separate [10] - 13:9,

14:3, 14:7, 14:15, 14:16, 15:20, 18:6, 22:5, 23:21, 26:14
Sequence [2] - 8:18, 8:24
serve [3] - 33:8, 33:12, 33:14
served [3] - 14:25, 15:1, 15:7
service [6] - 33:7, 33:14, 33:15, 33:17, 33:22, 34:25
set [3] - 6:2, 10:8, 18:24
settle [1] - 5:11
settlement [1] - 4:19
seven [2] - 15:22, 33:10
show [7] - 10:8, 14:20, 20:24, 26:13, 26:14, 28:3, 35:11
showing [1] - 28:4
sides [2] - 29:11, 30:24
sifted [1] - 24:12
sign [2] - 8:5, 8:7
significant [1] - 36:16
simple [1] - 31:17
sit [1] - 26:3
situation [2] - 16:2, 16:16
slow [1] - 29:24
slowing [1] - 29:23
small [1] - 17:2
so-to-speak [1] - 5:12
solely [1] - 32:17
sometime [1] - 17:7, 17:23, 32:20, 35:17
sometimes [2] - 9:6, 9:11
soon [3] - 18:10, 26:20, 37:19
sooner [1] - 30:18
sorry [2] - 28:25, 35:7
sort [2] - 14:24, 25:4
sound [1] - 31:20
spacing [1] - 12:7
specific [2] - 34:1, 37:8
specifically [1] - 11:13
speed [4] - 12:21, 30:23, 32:16, 36:9
spend [2] - 20:12, 26:4
spending [5] - 20:15, 21:1, 22:15, 25:6
Speyer [1] - 3:19
SPEYER [1] - 2:23
standard [1] - 26:2
standing [2] - 19:9,

23:21
star [1] - 20:20
start [5] - 3:6, 3:15, 4:9, 18:15, 23:12
STATE [2] - 1:1, 2:1
state [3] - 21:16, 21:17, 34:23
statements [2] - 14:14, 18:19
stating [1] - 30:7
stay [2] - 31:23, 37:18
step [3] - 7:13, 7:20, 30:11
still [6] - 8:18, 8:21, 12:12, 14:6, 29:15, 37:7
stop [2] - 21:1, 22:15
story [1] - 25:7
straight [1] - 5:16
straightforward [1] - 4:10
streamline [1] - 7:5
Street [4] - 1:8, 1:23, 2:8, 4:4
strip [2] - 20:16, 20:20
stuff [1] - 24:25
stumbling [2] - 7:11, 7:13
subject [2] - 17:21, 37:1
submissions [1] - 34:9
submit [4] - 5:22, 6:18, 7:21, 27:15
submitted [4] - 11:4, 19:3, 27:20, 30:8
subpoena [8] - 15:1, 15:2, 15:8, 15:9, 28:7, 35:1
subpoenas [1] - 27:23
substantial [2] - 23:21, 36:23
substantially [1] - 32:18
sufficient [1] - 26:10
suggest [3] - 6:1, 7:22, 30:24
suggested [1] - 10:7
suggestion [2] - 28:18, 30:6
summary [16] - 4:12, 4:25, 5:4, 5:9, 6:7, 6:8, 7:2, 8:20, 8:24, 10:17, 16:21, 20:2, 30:3, 30:14, 32:15, 34:2
summary-judgment [1] - 20:2
summer [1] - 22:14
Sunday [1] - 32:4

superior [1] - 24:6
support [1] - 26:13
supports [1] - 35:9
supposed [1] - 31:23
SUPREME [2] - 1:1, 2:1
Supreme [1] - 5:6
sur [1] - 34:5
sur-reply [1] - 34:5
susceptible [1] - 11:17
SUSMAN [2] - 1:14, 2:13
Susman [1] - 3:9
suspect [1] - 22:9
suspicions [1] - 25:17
sympathy [1] - 15:24
system [1] - 12:7

**T**

tailored [1] - 37:4
targeted [3] - 32:17, 35:22, 37:2
tax [1] - 24:23
TEAMS [2] - 1:10, 2:9
tecum [3] - 15:2, 15:8, 28:8
ten [1] - 33:11
tens [1] - 25:21
TERM [2] - 1:1, 2:1
terribly [1] - 4:21
testimony [1] - 32:10
THE [43] - 1:1, 2:1, 3:2, 3:13, 3:23, 4:1, 4:8, 5:3, 5:13, 6:6, 6:21, 7:20, 8:13, 9:5, 9:14, 10:19, 11:9, 11:18, 12:6, 15:24, 16:10, 17:16, 21:2, 22:1, 23:1, 24:11, 27:11, 28:13, 28:17, 29:1, 29:4, 29:22, 30:10, 31:14, 31:19, 32:6, 32:24, 33:18, 34:14, 34:20, 35:21, 36:21, 37:16
thereafter [1] - 27:18
Third [3] - 1:19, 2:17, 2:21
third [1] - 17:12
thirty [7] - 26:9, 27:6, 27:12, 27:14, 31:2, 36:3
thoughts [1] - 11:19
thousands [1] - 20:22
three [4] - 17:8, 23:22, 27:16
throwing [1] - 12:22
timing [4] - 10:24,

12:16, 17:20, 30:6
today [7] - 3:4, 6:1, 7:11, 33:2, 33:14, 36:15, 37:10
today's [1] - 37:15
together [1] - 31:10
tomorrow [4] - 4:23, 6:21, 35:2, 35:14
took [1] - 36:21
top [1] - 7:15
topic [1] - 5:24
totally [1] - 17:3
toward [1] - 20:3
towards [1] - 29:7
transactions [1] - 23:23
transcript [2] - 10:13, 37:14
transcripts [1] - 34:3
transfer [3] - 19:7, 21:11, 35:10
transfers [1] - 35:13
transom [1] - 34:4
travel [1] - 20:20
triable [3] - 10:11, 14:19, 14:23
triage [1] - 9:5
TRIAL [2] - 1:1, 2:1
trial [31] - 3:2, 3:4, 9:24, 10:3, 10:9, 10:12, 10:17, 11:1, 11:6, 11:17, 12:13, 15:10, 16:22, 19:3, 19:6, 19:11, 19:22, 19:24, 20:1, 20:4, 23:3, 23:4, 26:12, 27:10, 28:19, 29:7, 32:16, 32:18, 37:6
trials [2] - 12:8, 37:8
TRO [1] - 28:3
troublesome [1] - 12:24
troubling [1] - 25:18
true [2] - 18:6, 25:19
truth [1] - 19:6
try [3] - 7:22, 18:23, 36:17
trying [2] - 23:1, 26:19
turn [1] - 30:17
tweaks [1] - 8:1
two [11] - 3:13, 6:5, 6:16, 7:22, 9:1, 9:13, 12:23, 17:8, 27:16, 31:17, 33:24
type [4] - 14:1, 16:22, 20:2, 24:3

**U**

under [6] - 16:7,

23:22, 27:20, 28:8, 33:8, 35:1
unfair [1] - 26:20
unfounded [1] - 25:17
unnecessary [1] - 17:1
unusual [1] - 8:4
up [13] - 12:21, 14:12, 22:5, 23:13, 29:7, 29:20, 30:17, 30:23, 32:16, 32:25, 33:25, 36:10, 36:25
upcoming [1] - 15:10
uploaded [1] - 8:8

**V**

versus [1] - 9:18
VIA [1] - 1:10, 2:9
virtually [1] - 29:20
virtue [1] - 13:3

**W**

waiting [2] - 3:3, 8:21
wants [2] - 13:10, 27:17
waves [1] - 9:15
weaves [1] - 10:20
Wednesday [1] - 6:2
weeded [1] - 15:17
week [18] - 6:2, 12:15, 18:19, 18:25, 19:17, 19:22, 19:25, 20:3, 20:7, 27:16, 29:1, 29:18, 32:20, 32:21, 33:25, 34:1, 35:17
weeks [4] - 27:16, 33:4, 33:24
weigh [2] - 16:24
welcome [1] - 4:8
whereas [1] - 5:13
whole [2] - 7:4, 12:22
wide [1] - 35:24
wife [3] - 19:8, 20:12, 25:25
willing [4] - 19:1, 19:17, 34:7, 36:10
wine [1] - 20:19
WOLTER [6] - 1:20, 2:19, 3:21, 3:25, 11:3, 11:11
Wolter [2] - 3:21, 16:24
works [1] - 32:13
worth [1] - 21:25
wrap [2] - 32:25, 36:25
write [1] - 29:16
writing [1] - 26:11
written [1] - 35:3

**Y**

year [4] - 19:8, 20:11, 21:11, 22:11
yesterday [1] - 26:24
YH [3] - 1:2, 2:2, 9:18
YK [2] - 1:21, 4:4
YORK [4] - 1:1, 1:1, 2:1, 2:1
York [23] - 1:9, 1:16, 1:19, 1:23, 2:8, 2:14, 2:18, 2:22, 4:5, 20:25, 21:15, 21:18, 22:7, 29:21

**Z**

zealously [1] - 27:4
ZIEL [1] - 2:5
Ziel [2] - 2:21, 3:20