**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy Klestadt
Kathleen M. Aiello

**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
Mark H. Hatch-Miller

*Counsel to Petitioner, YH Lex Estates LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
YH LEX ESTATES LLC,                              :
                                                 :
            Plaintiff,            :
                                                 :
    -against-                              :
                                                 :    Adv. Pro. No. 22-01077 (JLG)
NIR MEIR, RANEE A. BARTOLACCI, and               :
ERMITAGE ONE, LLC,                               :
                                                 :
            Defendants.           :
------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF YH LEX ESTATES LLC'S EMERGENCY MOTION FOR AN ORDER OF REMAND

Petitioner YH Lex Estates LLC ("Petitioner" or "YH") respectfully requests this Court's

promptest possible attention to this emergency matter. This is a fraudulent and abusive removal,

the second attempt by Nir Meir ("Meir") at filing improper removal papers to orchestrate the delay

of orderly proceedings before the state court, for the clear purpose of avoiding Meir's wife's deposition on April 8, 2022, and a possible fraudulent transfer trial on May 2, 2022.[1]

Petitioner, by and through its co-counsel, Klestadt Winters Jureller Southard and Stevens LLP and Susman Godfrey L.L.P., respectfully submits this memorandum of law in support of its motion to remand (the "Remand Motion") the special proceeding captioned *YH Lex Estates LLC v. Nir Meir, Ranee A. Bartolacci and Ermitage One, LLC*, Index No. 151267/2022 (Sup. Ct. N.Y. Cty.), Justice Joel M. Cohen presiding (the "Proceeding"), to the Supreme Court of the State of New York, County of New York (the "Supreme Court"), where it was originally filed and is scheduled to proceed to trial (if the Court finds there are any genuine fact issues requiring a trial) on May 2, 2022. The Proceeding concerns an interspousal fraudulent transfer scheme through which Meir attempted to divest himself of assets before YH could get a judgment. The Proceeding emanated from a related financial instrument case before the Supreme Court, captioned *YH Lex Estates LLC v. HFZ Capital Group LLC, Ziel Feldman and Nir Meir*, Index No. 655980/2020 (Sup. Ct. N.Y. Cty., filed Nov. 3, 2020), in which Justice Cohen entered a nearly $20 million judgment against Defendant/Judgment Debtor Meir in June 2021 (the "HFZ Supreme Court Action").

Respondent Ranee A. Bartolacci ("Bartolacci") who was scheduled to be deposed *today*, delayed producing documents, and refused to show up for her deposition today based on the purported justification that her husband, Respondent Meir, filed the patently baseless removal papers. Respondents' coordinated delay strategy could hardly be clearer. On remand, Petitioner

---

[1] As detailed in the accompanying declaration, the facts discussed herein are all derived from publicly available records in the various state court lawsuits against Meir and his associates.

will therefore seek to preclude Bartolacci from relying on any unproduced documents, or on any of her own testimony, in opposition to Petitioner's fraudulent transfer claims.

## PRELIMINARY STATEMENT

This Court should immediately remand the Proceeding to the Supreme Court because the Proceeding before the Supreme Court is utterly and completely unrelated to the bankruptcy proceedings filed on April 6, 2022 by non-parties EAM Meadow Lane LLC ("EAM") and EZL 40 Meadow Lane ("EZL" and together with EAM, the "Debtors"). EZL's and EAM's bankruptcies did not provide Meir with an excuse to remove the Proceeding, and Meir's attempt to file non-parties' bankruptcy filings as cover to attempt a removal is truly unprecedented in the law.

EZL and EAM *are not parties to the Proceeding in the Supreme Court*. YH's petition filed in the Supreme Court asserts claims that Meir *personally* transferred money or property worth over $12.6 million to Meir's wife Bartolacci, and her wholly owned entity Ermitage One LLC ("Ermitage"), in order to avoid paying an anticipated judgment that was about to be rendered in YH's favor by the Supreme Court. Meir's fraudulent transfer scheme was orchestrated and facilitated by the same law firm that filed Meir's abusive removal papers.  YH's claims seeking to require Bartolacci and Ermitage to pay YH the amounts Meir *personally* transferred to them on the eve of litigation, have absolutely no impact on the Debtors, EAM and EZL.[2]

---

[2] YH has a judgement against Meir personally. YH's claim is that Meir personally made fraudulent transfers to Bartolacci and Ermitage. Meir cannot step in with an "it wasn't me" defense—saying in essence, "it wasn't me it was EAM and EZL that made these transfers"—and thereby avoid his wife facing discovery and trial under the rapid schedule set by the state court under extraordinary circumstances. Meir can, if he chooses, raise his "it wasn't me" defense *on the merits* before the state court. If the state court is convinced that Meir was not the transferor, YH will lose in state court on the claims as they are currently pleaded. Meir is simply trying to rewrite YH's claims.

3

The EZL and EAM bankruptcies were filed (clearly for the strategic purpose of manufacturing an excuse to disrupt the case against Meir's wife Bartolacci and her entity Ermitage) under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which are pending as Case Nos. 22-10293 (BLS) and 22-10294 (BLS), respectively (the "Bankruptcy Cases"), the Honorable Brendan L. Shannon presiding.   On April 6, 2022, the Bankruptcy Court appointed George Miller (the "Chapter 7 Trustee") as the Chapter 7 Trustee of the Debtors' Bankruptcy Cases. The Chapter 7 Trustee does not appear to have played any role in Meir and his counsel's decision to try to remove the Proceeding for the purported benefit of the Debtors. Meir and his counsel are thus hijacking the exclusive role of the Chapter 7 Trustee, if there is such a role.

Shortly after the Debtors filed for bankruptcy, the Debtors (non-parties), followed shortly by Meir (not a Debtor), both tried to file notices of removal (the "Removal Notice") of the Proceeding, on April 6, 2022 and April 7, 2022, respectively.  The Debtors withdrew their initial Removal Notice only after the Supreme Court Justice presiding over the Proceeding made clear, at a conference on April 7, 2022, that the Debtors' Removal Notice was facially defective under 28 U.S.C. § 1452(a) because they were not parties to the Proceeding, and after this Court issued a docket entry correctly recognizing that non-parties to the Proceeding had no ability to file papers removing the Proceeding. Another of the many clearly fatal flaws in the Debtors' initial Removal Notice was that counsel for EAM and EZL lacked any ability to file such papers on behalf of the Debtors. Only *the Chapter 7 Trustee* may now act on the Debtors' behalf.

Then, in the afternoon after the conference held before the Supreme Court to address the Debtors' transparently abusive removal filing, Meir *personally* filed a replacement Removal Notice to supposedly cure one of the many defects with the Removal Notice: That it was filed by

a non-party to the Proceeding. But Meir's new, personal removal filing is no less defective than his first attempt and only suffers from new and additional problems. One still significant problem with the new filing is that Meir is still trying to act for the purported benefit of EAM and EZL, *without the involvement of their* Chapter 7 Trustee. It is up to the Chapter 7 Trustee to decide whether to intervene in, and attempt to remove, the Proceeding. Meir cannot take any such action by himself, without the Chapter 7 Trustee. As Justice Cohen further observed, the Debtors strangely self-declare themselves to be indispensable parties and intervenors to the Proceeding; but no motion to intervene was ever filed and no finding of indispensability was ever made.

Even more problematic, Meir's theory that YH's claims against Bartolacci and Ermitage really belong to the Debtors is the *pure self-serving fantasy of a proven fraudster*. YH has advanced two alternative fraudulent transfer liability theories related to the main claim[3] in the case, which is that Meir diverted his interests in a $40 million Southampton mansion, and/or the proceeds from the sale of the mansion to his wife Bartolacci and her entity Ermitage to avoid paying the judgment.[4] Meir solely owned the mansion (and the value of the mansion in excess of its mortgage debt) via his interests in two Meir-controlled entities EAM an EZL. The first theory of liability is that in October 2020, just days before YH sued Meir, Meir transferred 95% of the membership interests in EZL to Bartolacci (a transfer of more than $10 million in value net of

---

[3] Meir also fraudulently transferred several collectible/luxury vehicles to his wife Bartolacci and/or her entity Ermitage.

[4] Ermitage was an entity established in New York by Meir's counsel, ostensibly on behalf of Bartolacci, on the eve of the sale of 40 Meadow Lane. The entity was designed to serve as a conduit for the receipt of Meir's fraudulent conveyances and was structured to give Meir unfettered control of his own fraudulently conveyed assets. Remarkably, the entity was registered to the offices of Meir and Bartolacci's joint counsel. Thereafter, Respondents, with the continued assistance of their joint counsel (the same current counsel for Debtors in this action), then merged Ermitage into an entity with the same name in Florida, also formed by that same counsel, thereby removing the assets from New York in a transparently fraudulent effort to evade the Judgment.

5

mortgage debt). However, YH anticipates the evidence will show that the documents through which Meir claims he sent the 95% stake in EZL to his wife in October 2020 were a sham and that this transfer was ineffective. Thus, YH's alternative theory is that Meir still solely owned the mansion when Meir sold it in April 2020, during the pendency of YH's lawsuit against Meir and on the eve of summary judgment. Upon the sale, Meir directed that his real estate counsel (from the same firm that prepared and filed the Removal Notice) misdirect the net sale proceeds to Bartolacci and Ermitage rather than to Meir—the only beneficial owner of the property, as Meir himself admitted at the time in tax documents. Under either of YH's alternative theories, the fraudulent transferor was *Meir personally*, not EAM or EZL, which were merely passthrough vehicles through which Meir held his personal interests.

For the above reason, the Debtors, EAM and EZL, are in no sense the owners of the causes of action underlying the Proceeding. This matter is also not "core" to the Bankruptcy Cases, nor will the outcome of the Proceeding have any bearing on the Bankruptcy Cases.  And again, even if that were the case, it is the Chapter 7 Trustee, not the Debtors, who has standing to pursue causes of action relating to property of the bankruptcy estates, which the claims underlying the Proceeding are not. Because the state law claims between non-debtors that were filed well before the Bankruptcy Cases do not "arise" out of, under or related to, the Bankruptcy Cases or under the Bankruptcy Code, this Court, as well as the Bankruptcy Court, lack jurisdiction over the claims against the Respondents asserted in the Proceeding, and it should be remanded to Supreme Court.

YH further submits that the timing of and motivation for the Removal Notice have nothing to do with the merits of whether this Proceeding belongs in this Court (as set forth herein, it does not), and everything to do with the Respondents' dilatory tactics to delay the Proceeding and to avoid a decision on the merits at the trial scheduled to commence before Justice Cohen in a matter

of weeks, on May 2, 2022. There is abundant evidence that the Removal Notice was strategically timed to disrupt the Proceeding.

When the Removal Notice was filed, Bartolacci and Ermitage were expected to substantially complete their document production obligations (which would have included a privilege log reflecting communications between Bartolacci and Meir about the allegedly fraudulent transfers) within *minutes or hours*. Now, Bartolacci is using the Removal Notice as an excuse not to produce anything, when in fact even an effective removal notice would not provide any such excuse. The Removal Notice was filed only a few days before Bartolacci's already long-delayed deposition, which was supposed to happen today, April 8, 2021. Bartolacci used the Removal Notice as an excuse to declare that she does not have to appear for today's deposition, when in fact even an effective removal notice would not provide any such excuse. A removal is not a stay and effects no change in the case schedule. YH thus implores this Court to take immediate action so that the trial, if one is needed, can be held in state court on May 2, 2022 as planned.

For the reasons set forth herein, this Court should promptly remand the Proceeding to the Supreme Court, where YH originally filed it, and grant YH the fees and costs it incurred in making the Remand Motion.

## **STATEMENT OF FACTS**

This case concerns a guarantor, Meir, who promised to repay his company HFZ Capital Group LLC's ("HFZ") approximately $20 million obligation to YH, which resulted in a nearly $20 million judgment entered in favor of YH and against Meir in the HFZ Supreme Court Action on June 15, 2021 (the "Judgment"). For many years, Meir was the Managing Principal of HFZ, a

New York real estate development company, until Meir and the company's founder, Ziel Feldman

("Feldman"), had a falling out after the commencement of the HFZ Supreme Court Action.[5]

Meir's principal asset when he executed the guaranty in July 2020 in favor of YH was 40

Meadow Lane, an opulent mansion in Southampton, New York worth tens of millions of dollars.

Meir owned virtually all the equity (net of mortgages) in 40 Meadow Lane through his interests in

two LLCs, EAM and EZL. Meir acquired equity in the Debtors and in 40 Meadow Lane through

a variety of changes in entity structure. By October 20, 2021, EZL beneficially owned close to

100% of 40 Meadow Lane, and Meir was the sole member of EZL, as reflected in an executed

operating agreement that Meir relied on in communications with Delaware authorities, in bank

loan applications, and in communications with the IRS.

After HFZ and Meir defaulted, and after YH had repeatedly threatened to sue Meir

personally, in or around October 20, 2020 (just a few days before YH sued Meir), Meir had a

lawyer (Daniel Dwyer of Meister Seelig & Fine LLP) write up a second version of EZL's operating

---

[5] Since the commencement of the HFZ Supreme Court Action, scores of lawsuits have been filed against Meir, Feldman and HFZ in the New York courts. These lawsuits reveal that HFZ was a Ponzi scheme, wherein Meir and Feldman regularly borrowed money from private lenders, which they then bundled, as if the underlying funds belonged to HFZ, to convince commercial lenders of HFZ's financial wherewithal for the purpose of obtaining purchase money mortgages and construction loan financing for HFZ's proposed real estate development projects. Then, Meir and Feldman would overload their real estate development projects with staggering debts, backed by preposterous amounts of personal financial guaranties (for example, Meir personally guaranteed more than $173 million of HFZ's debt); they would then, drain their real estate projects to fund their extravagant lifestyles, including, for example, Meir's 40 Meadow Lane property, a $43 million mansion on Southampton's "Billionaire Lane". It is worth noting that Petitioner has also filed a separate racketeering-based action against HFZ and Feldman, *YH Lex Estates LLC v. Feldman, et al.*, Index No. 657033/2021 (Sup. Ct. N.Y. County, Dec. 17, 2021), with respect to Feldman's admission that HFZ diverted *$246 million* of construction loan proceeds earmarked for one project to other projects, in breach of their representations and obligations to HFZ's commercial lenders and members, including an entity related to Petitioner. Feldman claims he had no knowledge of or involvement in his own company's criminal misconduct, but his self-serving claim is not credible.

agreement. The original, earlier executed operating agreement made Meir the sole member/owner of EZL. The new version of the operating agreement reflected Meir's wife, Bartolacci, as the new 95% owner of EZL—but, tellingly, still left Meir with exclusive control of the entity, via a management appointment that Bartolacci was powerless to take away from Meir. Via the Petition filed in the underlying Proceeding, YH raised substantial questions regarding the validity of the second EZL operating agreement, and YH's principal argument is that Meir's interests in EZL were never effectively transferred to Bartolacci. However, the facts may (or may not) support a finding that Meir fraudulently transferred most of his personal interests in his most valuable asset, the 40 Meadow Lane property, to Bartolacci on or around October 21, 2020, in a clear effort to evade Meir's debt to YH.

After October 21, 2020, Meir continued to rely, repeatedly, on the original version of EZL's operating agreement. Among other things, Meir's lawyers (who, in a clear conflict of interest, represent the within Debtors) told two different New York Supreme Court Justices that Meir was the sole or principal beneficial owner of 40 Meadow Lane in early 2021. Meir also submitted tax documents reflecting that he was the sole beneficial owner of the property in early 2021. For these reasons, the Supreme Court state court has already determined in connection with the Proceedings that Meir is judicially and equitably estopped from denying he remained the 100% beneficial owner of EZL up and through the time of sale of the property in spring 2021.

Yet when Meir directed the sale of the property for some $43 million in March/April 2021, Meir personally directed that a large portion of the net sale proceeds (remaining after paying off a mortgage and other purported debts associated with the property) be transferred to his wife,

Bartolacci, and her entity Ermitage.[6] Meir relied on the second version of EZL's operating agreement to supposedly justify his decision to transfer some $12.6 million in home sale proceeds to Bartolacci and Ermitage. At the time of the distribution that Meir directed, YH was about to get a summary judgment ruling against Meir, and YH had already filed a motion to attach the sale proceeds. Unfortunately, Meir was able to complete the fraudulent distribution before the attachment motion could be heard on the merits. (The state court judge denied a TRO in advance of the distribution, but he did so only because of repeated false assurances from Meir's counsel that the proceeds would not be distributed and would remain available to satisfy a judgment. As noted by Justice Cohen, the conduct of Meir's lawyers throughout these matters has been very disturbing.)

On December 17, 2021, Justice Cohen noted that what had emerged, after hearing for many months about "withdrawals of the accounts, the shifting money around, the taking the proceeds of a real estate transaction that was, I believe, represented [to the court] to be security for any proposed judgment [that has] now sort of magically . . . disintegrated," was "very disturbing stuff."

---

[6] On April 5, 2021, from the 40 Meadow Lane net sale proceeds, Meir directed that the title insurance company transfer $2,000,000 directly to Ermitage One LLC, an entity that had been established by Meir's counsel for Bartolacci on the eve of the closing. Also, on April 5, 2021, from the 40 Meadow Lane net sale proceeds, Meir directed that the title insurance company transfer $10,587,387.52 directly to Bartolacci. EAM and EZL played no role in the distribution; instead, Meir was taking the proceeds he personally owned, and moving them to his wife/her entity. From there, Meir and Bartolacci went on a spending spree, including renting a $150,000 *per month*, 7,500 square foot water-front house in Miami Beach. Meir also purchased high-performance luxury vehicles out of the Ermitage account, including a Porsche, an Aston Martin and a Mercedes. Meir also used the Ermitage accounts to purchase approximately $1.8 million in gold bullion—phone recordings obtained by YH during discovery show Meir used the fake name "Nir Bartolacci" to make this purchase. And between April 2021 and October 30, 2021, Meir spent more than $735,000 on travel by private jets and yachts, and more than $600,000 on fine wine. Meir effectively had control over Bartolacci and Ermitage's accounts and thereby controlled his assets which he had fraudulently transferred to Bartolacci and Ermitage. The facts could not be more shocking.

Justice Cohen further noted that that "[a]ll of this from the beginning has struck [the Court] as a series of moves to just sort of move funds around to evade this judgment."

After hearing for many months about "withdrawals of the accounts, the shifting money around, the taking the proceeds of a real estate transaction that was . . . represented [to the court] to be security for any proposed judgment [that has] now sort of magically . . . disintegrated," Justice Joel. M. Cohen, the presiding judge in the Proceeding, ordered Meir to appear for an evidentiary hearing on January 31, 2022, as the Supreme Court intended to get to the bottom of Meir's "incredibly suspicious" conduct, which Justice Cohen labeled a potential "shell game." (Transcript of December 13, 2021 hearing at 24, 28).

At the January 31, 2022 hearing (Transcript at 71; Jan. 31, 2022 Transcript, NYSCEF Doc. No. 630, Index No. 655980/2020), Justice Cohen noted that he had been misled:

> [T]he point was not for me to be concerned that the money wouldn't leave the jurisdiction that day, but that it wouldn't leave at all. The comfort that was provided to me was that this sale is not going to turn into ever, a dissipation of assets. So, therefore, judge, do not get in the way of this transaction. Which I agreed with because it didn't make sense to stop an arm's length sale. And you would have the cash and I was hearing from respected counsel that the cash would still be here. And, you know, the subsequent events, which were not foisted upon your client, it was something that they decided to do, having made through you a representation that that wouldn't happen is, I have to tell you, very disturbing, because I do feel like I was misled.

Any way you look at it, Meir *personally* (not EAM or EZL) transferred more than $10 million of his own personal assets to his wife to avoid his personal obligation to YH. Meir either (a) transferred away LLC membership interests worth more than $10 million on October 2020; or (b) diverted sale proceeds, which belonged to him personally and would otherwise have flowed through to him personally, of some $12.6 million in April 2021. There is no claim in the underlying petition that EAM or EZL made any fraudulent transfer. Meir's claim that EAM or EZL should be

the real defendants-in-interest is a fantasy, concocted by a proven fraudster by the same law firm that helped facilitate and cover up Meir's fraudulent transfer scheme.

When Meir (the real sole owner of both EAM and EZL) directed his entities to file for bankruptcy earlier this week, he did so to disrupt a rapid schedule set by Justice Cohen to determine whether *Meir personally* made fraudulent transfers to Bartolacci and Ermitage weeks before the impending trial. The relief sought in the Proceeding is against Bartolacci and Ermitage—not EAM or EZL. Meir had EAM and EZL file the Bankruptcy Cases in Delaware, and before the Chapter 7 Trustee even hired counsel, Meir had his own counsel (purportedly on behalf of the bankrupt entities) try to remove the state court case to federal court. Meir did so *just minutes before* Bartolacci and Ermitage were due to make substantial document productions to YH, a matter of days before Bartolacci's scheduled deposition (April 8, 2022), and weeks before a scheduled trial (set to begin May 2, 2022). Meir's conduct is, by any definition, an egregiously calculating further effort to evade the Judgment and avoid the consequences of his fraud scheme.

But both the state court and the federal court immediately recognized that EAM and EZL, non-parties to the state court case, had no ability to remove the state court case.  When Meir's first dilatory effort blew up in his face, rather than face reality, Meir doubled down on his devious strategy, and filed a notice of removal in his own name. But as detailed below, *these non-parties' bankruptcies provide no basis for Meir to remove this case to federal court*. Bartolacci's deposition remained on the schedule for today (April 8, 2022) and should have gone forward regardless of Meir's latest cynical effort to disrupt the orderly sequence unfolding before the Supreme Court— which will inevitably result in an approximately $12.6 million judgment against Bartolacci and Ermitage, who have thus far failed to mount any serious merits-based defense to the fraudulent transfer claims asserted against them.

There is absolutely no coincidence that Meir has pulled his latest stunt on the eve of Bartolacci's deposition, the culmination of his concerted effort to evade the Judgment since June 2021 in furtherance of his and Bartolacci's interspousal fraud scheme. The current filing is merely Meir and Bartolacci's latest effort to evade the Judgment through frivolous filings, fraud, deceit and blatantly unethical and illegal debt and judgment avoidance practice. All signs and inferences suggest that Bartolacci and Ermitage are willing and knowing participants in Meir's scheme to delay this case and hope to benefit from such delay via buying more time to spend down their assets before they face a final judgment. Petitioner submits that there should be serious consequences for Bartolacci and Ermitage ignoring their discovery obligations under the purported cover of Meir's abusive removal filings. In sum, Meir, Bartolacci, and Ermitage *all* come before this Court with plainly unclean hands.

## ARGUMENT

"Any civil action brought in state court may be removed to the federal district court that embraces the state court *only if the federal courts have original jurisdiction over the matter.*" *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 11 Civ. 2232 (NRB), 2011 WL 4965150, *2 (S.D.N.Y. Oct. 19, 2011) (emphasis supplied). Where removal of an action or claims from state court to federal court is challenged, the removing party "has the burden 'to establish its rights to a federal forum by competent proof.'" *Allstate Ins. Co. v. Ace Secs. Corp.*, No. 11 Civ. 1914 (LBS), 2011 3628852, at *3 (S.D.N.Y. Aug. 17, 2011) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F. 2d 651, 655 (2d Cir. 1979)). "On a motion for remand, the court must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff." *Id.* (internal quotation marks and citation omitted). "[O]ut of respect for the limited jurisdiction of federal courts and the rights of sates, [the court] must resolve any doubts against removability." *California*

*v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.)*, 488 F.3d
112, 124 (2d Cir. 2007) (internal quotation marks and alterations omitted).

## I.   THE PROCEEDING SHOULD BE REMANDED BECAUSE THE REMOVAL NOTICE IS DEFECTIVE

Meir purports to remove the Proceeding pursuant to 28 U.S.C. § 1452(a), which provides that
removal is appropriate with respect to (i) "any claim or cause of action in a civil action," (ii) "to
the district court for the district where the civil action is pending," (iii) if such district court has
jurisdiction of such claim or cause of action under section 1334 of this title."

Specifically, 28 U.S.C. § 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a
> proceeding before the United States Tax Court or a civil action by a governmental
> unit to enforce such governmental unit's police or regulatory power, to the district
> court for the district where such civil action is pending, if such district court has
> jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

While Meir purports to correct the initial defect in the first filed Removal Notice, which
was purportedly filed by the Debtors (non-parties to the Proceeding and not by their Chapter 7
Trustee), the Removal Notice filed by Meir remains defective.  The bankruptcies of these non-
parties to the action do not provide a basis for Meir to remove the case to federal court to have it
considered in connection with the Bankruptcy Cases. The Debtors, whether in a document signed
by Meir or not (as in the case of the initial defective Removal Notice), have absolutely no right or
ability to file a Removal Notice, once they declared themselves to be bankrupt under Chapter 7 of
the Bankruptcy Code. There is no indication on the record that the Chapter 7 Trustee has authorized
Meir to file the Removal Notice and the Chapter 7 Trustee is the only person with authority to act
with respect to the Debtors' Bankruptcy Cases. "[T]he [bankruptcy] code gives the trustee the

14

*exclusive* right to prosecute any claim held by a bankrupt estate." *In re Dawnwood Properties/78*,
231 B.R. 167, 174 (S.D.N.Y. 1999) (emphasis in original); aff'd on appeal, *In re Dawnwood*
*Properties/78*, 209 F.3d 114; (2d Cir. 2000); *see also, Honigman v. Comerca Bank (In re Van*
*Dresser Corp.)*, 128 F.3d 945, 947 (6ᵗʰ Cir. 1997) (holding that a shareholder or creditor of the
bankruptcy corporation could not bring an action for claims belonging to the debtor); accord,
*Pereira v. Dunnington (In re 47-49 Charles Street, Inc.)*, 211 B.R. 5 (S.D.N.Y. 1997) (this Court
explained that "[o]nce a trustee is appointed in a bankruptcy case, the trustee, not the debtor *or the*
*debtor's principal*, has the capacity to represent the estate and to sue and *be sued* under 11 U.S.C.
§§ 323(a) and (b)" (emphasis supplied).

First, Meir is a party to the Proceeding by virtue of his fraudulent actions with respect to his
personal assets, not the Debtors' property. That he caused two Bankruptcy Cases to be filed for
business entities in which he is the sole member has no bearing on the Proceeding, the claims set
forth therein or the outcome. Second, Meir's relationship to the Debtors in the Bankruptcy Cases
does not provide a basis for litigating the Proceeding in federal court because the Proceeding has
absolutely no relationship to the Debtors or their Bankruptcy Cases. While the Proceeding is
wholly unrelated to the Bankruptcy Cases and the Debtors' property, it is, at the very least, the
Chapter 7 Trustee's decision as to whether he should intervene in the Proceeding to become a party
and then to seek to have the Proceeding removed to federal court.

## II.    THIS COURT LACKS JURISDICTION UNDER 28 U.S.C. § 1334

Removal pursuant to section 1452 is proper only if the district court has jurisdiction over the
"claim or cause of action under section 1334." 28 U.S.C. § 1334(b) grants district courts
jurisdiction over civil actions (i) "arising under title 11," (ii) "arising in" cases under title 11, and
(iii) "related to" cases under title 11. Meir predicates his Removal Notice on the contention that

15

the civil action underlying the Proceeding is a "'core proceeding' within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (F), (G), (H), and (O) because it concerns the (i) disposition of causes of action that constitute property of the Debtors' estates; (ii) determination of a claim of Plaintiff, a creditor, against Meir and Bartolacci, which claims constitute property of the Debtors' estates, and determination of ownership of those claims; (iii) ability of the Debtors' estates to dispose of such claims; and (iv) ability of the Debtors' estates, and Meir's interests therein, to be properly administered under Chapter 7 of the Bankruptcy Code." *See* Removal Notice at ECF No. 1.

An action is "related to" a bankruptcy case under title 11 only if the "action's outcome might have any conceivable effect on the bankrupt estate." *Allstate Ins. Co. v. Citimortgage, Inc.*, 2012 WL 967582, at *4 (S.D.N.Y. Mar. 13, 2012) (quoting and citing *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)).

Meir's contentions, however, are flawed for myriad reasons. Meir is only able to reach the conclusions he does about the supposed relationship between the Proceeding and the Debtors' Bankruptcy Cases by badly misrepresenting the allegations and claims in YH's petition. First, the outcome of the Proceeding will not affect the Debtors' Bankruptcy Cases in any way. YH's claims for relief run solely against Bartolacci and Ermitage, both of which are non-debtors. There is no indication of any claim those parties might have against the Debtors. The fraudulent transfer claims underlying the Proceeding seek solely to recover the fraudulent and voidable transfers of Meir's personal assets that Meir fraudulently made to Bartolacci and Ermitage at a time when Meir personally owed millions of dollars to YH under his personal guaranties on the eve of the impending Judgment. Nowhere has the Petitioner alleged in the Proceeding that it is seeking to recover property transferred from either Debtor, but rather, YH seeks solely to recover Meir's personal property transferred to Bartolacci and Ermitage. Meir's self-serving assertions do not

change the fact that the claims underlying the Proceeding are simply not "core" as they relate to the Debtors' Bankruptcy Cases.

The Proceeding is scheduled for trial on May 2, 2022 and the Removal Notice filed by Meir is purely another tactic employed by Meir to stall the Proceeding and to delay the inevitable outcome – a judgment in favor of YH against Bartolacci and Ermitage, who have no merits defenses. Assuming YH is successful in achieving the relief sought in the Proceeding, it will have no impact on the Debtors' Bankruptcy Cases. As such, the Proceeding is not "related to" the Debtors' Bankruptcy Cases. *See Falise v. The American Tobacco Co.*, 241 B.R. 48 (E.D.N.Y. 1999) (applying the well-settled rule that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor" and dismissing action).

## III.   REMAND PURSUANT TO 28 U.S.C. § 1452(b) IS MANDATED BY PRINCIPLES OF EQUITY

To the extent that the Court concludes that it possesses jurisdiction, it nonetheless should remand the Proceeding to the Supreme Court on "equitable grounds" under 28 U.S.C. § 1452(b). The record in the Supreme Court evidences egregious abuse of the litigation process, and egregious dilatory efforts by Meir. The Removal Notice is, thus far, Meir's most outrageous effort to disrupt the judicial process.

Courts consider a number of factors in deciding whether to remand a proceeding under 28 U.S.C. § 1452(b), including: (i) whether the removed proceeding is a "core" or "non-core" proceeding; (ii) whether issues of state law predominate; (iii) whether judicial economy would be served by equitable remand; (iv) whether 1334(b) is the sole basis for exercising jurisdiction; (v) whether the proceeding involves non-debtors; (vi) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; and (vii) the likelihood that the proceeding was

commenced in a particular forum because of forum shopping on the part of one of the parties. *See*, *e.g, Shiboleth v. Yerushalmi*, 412 B.R. 113, 117 (Bankr. S.D.N.Y. 2009).

Application of these factors to this matter clearly favors remand of the Proceeding to the Supreme Court.  First, the principal of the Debtors, who are not parties to the Proceeding, now claims, without merit, that the causes of action underlying the Proceeding are somehow owned by the Debtor.  YH is the exclusive owner of the causes of action against the Respondents by virtue of a nearly $20 million Judgment against Meir resulting from the HFZ case, which YH has been forced to enforce against the transferees of Meir's personal assets because of Meir's interspousal fraud scheme and Meir's unbelievable efforts to evade satisfaction of the Judgment while he continues to spend wildly on personal expenses and luxuries from his wife's supposedly separate accounts. Meir apparently believes there will never be any real consequences for his ongoing contempt of the judicial process.

Because the Proceeding in no way implicates the Debtors or their property, this Court should determine that the Proceeding is **not** "related to" the Debtors' Bankruptcy Cases and should instead remand the Proceeding to State Court. Even if it did, it would not be Meir's or the Debtors' decision to pursue such claims, which vests solely with the Chapter 7 Trustee. *See* 11 U.S.C. § 323(b); *see also In re Dawnwood Properties*/78, 209 F.3d 114, 117 (2d Cir. 2000) (finding that upon the filing of the bankruptcy, the trustee was solely vested with the discretion to pursue claims, let them lie, or abandon them). The Removal Notices filed first by the Debtors and then by Meir make clear that the Bankruptcy Cases and the fast and furious efforts to remove the Proceeding are nothing more than a thinly veiled attempt constructed by Meir and his counsel to delay the Proceeding and continue to obstruct YH's ability to collect its Judgment. Indeed, the causes of action underlying the Proceeding are state law claims between non-debtor parties involving the personal assets of

those non-debtor parties. Without question, the Proceeding is "non-core." "Because non-core claims, do not implicate the essence of federal bankruptcy power," *see id*. at 117, "considerations of comity with state courts favor remand [as] Congress has made it plain that, in response to noncore proceedings…the federal courts should not rush to usurp the traditional precincts of the state court." *Digital Satellite Lenders, LLC v. Ferchill*, 2004 WL 1794502 (S.D.N.Y. Aug. 6, 2004); *Aqua Shield, Inc. v. Brooks,* 2013 WL 5781234, *2-4 (E.D.N.Y. Oct. 24. 2013).

The remaining factors further support the conclusion that the Proceeding should be remanded to Supreme Court. First, the Proceeding raises purely state law issues – *i.e.,* whether, under New York law, including CPLR Article 4 and CPLR §§ 5225(a) and (b) and 5227, and New York's Consolidated Debtor and Creditor Law Article 10, § 270 et seq.,7, YH is entitled to a judgement, (a) setting aside Meir's fraudulent, voidable transfers of his personal money or property to his wife, Bartolacci, and Bartolacci's single member entity, Ermitage; (b) obtaining a money judgment against Bartolacci and Ermitage for the value of any voidable transfers that she or Ermitage have since liquidated; and, (c) for an order of costs and fees against Bartolacci.

Second, judicial economy would be served by remanding the Proceeding to Supreme Court, where such proceedings are regularly and efficiently litigated, and where the Judgment itself was entered. There are more than *800* docket entries since November 2020 in the Supreme Court Action against Meir in which the Judgment has been entered. The Petition emanating from the Meir-Bartolacci interspousal fraud scheme has been referred to Justice Cohen as a related proceeding. Justice Cohen is intimately familiar with these proceedings and has dedicated enormous judicial

---

[7] New York adopted the Uniform Voidable Transactions Act, effective on April 4, 2020, and the 95-year-old fraudulent conveyance law embodied in Article 10, Sections 270-281 of the DCL was replaced with new DCL Sections 270-281.

resources to the just and fair administration of the claims against Meir and Bartolacci, notwithstanding that Meir and Bartolacci have tried every trick in the book to delay and block enforcement of the Judgment.  Justice Cohen's familiarity with the case is, however, precisely the reason why Meir and Bartolacci have tried this desperate gambit.  Meir's eleventh-hour, second attempt at removal is the definition of forum shopping.

"Absent contrary evidence, a federal court must presume that a state court will operate efficiently and effectively in adjudicating the matters before it." *In re AOG Entm't, Inc.*, 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017). Here, the Proceeding is in the late stages of discovery— Bartolacci and Ermitage were already supposed to have substantially produced their documents, but failed to do so, and Bartolacci was supposed to be deposed today, but did not show up—and the parties are scheduled to begin a trial on this matter on May 2, 2022, less than a month from now. The Supreme Court is reserving that date on its calendar based, in part, on the Supreme Court's articulated belief that the Respondents here have made a "perplexing" and "peculiar" move designed to delay the Proceeding without any apparent relationship to the Bankruptcy Cases. Given the enormous resources that have been expended in the Supreme Court proceedings, the removal would work a grave injustice on YH. Respondents' latest tactical maneuver is wholly without merit, and the case should be remanded forthwith.

The Proceeding exclusively involves non-debtors in the Bankruptcy Cases and the issues to be resolved in the Proceeding will have no effect on the Debtors' Bankruptcy Cases or the Chapter 7 Trustee's administration of the Debtors' estates. And, Meir and Bartolacci, seeking to evade the jurisdiction of the Supreme Court and the impending trial, are clearly engaged in impermissible forum shopping.

## IV.   THE COURT SHOULD REMAND THE PROCEEDING UNDER 28 U.S.C. § 1334(c)(1)

In any event, the Court should decline to exercise jurisdiction over the Proceeding under 28 U.S.C. § 1334(c)(1), which states, with exceptions not relevant here, that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). As discussed at length herein, this Proceeding is a non-core proceeding that will not affect the Chapter 7 Trustee's administration of the Debtors' Bankruptcy Cases, or otherwise impact their bankruptcy estates. YH merely seeks an order remanding the Proceeding back to Supreme Court where it was properly filed and rightly belongs. The Debtors are not parties to the Proceeding. Simply put, there is no reason for this Court to enmesh itself in facts and events that are more appropriately litigated in the Supreme Court. *See, e.g., Allstate*, 2012 WL 967582, at *6.

## V.   YH SHOULD BE AWARDED ITS FEES AND COSTS

Not only should the Proceeding be remanded, but YH should be awarded its fees and costs in bringing this Remand Motion. Pursuant to 28 U.S.C. § 1447(c), "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Because the Debtors' and Meir's Removal Notice and attempt to remove the Proceeding from the Supreme Court was improper, the Court should enter an order directing the payment of YH's attorneys' fees and expenses incurred in connection with seeking to have the Proceeding remanded to Supreme Court.

## CONCLUSION

For the foregoing reasons, the Court should: (i) grant YH's Remand Motion and remand the Proceeding to the Supreme Court; (ii) award YH its fees and costs in making the Remand Motion; and (iii) grant YH such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          April 8, 20222

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**

By:    */s/ Tracy L. Klestadt*
       Tracy L. Klestadt
       Kathleen M. Aiello
       200 West 41st Street, 17th Floor
       New York, New York 10036
       Tel: (212) 972-3000
       Fax: (212) 972-2245
       Email: tklestadt@klestadt.com
              kaiello@klestadt.com

               -and-

**SUSMAN GODFREY L.L.P.**
Mark H. Hatch-Miller
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
Email: MHatch-Miller@susmangodfrey.com

*Counsel to Petitioner, YH Lex Estates LLC*
