UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
YH LEX ESTATES LLC,                                      Adv. Pro. No. 22-01077 (JLG)
                    Petitioner,

                                                                      (Removed Proceeding)
-against-                                                              AFFIDAVIT OF RANEE
                                                                                        BARTOLACCI

NIR MEIR, RANEE A. BARTOLACCI, and
ERMITAGE ONE, LLC,
                    Respondents.
-------------------------------------------------------------------X
STATE OF FLORIDA             )
                                           ) ss.:
COUNTY OF MIAMI-DADE   )

      RANEE BARTOLACCI, being duly sworn, deposes and says:

      1.     I am a Defendant in this proceeding and the 100 percent owner of Defendant Ermitage One, LLC. I make this affidavit in opposition to the Order to Show Cause of Petitioner YH Lex Estates LLC ("YH"). YH filed a Petition against me, a copy of which is attached to this affidavit as <u>Exhibit A</u>. I filed an answer which is attached to this affidavit as <u>Exhibit B</u>.

      2.     The funds I received from the sale of our former marital residence at 40 Meadow Lane, Southhampton, New York ("40 Meadow Lane") reflect monies paid and owed to me based upon my financial contributions of my separate property to our former home and to my marriage.

      3.     Nir and I were married on August 8, 2009. Before our marriage, I had separate property, which originated with a trust set up by my family which has a value of between 10 million and $50 million dollars.  A copy of the 2008 tax reporting statement from former wealth management account with Merrill Lynch shows my separate income including interest income and proceeds from broker and barter exchanged transactions is annexed to this affidavit as <u>Exhibit C</u>. This is just one of my accounts. I am still trying to obtain all the other account statements and was not able to obtain all of them as of the date of this Affidavit.

4. Our family's accountant, Don Ayers, who has his place of business in Pennsylvania, manages the trust for my family. Before my marriage I was also self-employed and earned a salary under $100,000. I also owned an interest in a small real estate/storage business in Pennsylvania that I later sold for several millions of dollars.

5. After I married, I used my Merrill Lynch account to make payments to my husband and to third parties, totaling approximately $400,000 to $600,000 per year, covering various types of expenses, including for the construction of our home at 40 Meadow Lane, and for repairs, maintenance, staffing, utilities and upkeep of our marital residences and in support of our lifestyle. Excerpts of tax reporting statements from 2009, 2010, and 2011, which reflect some of my expenditures, are attached to this affidavit as <u>Exhibits D, E, & F</u>. These statements are from before we purchased the 40 Meadow Lane property. After I married, I added Nir's name to the Merrill Lynch account. I forgot to mention this during my deposition because I closed the Merrill Lynch account some time ago.

6. Over the years, and after the purchase of the 40 Meadow Lane property, I made significant contributions from my separate funds that enhanced the value of the property at 40 Meadow Lane.

7. Throughout the years whenever my husband needed money, I provided it to him from my own accounts and monies. Petitioner in its lawsuit makes false claims that I only sent money to my husband after the sale of our house as there was some fraudulent intent. This is easily disproven by the multiple transactions where I gave and loaned my husband substantial monies even before we purchased the house on 40 Meadow Lane.

8. When we purchased the property, the existing structure had to be torn down and a new home built. I contributed to the initial construction and to the renovations. I may have also

contributed to the purchase price and am waiting for supporting records from my financial institutions where I banked at the relevant times.

9. My separate property has generated and continues to generate income. I have active bank accounts with Morgan Stanley and City National Bank.

10. When the COVID-19 pandemic began, I decided to sell 40 Meadow Lane because we wanted to move to Florida to be closer to my family. I wanted to leave the city and made this decision for my family over Nir's objections. At the time, as per my knowledge, the title owner of 40 Meadow Lane was a Delaware company named EZL 40 Meadow Lane LLC ("EZL") I own ninety-five percent of EZL and Nir owns the remaining five percent.

11. At the time of the sale of 40 Meadow Lane, I was not aware of the state of my husband Nir's finances, and I did not know whether he had debts that he was unable to pay. When Nir transferred proceeds from the sale of 40 Meadow Lane to me, I believed I was entitled to receive the funds because I own ninety-five percent of EZL, and I contributed to the increase in the value of 40 Meadow Lane by contributing to the construction of our home and for repairs, maintenance and upkeep to the property.

12. Despite any suggestion to the contrary, I personally signed the EZL operating agreement that reflects my 95% interest. It was always understood and agreed between us that, apart from the formal ownership structure, the 40 Meadow Lane house was "my house." While I contributed to the house, my husband devoted his separate funds towards other investments and ventures that I had no involvement in.

13. I have requested records from multiple financial institutions from where I made contributions to my marital home, 40 Meadow Lane. However, as these records are archived the banks have advised they need more time to provide copies. In addition, they have advised that they

will send them by regular mail. The statements I have attached to this Affidavit were received within the last couple of days and were received by mail.

14. Once all the statements become available I will provide them as they will evidence millions of dollars of contributions from my personal accounts to the purchase and construction of our prior home.

**WHEREFORE**, Bartolacci and Ermitage respectfully request that this Court deny Plaintiff's Order to Show Cause in its entirety.

RANEE BARTOLACCI

Sworn to before me this
21 day of April 2022

Notary Public

GABRIEL ALBELO
NOTARY
My Comm. Expires
October 21, 2023
No. GG 924478
STATE OF FLORIDA