22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 1 of 30

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |
|---|---|
| YH LEX ESTATES LLC,<br><br>       Petitioner,<br><br> - against -<br><br>NIR MEIR, RANEE A. BARTOLACCI and ERMITAGE ONE, LLC,<br><br>       Respondents. | Index No.:<br><br>**VERIFIED PETITION PURSUANT TO CPLR §§ 5225(a) AND (b) FOR DELIVERY OF PROPERTY IN THE POSSESSION OF RESPONDENTS** |

TO THE SUPREME COURT OF THE STATE OF NEW YORK:

  Petitioner/Judgment Creditor YH Lex Estates LLC ("YH") by and through its

undersigned counsel, alleges in this Verified Petition, as follows:

22-01077-jlg   Doc 34-1   Filed 04/21/22   Entered 04/21/22 22:34:30   Exhibit A -
Petition   Pg 2 of 30

## NATURE OF THE PETITION

1.　　This Petition is brought by Judgment Creditor YH pursuant to CPLR Article 4 and CPLR §§ 5225(a) and (b) and 5227, and New York's Consolidated Debtor and Creditor Law (the "DCL") Article 10, § 270 *et seq.*,[1] to (a) set aside Defendant/Judgment Creditor Nir Meir's ("Meir") fraudulent, voidable transfers of money or property to his wife Ranee A. Bartolacci ("Bartolacci") and Bartolacci's single member entity, Ermitage One LLC ("Ermitage"), (b) obtain a money judgment against Bartolacci and Ermitage for the value of any voidable transfers that she or Ermitage have since liquidated, and, (c) for an order of costs and fees against Bartolacci, described herein.

2.　　This proceeding arises from YH's efforts to enforce a June 15, 2021 judgment (the "Judgment") against Meir for the sum $19,742,959.81.

3.　　This proceeding involves an intra-spousal fraudulent conveyance scheme by and between Meir and Bartolacci, both of whom fled New York to avoid the nearly $20 million Judgment against Meir.

4.　　The fraudulent transfers described herein were made by Meir to Bartolacci and Ermitage with the actual intent to hinder, delay and defraud YH.

---

[1] New York adopted the Uniform Voidable Transactions Act, effective on April 4, 2020, and the 95-year-old fraudulent conveyance law embodied in Article 10, Sections 270-281 of the DCL was replaced with new DCL Sections 270-281.

2

22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 3 of 30

5.      Specifically, Meir's transfer of more than $12.5 million of the net sale proceeds from the sale of his $43 million mansion located at 40 Meadow Lane, Southampton, New York ("40 Meadow Lane") on April 5, 2021, together with various luxury vehicles, to Bartolacci and Ermitage for no, or nominal consideration, on the eve of the Court granting summary judgment to YH against Meir—or, in the case of the vehicles, after the Court had already entered summary judgment against Meir—is a fraudulent conveyance under the DCL.[2]

6.      Meir's transfers to Bartolacci and Ermitage were made after a substantial debt had been incurred by Meir in favor of YH; were made for no, or nominal consideration; Meir proactively concealed the transfers; Meir had already been sued by YH before certain transfers were made; the transfers were of substantially all of Meir's assets, purportedly leaving Meir insolvent or nearly insolvent and, yet, Meir and Bartolacci now reside in a $150,000-per-month rental property in Miami Beach, Florida; and, remarkably, through his counsel, Meir effectively admitted that his ultimate intent was to defraud YH, as his creditor.

7.      In this conversion of the pending CPLR § 5225(a) proceedings against Meir, which was denied without prejudice to YH's pursuit of CPLR § 5225(b) proceedings including Bartolacci, as authorized by the Court at the hearing on January 31, 2022 and in its written order of February 3, 2022, under Index No. 655980/2020

---

[2]  Meir and Bartolacci were aided and abetted in this scheme by their joint New York

(all docket entries referenced herein are in that related action), YH seeks to set aside

Meir's voidable conveyance of cash to Bartolacci in the amount of $10,587,387.52 and

to Ermitage in the amount of $2,000,000, from the 40 Meadow Lane net sale proceeds,

and to also set aside Meir's voidable conveyance of his fleet of luxury vehicles to

Bartolacci and/or Ermitage, or to otherwise disregard such conveyances and levy

execution upon the property conveyed and the proceeds thereof.

## BACKGROUND

8.      On November 3, 2020, YH commenced the underlying lawsuit against

Meir by motion for summary judgment in lieu of complaint pursuant to CPLR 3213

with respect to Meir's personal guaranty of loans that YH had made to H F Z Capital

Group LLC ("HFZ").

9.      On April 12, 2021, this Court granted summary judgment against Meir;

the Judgment was entered on June 15, 2021.

10.     Through post-judgment discovery, YH discovered that well over $12.5

million in fraudulent and, thus, voidable cash and property transfers were made by

Meir to Bartolacci and Ermitage.

## THE RESPONDENTS

11.     Meir, age 47, an individual, was domiciled and resident in the State of

New York at the time the fraudulent conveyances described herein were made in New

---

attorneys, the law firm Davidoff Hutcher & Citron LLP ("DHC").

York, and thereafter relocated to Florida. Meir now maintains his primary residence at 1826 West 23rd Street, Miami Beach, Florida 33140. At all relevant times, Meir was Bartolacci's husband.

12.     Bartolacci, age 48, an individual, was domiciled and resident in the State of New York at the time the fraudulent conveyances described herein were made in New York, and thereafter relocated to Florida. Bartolacci now maintains her primary residence at 1826 West 23rd Street, Miami Beach, Florida 33140. At all relevant times, Bartolacci was Meir's wife.

13.     Ermitage is a Florida limited liability company formed on July 8, 2021, by DHC, with its principal registered office at DHC's offices at 605 Third Avenue, New York, NY 10158. Ermitage is the successor-in-interest by merger to a New York limited liability company of the same name that was formed in New York by DHC on March 26, 2021 ("Ermitage (New York)"). After the receipt of voidable conveyances from Meir set forth herein, Ermitage (New York) was merged into Ermitage on August 12, 2021. With DHC's assistance, the Ermitage entities were formed and then merged to provide Meir and Bartolacci with the conduit to remove the proceeds of the sale of 40 Meadow Lane from New York State and, thus, evade the Judgment.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Meir's Breach of his $20 Million Personal Guaranty

14.     Between May 15, 2017, and May 3, 2019, YH loaned HFZ the sum of

5

$20,050,000, pursuant to a multi-tranche convertible loan reflected in a series of promissory notes, with respect to a potential mixed residential/commercial development project on the Upper East Side of Manhattan.

15.    After HFZ failed to repay the promissory notes as they matured, Meir and Feldman provided personal guaranties to YH in November 2019 and provided a restated personal guaranty to YH in July 2020.

16.    When HFZ was unable to repay the notes according to the parties' amended agreement, YH sent a series of default notices to Meir advising him of his absolute, unconditional liability under his personal guaranty and that a lawsuit would be filed against Meir imminently, including via default notices dated August 12, 2020, August 24, 2020, September 1, 2020, October 18, 2020, and October 30, 2020.

17.    Notwithstanding the default notices to HFZ and Meir, as personal guarantor, no further payments were forthcoming and, on November 3, 2020, YH commenced the underlying action to compel payment of the debt.

**Meir's Ownership of 40 Meadow Lane**

18.    Meir's ownership of 40 Meadow Lane was established conclusively by the Court at a hearing on January 31, 2022.

19.    Meir is judicially and equitably estopped from challenging his 100% ownership of 40 Meadow Lane, despite Meir's audacious plan to conceal his ownership through a sham "transfer" to Bartolacci of an interest in an entity holding

6

indirect title to the property.

20.     By way of background, Meir originally entered the contract to purchase

40 Meadow Lane in his own name, which HFZ was to purchase for Meir as part of his

compensation.

21.     Before closing the purchase, HFZ's attorneys formed a Delaware limited

liability company named EAM 40 Meadow Lane LLC ("EAM") to hold title to 40

Meadow Lane.  Under EAM's original limited liability company agreement, dated as

of June 2013, HFZ was the sole member.

22.     However, on December 30, 2013, HFZ then transferred 50% of its

ownership interest in EAM to Meir as compensation. That same day, EAM amended

its limited liability company agreement in a document titled "Second Amended and

Restated Limited Liability Company Agreement", dated as of December 30, 2013, to

reflect the fact that it was now owned equally by Meir and HFZ (the "Second

Amendment").

23.     On March 5, 2019, EZL 40 Meadow Lane LLC ("EZL") was formed

under the laws of Delaware on Meir's behalf by HFZ's attorneys to own and hold

membership interests in EAM. Pursuant to the EZL operating agreement dated March

21, 2019 (the "original EZL Operating Agreement"), Meir was the sole member of

EZL.

24.     On March 21, 2019, Meir transferred his 50% ownership interest in EAM

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/10/2022

22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 8 of 30

to EZL, while HFZ concurrently transferred 45% of its remaining 50% ownership interest in EAM to EZL as compensation to Meir, rendering Meir the 100% owner of EZL.

25.    That same day, EAM amended its operating agreement to reflect the fact that it was now owned 95% by EZL and 5% by HFZ (the "EAM Third Amendment"). Thus, through EZL, Meir was the 95% beneficial owner of 40 Meadow Lane and the Managing Member of EAM.

26.    Thereafter, HFZ transferred its remaining 5% of EAM directly to Meir's individual name, rendering Meir the 100% beneficial owner of all right, title and interest in and to 40 Meadow Lane.

27.    Relying on the foregoing transfers and the original EZL Operating Agreement, Meir repeatedly declared and represented to others that he was the sole beneficial owner of 40 Meadow Lane, including in court filings, in real estate transaction documents, in verified statements to tax authorities, in sworn settlement agreements, and in indemnity agreements.

28.    Nevertheless, as part of a fraudulent conveyance scheme, and contrary to the overwhelming record evidence, Meir concocted and then doubled down on an audacious fraud scheme, creating a sham second EZL operating agreement as an

excuse to justify transferring proceeds from the sale of 40 Meadow Lane to Bartolacci.[3]

29.    Documents produced by Meir with respect to the sham EZL operating agreement—after months of Meir's evasion of the judgment enforcement subpoenas served upon him in June 2021—demonstrate the following: *First*, the sham operating agreement was created on October 20, 2020, when HFZ was collapsing and Meir knew he was about to be sued by YH, and after Meir had sought to extract additional cash from his remaining equity in 40 Meadow Lane through various personal loan and refinancing transactions; *second*, the document was prepared by an attorney named Daniel Dwyer, then of Meister Seelig & Fein LLP, but who on information and belief is no longer associated with that firm; *third*, the sham operating agreement was purportedly executed on October 21, 2020, but fraudulently back-dated to March 2019; *third*, there is no documentary evidence confirming Bartolacci's participation in, knowledge of, or even signing of the sham document; *fourth*, even after Dwyer and Meir created the sham operating agreement in October 2020, Meir and his other attorneys thereafter continued to rely on the original EZL Operating Agreement in the contemplated refinancing, and for all legal purposes thereafter, up to and including the sale of 40 Meadow Lane, and in Suffolk County Supreme Court as well as the

---

[3] Bartolacci has further exacerbated the costs to YH through her misuse and abuse of judicial process by filing a forum-shopping action in Florida seeking to declare the

proceedings before this Court in 2021; *fifth*, during the same time period when Meir's attorneys at DHC represented to this Court in connection with YH's attachment motion and TRO application that Meir alone owned 40 Meadow Lane and that the proceeds from the same were "not going anywhere," DHC secretly assisted Meir in directing the distribution sale proceeds to Bartolacci and Ermitage on April 5, 2021, and DHC took an unusually large fee for that assisting role; and *sixth*, after the fraudulent distribution, Meir and DHC disclosed the sham second operating agreement and began relying on it as a supposed justification for the improper distribution.

### The Fraudulent Conveyance Scheme

30.     With the purpose of avoiding his debt to YH, and with further knowledge that a decision granting summary judgment against Meir was imminent, Meir, with the assistance of DHC, thereafter initiated a series of fraudulent transactions, to secret away millions of dollars from New York and, thus, obstruct YH's ability to satisfy its soon-to-be-entered Judgment.

31.     The fraudulent transfers described herein were made by Meir to Bartolacci and Ermitage in New York. At all times relevant to the voidable transactions at issue in this proceeding, Meir and Bartolacci were domiciled in New York and Ermitage, a New York entity, maintained its principal offices at DHC's offices in New York. And despite Bartolacci's and Ermitage's (via merger) subsequent

sham second EZL operating agreement as valid, in a transparent effort to avoid the

10

moves to Florida, Ermitage continues to maintain its principal offices at DHCs offices in New York. Further, all of the voidable conveyances at issue in this proceeding were effectuated exclusively in New York, by, between and among New York transgressors, and all of the transfers caused injury to YH in New York.

32.     Meir's effort to avoid his guaranty obligation to YH, and later deny YH enforcement of its pending Judgment against him began in March 2021, and involved, at first, a series of undisclosed fraudulent transactions related to 40 Meadow Lane.

33.     On March 24, 2021, YH's counsel wrote to Mr. Meir's counsel, DHC, that, "We recently learned that your client Nir Meir has stipulated to the dismissal of a notice of pendency filed in the EAM 40 Meadow Lane LLC matter in Suffolk County Supreme Court. Please respond as soon as possible confirming that your client Mr. Meir has not, and will not during the pendency of our case against him, assign, dispose of, encumber, or otherwise transfer his direct or indirect interest(s) in the 40 Meadow Lane property. We reserve all rights."

34.     DHC failed to respond and, during the week of their silence, formed Ermitage (New York) for Bartolacci.

35.     Absent any response, YH made application to the Court by order to show cause, on March 30, 2021, requesting a temporary restraining order and order of attachment (the "TRO proceeding") with respect to the sale of 40 Meadow Lane.

---

evidentiary hearing that was held in this Court on January 31, 2022.

11

22-01077-jlg   Doc 34-1   Filed 04/21/22   Entered 04/21/22 22:34:30   Exhibit A -
Petition    Pg 12 of 30

36.     A hearing was held on the TRO proceeding on March 31, 2021.

37.     During the March 31, 2021 hearing, the Court was troubled that the money from the sale of an asset valued in excess of $43 million might not be available to satisfy YH's then imminent Judgment (summary judgment arguments were scheduled just days later). To assuage the Court's concerns, Meir, through his counsel, made representations to the Court indicating and assuring that the net sale proceeds would remain available to satisfy any judgment to YH.

38.     Properly relying on counsel for Meir's representations made on behalf of Meir, as officers of the court, the Court denied YH's request for a TRO.

39.     Post-judgment discovery has revealed that counsel for Meir's representations to the Court were misleading. Indeed, post-judgment discovery exposed the fact that, contrary to their representations to the Court, Meir and his attorneys were, at that very moment, assisting Meir's efforts to transfer the net sale proceeds to Bartolacci and Ermitage.

40.     Despite counsel for Meir having represented on the record on March 31, 2021, that the sale of the 40 Meadow Lane Property was only "a contemplated sale [and that t]here is no specific timetable established yet," the truth was that Meir and his attorneys had attempted to close the sale transaction (together with the sale of its $1 million in personal property contents) that *very same day* but were unsuccessful in doing so, including because they had provided the title company and the purchaser's

attorney with contradictory information about the ownership of 40 Meadow Lane.

41.    Counsel for Meir apparently admitted to counsel for co-Defendant HFZ the very next day that the timing of the sale was no coincidence. On April 2, 2021, counsel for HFZ laid bare Meir's counsel's admission as to Meir's fraudulent scheme in an email: "You also admitted that you need to close by Monday, not because the buyer will walk, but because your client wants to take the money before a judgement is entered against him on Tuesday in the YH matter. Intent to defraud creditors?  Aiding and abetting?"

42.    The rushed closing of the sale of 40 Meadow Lane was for the express purpose of engaging in a series of fraudulent and voidable transactions made with the intent to hinder, delay, and defraud YH as Meir's creditor. Yet, despite counsel for HFZ's accurate warning to Meir's counsel that their involvement was aiding and abetting Meir's plan to defraud YH, they still marched forward to close the sale of the 40 Meadow Lane on April 5, 2021, while YH's attachment motion was still pending, for a grand total of $44,009,900. Meir, Bartolacci and their joint counsel then took steps, supposedly justified by the sham second operating agreement, to conceal and secret away Meir's assets, to avoid Meir's guaranty obligation and the imminent Judgment against him. Counsel for Meir provided this assistance to Meir even though they knew that Meir had only days earlier disavowed the sham operating agreement, whereupon they represented to the title insurance company that any reference to

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/10/2022

22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 14 of 30

Bartolacci having an interest in EZL, EAM or 40 Meadow Lane was erroneous, and, at the same time, they assisted Meir in executing an indemnification agreement and tax verification forms as sole beneficial owner of 40 Meadow Lane.

**Meir's Fraudulent and Voidable Transfers to Bartolacci and Ermitage**

43.     Meir and his counsel conspired to pay net sale proceeds of the 40 Meadow Lane closing directly to Bartolacci and Ermitage (plus an unusually large payment to DHC) in order to quickly dissipate such funds and avoid Meir's guaranty obligation, and thereby obstruct and frustrate YH's efforts to collect its imminent judgment.

44.     Meir's planned fraudulent distribution scheme, which purposefully bypassed EAM's and EZL's corporate formalities, was so unusual that purchaser's counsel and the title company did not want to be involved in what appeared to be a direct attempt to deceive YH. The title company and purchaser's counsel therefore demanded that all net sale proceeds be made directly to EAM, as the Seller, or DHC, as Escrow Agent, having "assum[ed] some illegitimate purpose for these payments…"

45.     However, Meir and his attorneys insisted that payments be made directly to Bartolacci and Ermitage, based on Meir's claimed sole right to direct such payments.

46.     To protect against their potential liability to YH for actively participating in fraudulent distributions to avoid the guaranty, the title company required that Meir

14

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 1
22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
RECEIVED NYSCEF: 02/10/2022
Petition    Pg 15 of 30

execute, at closing, an Indemnity and Escrow Agreement escrowing $300,000 for any "Future Actions" by YH as against the title underwriter, AmTrust Title Insurance Company, and its title agent, Advantage Title Agency, Inc. [4]

47.    Having appeased the title company and the purchaser's counsel, Meir then initiated, on April 5, 2021, the first of several fraudulent and voidable transactions to Bartolacci and Ermitage, amounting to nearly $13 million.

48.    Prior to the April 5, 2021 distributions described below, 100% of the proceeds from the sale of 40 Meadow Lane belonged to Meir, and were being held by the title insurance company on his behalf prior to the distributions made at his direction.

49.    *First*, on April 5, 2021, out of the net sale proceeds, Meir directed that the purchaser wire-transfer the sum of $2,000,000 directly to Ermitage, which had no

---

[4] The Indemnity and Escrow Agreement, dated April 5, 2021, the date of the closing, renders clear that everyone recognized, at that time, that the payments outside EAM's corporate formalities were for the express purpose of avoiding claims by YH and that it may place a "cloud" on title to the 40 Meadow Lane Property:  "WHEREAS, YH LEX ESTATES LLC has filed an action in the Supreme Court of the State of New York, County of New York, Index NO. 655980/2020, against Indemnitor [Nir Meir], Ziel Feldman and HFZ CAPITAL GROUP, LLC ("Action"); WHEREAS, Indemnitees are concerned that there could be future legal actions arising from the Action and any other future legal actions related or unrelated to the Action commenced by parties with business dealings with Indemnitor (collectively, "Future Actions"); WHEREAS, AmTrust and Agent have been asked to provide title insurance to Purchaser and are willing to provide such title insurance and to issue an owner's title policy ("Title Policy") to Purchaser free and clear of any exception in respect of any rights or claims arising from the Action and Future Actions affecting title to the

22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 16 of 30

right, title or interest in or to EAM or its Managing Member, EZL, or 40 Meadow
Lane.

50.    Neither Meir, nor EAM, nor EZL received any economic value from
Ermitage in exchange for this $2,000,000 cash distribution to Ermitage.

51.    Ermitage, which was then an unfunded New York limited liability
company, had nothing to give Meir in exchange, since DHC had formed it on March
26, 2021, using DHC's New York office address as its business address.

52.    Ultimately, Ermitage was merged into the Florida successor entity, as
part of Meir and Bartolacci's fraud scheme and has provided a conduit for Meir and
Bartolacci to hide the remaining proceeds of the sale of 40 Meadow Lane.

53.    Thus, the wire transfer to Ermitage of $2,000,000 is a fraudulent and
voidable transaction.

54.    *Second*, on April 5, 2021, out of the net sale proceeds, Meir also directed
that the purchaser wire-transfer the sum of $10,587,387.52 directly to Bartolacci, who
had no right, title, or interest in or to EAM, EZL or 40 Meadow Lane. In fact, Meir and
DHC had expressly represented to the title company, purchaser's counsel, and the
Suffolk County Supreme Court that Bartolacci was not an owner of 40 Meadow Lane.

55.    Meir, EAM, and EZL did not receive any economic value from
Bartolacci in exchange for this cash distribution to her.

---

Property provided that Indemnitor shall execute and deliver this Agreement to

16

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/10/2022

22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 17 of 30

56.     Thus, Meir's wire transfer to Bartolacci of $10,587,387.52 is a fraudulent and voidable transaction.

57.     Rather than immediately disclosing the foregoing distributions of nearly $13 million to Bartolacci and Ermitage, Meir's counsel misled the Court, in furtherance of Meir's scheme to evade his debt to YH, when, one week after the closing, during another hearing before the Court on April 12, 2021 as well as in a brief filed that day, DHC again falsely indicated to the Court that the net sale proceeds had not been disposed of and that there had been no attempt to shield them from YH.

**Bartolacci's and Ermitage's Role in the Disappearance of the Closing Proceeds**

58.     While record title ownership required that the 40 Meadow Lane net sale proceeds be distributed 95% to EAM and 5% to Meir, EAM was entirely bypassed. Rather, on April 5, 2021, out of the 40 Meadow Lane net sale proceeds, Meir fraudulently transferred $10,587,387.52 directly to Bartolacci and Meir fraudulently transferred $2,000,000 directly to Ermitage.

59.     The $10,587,387.52 in funds that Meir fraudulently transferred to Bartolacci were wired to Bartolacci's JPMorgan Chase Bank, N.A. ("Chase") Account ending in -5760. From there, Bartolacci then dissipated the funds down to $605.47 with the intent to hinder and defraud YH.

60.     The $2,000,000 in funds that Meir fraudulently transferred to Bartolacci

Indemnitees."

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/10/2022
22-01077-jlg   Doc 34-1   Filed 04/21/22   Entered 04/21/22 22:34:30   Exhibit A -
Petition   Pg 18 of 30

were wired to Ermitage's Chase Account ending in -0193. Meir delayed Chase's production of records from this account by filing a baseless motion to quash, which was denied on February 3, 2022.

61. Despite Meir, Bartolacci and DHC's refusal to reveal the full details of the dissipation of the $12,587,387.52 through their efforts to block all post-judgment discovery, YH has successfully traced the following funds:

- On April 28, 2021, Bartolacci transferred away the sum of $1,625,000 to an attorney trust account *in Florida* to fund the prepayment of rent for Meir's and her Miami Beach luxury rental property;

- Bartolacci transferred approximately $5 million to the Ermitage Chase Account ending in -0193 and, from there, transferred approximately $3.75 million to an account in the name of Ermitage at Morgan Stanley; and

- Ermitage transferred at least $3.7 million back to Meir after April 2021.

62. Nonetheless, almost $5.7 million of funds that passed through Ermitage are unaccounted for. YH reasonably infers that Ermitage was created to serve as the primary pipeline for the concealment and use of the fraudulently transferred funds. Upon information and belief, in a perpetuation of the Ermitage charade, Meir and

18

Bartolacci have now caused the remaining balance in the Ermitage accounts to be transferred to Applied Bank, a bank in Delaware that appears to advertise itself as a haven for asset protection schemes.

63.     In advance of summary judgment and the Judgment, DHC initially formed Ermitage as a New York limited liability company on March 26, 2021, which was only ten days prior to the 40 Meadow Lane closing and only five days before March 31, 2021 TRO hearing in the underlying case.

64.     However, on July 8, 2021, Judgment was entered, DHC then formed a second Ermitage entity, as a Florida limited liability company. And, on July 29, 2021, DHC then merged Ermitage (New York) into Ermitage (Florida), thereby enabling Meir and Bartolacci to secretly move all of Ermitage's assets outside the jurisdiction and evade the Judgment.

65.     Worse still, DHC formed Ermitage (Florida) and merged all its assets into this Florida entity shortly after counsel for Meir made a separate representation, as an officer of the Court, to a Justice of the Appellate Court, that there would be no transfers from *any* Meir accounts, including any accounts under Meir's custody or control.

66.     This cycle of transactions—from the net sale proceeds of the 40 Meadow Lane to Bartolacci and Ermitage, and then in some instances back to Meir for his own use, all under concealment—lacked economic substance. Rather, these transfers were

22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 20 of 30

designed to avoid having EAM transfer the 40 Meadow Lane Property net sale proceeds directly to their true beneficial owner, Meir, but to still permit Meir to use the net sale proceeds.

### Meir's Voidable Conveyances of Luxury Automobiles

67.    As more fully detailed below, after the decision on the summary judgment motion on April 12, 2021, and before the Clerk's entry of the Judgment on June 15, 2021, Meir engaged in other fraudulent and, thus, voidable transactions with respect to transferring the titles of his fleet of luxury cars to Bartolacci and Ermitage.

68.    Once Judgment was entered, Meir and Bartolacci attempted to secretly auction away their luxury cars through eBay and small New Jersey- and California-based car brokers in order to further dissipate their assets.

69.    The facts of Meir's fraudulent conveyances with respect to his fleet of luxury vehicles have been fully documented in Motion Sequence No. 18, NYDCEF Doc. Nos. 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530 and 591-592, which are incorporated herein by reference, as follows:

- 2010 blue convertible Aston Martin (the "Aston Martin") (registered to Meir): Without a shred of proof, Meir claims to have encumbered the vehicle up to 100% of its value.

- 2001 Mercedes-Benz G500 Cabriolet: Purchased by Meir in September 2020, Meir has disclosed a facially invalid, undated document purporting to show "reassignment of ownership" to Bartolacci.

20

22-01077-jlg   Doc 34-1   Filed 04/21/22   Entered 04/21/22 22:34:30   Exhibit A -
Petition   Pg 21 of 30

- <u>2018 Porsche GT2</u>: Meir purchased the Porsche on the day of the closing of the sale of 40 Meadow Lane and then purportedly re-registered the vehicle to Ermitage, for no consideration, on May 14, 2021.

- <u>2019 Porsche 911</u>: Meir re-registered this vehicle in the name of Ermitage, for no consideration, on May 14, 2021.

- <u>2021 Mercedes-Benz GLS63 AMG</u>: This vehicle was purchased in the name of Bartolacci from the 40 Meadow Lane net sale proceeds that were fraudulently conveyed to Bartolacci.

**<u>FIRST CAUSE OF ACTION</u>**
(Turnover under CPLR § 5225(a) against Meir)

70. YH repeats and realleges the foregoing allegations as if fully set forth herein.

71. Meir is the sole beneficial owner of EAM and EZL.

72. The aggregate current fair market value of EAM and EZL is currently less than the Judgment.

73. Meir executed an agreement with the title company for the closing directing that $300,000 of the 40 Meadow Lane net sale proceeds be held pursuant to the Indemnity and Escrow Agreement, dated April 5, 2021, as a specific fund for Future Actions by YH against the title company; those funds are scheduled to be released one year after the agreement.

74. Meir is the title owner of a 2010 blue convertible Aston Martin.

21

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
INDEX NO. 151267/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/10/2022
22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 22 of 30

75.    By reason of the foregoing, YH is entitled to judgment and order declaring that it holds all right, title and interest in EAM and EZL as well as the $300,000 currently held in escrow with the title company, and to the Aston Martin automobile, and Meir shall immediately deliver to YH any and all other funds in accounts belonging to EAM and EZL, and all other tangible and intangible assets of EAM and EZL, and shall provide an accounting thereof, and shall immediately assign all right, title and interest to the $300,000 escrow deposit and agreement to YH and, as such, relinquishing the payment of such funds to him, and shall execute the necessary transfer of ownership forms, and pay all applicable title transfer fees and taxes in connection with the Aston Martin.

## SECOND CAUSE OF ACTION
(Turnover under CPLR § 5225(b) and DCL §§273 and 274)

76.    YH repeats and realleges the foregoing allegations as if fully set forth herein.

77.    DCL Section 273 (Transfers or obligations voidable as to present or future creditor) provides that conveyances and obligations incurred with the actual intent to hinder, delay, or defraud a creditor or without receiving a reasonably equivalent value in exchange for the transactions is voidable as to both present and future creditors.

78.    DCL § 274 (Transfers or obligations voidable as to present creditor) provides that a transfer made by a debtor is voidable as to a creditor whose claim arose

FILED: NEW YORK COUNTY CLERK 02/10/2022 12:46 PM
NYSCEF DOC. NO. 1

INDEX NO. 151267/2022
RECEIVED NYSCEF: 02/10/2022

22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 23 of 30

before the transfer and the transfer was made without receiving reasonably equivalent value or was made to an insider.

79.    Each of the transfers of cash from the net sale proceeds of the sale of 40 Meadow Lane to Bartolacci and Ermitage were made with the actual intent to hinder, delay, or defraud YH.

80.    Each of the foregoing conveyances were also made without the debtor receiving a reasonably equivalent value in exchange for the transactions and is therefore voidable.

81.    YH's claim against Meir arose prior to the transfers to Bartolacci and Ermitage, described herein; each transfer was made without Meir receiving reasonably equivalent value; each transfer was made to an insider; and therefore each transfer is voidable.

82.    Each of the foregoing transfers were made with the actual intent to hinder, delay, or defraud YH, as demonstrated by the numerous badges of fraud (per DCL § 273(b)) including, but not limited to, the following:

- The transfers were concealed from YH.

- The transfers were made after the debt from Meir to YH was incurred and were made after YH sued Meir.

- The transfers were of substantially all of Meir's assets.

- The debtor and the transferees fled the jurisdiction and removed concealed assets from the jurisdiction.

- The value of the consideration received by the debtor from the transferees was not reasonably equivalent to the value of the assets transferred by the debtor to the transferees.

- The debtor was insolvent or became insolvent shortly after the transfers were made.

83. Bartolacci and Ermitage knowingly received the foregoing transfers in willful and wanton derogation of YH's rights as a creditor of Meir.

84. By reason of the foregoing, YH is entitled to a judgment and order setting aside the foregoing transfers as voidable fraudulent conveyances, and/or a judgment and order directing Bartolacci and Ermitage to immediately pay to YH the total sum $12,587,387.52, including an order directing Ermitage to pay to YH all sums received directly from the closing of the sale of 40 Meadow Lane, and all sums received indirectly from Bartolacci, or to deliver to YH the value of the assets fraudulently conveyed, plus profits thereon in an amount to be determined by the Court, plus interest from the date of each transfer, together with punitive damages.

### THIRD CAUSE OF ACTION
(Turnover under CPLR § 5225(b) and DCL §§273 and 274)

85. YH repeats and realleges the foregoing allegations as if fully set forth herein.

24

86.    Each of the transfers of title to the following luxury vehicles, as described in Paragraph 69 above, were made with the actual intent to hinder, delay, or defraud YH:

- 2001 Mercedes-Benz G500 Cabriolet
- 2018 Porsche GT2
- 2019 Porsche 911
- 2021 Mercedes-Benz GLS63 AMG

87.    Each of the foregoing conveyances were also made without the debtor receiving a reasonably equivalent value in exchange for the transactions and is therefore voidable.

88.    The claim of YH against Meir arose prior to the transfers to Bartolacci and Ermitage, described herein; each transfer was made without Meir receiving reasonably equivalent value; each transfer was made to an insider; and therefore each transfer is voidable.

89.    Each of the foregoing transfers were made with the actual intent to hinder, delay, or defraud YH, as demonstrated by the numerous badges of fraud including, but not limited to, the following:

- The transfers were concealed from YH.

- The transfers were made after the debt from Meir to YH was incurred and were made after YH sued Meir.

- The transfers were of substantially all of Meir's assets.

22-01077-jlg    Doc 34-1    Filed 04/21/22    Entered 04/21/22 22:34:30    Exhibit A -
Petition    Pg 26 of 30

- The debtor and the transferees fled the jurisdiction and removed concealed assets from the jurisdiction

- The value of the consideration received by the debtor from the transferees was not reasonably equivalent to the value of the assets transferred by the debtor to the transferees.

- The debtor was insolvent or became insolvent shortly after the transfers were made.

90.     Bartolacci and Ermitage knowingly received the transfers in willful and wanton derogation of YH's rights as a creditor of Meir.

91.     By reason of the foregoing, YH is entitled to a judgment and order setting aside the foregoing transfers as voidable fraudulent conveyances, and/or a judgment and order directing Bartolacci and Ermitage to deliver to YH the value of the assets fraudulently conveyed, plus profits thereon, in an amount to be determined by the Court, plus interest from the date of each transfer, together with punitive damages.

## **FOURTH CAUSE OF ACTION**
### (Under DCL §276)

92.     YH repeats and realleges the foregoing allegations as if fully set forth herein.

93.     Meir's conveyances were made by the debtor, and received by the transferees Bartolacci and Ermitage, with actual intent to hinder, delay or defraud Meir's creditor YH.

26

22-01077-jlg   Doc 34-1   Filed 04/21/22   Entered 04/21/22 22:34:30   Exhibit A -
Petition   Pg 27 of 30

94.     YH is therefore entitled to an award of attorneys' fees against the Respondents in the enforcement of this action as an additional amount required to satisfy YH's claim and is entitled to judgment therefor against the debtor and the transferees in a sum to be determined by the Court.

## FIFTH CAUSE OF ACTION
(Turnover under CPLR § 5227)

95.     YH repeats and realleges the foregoing allegations as if fully set forth herein.

96.     The Respondents are or will become indebted to YH.

97.     By reason of the foregoing, YH is entitled to a judgment and order directing Respondents to deliver such indebtedness to YH.

## SIXTH CAUSE OF ACTION
(Accounting)

98.     YH repeats and realleges the foregoing allegations as if fully set forth herein.

99.     By reason of the foregoing, YH is entitled to an accounting of the assets received by Bartolacci and Ermitage with respect to all of the foregoing voidable transfers.

## REQUEST FOR RELIEF

WHEREFORE, YH hereby petitions this Court for an Order:

27

a.  Directing Meir to turn over all right, title, and interest in and to EAM and EZL to YH, and to account for the assets and proceeds of sale of any assets of EAM and EZL.

b.  Directing Bartolacci to pay to YH the sum of $12,587,387.52, including the $2,000,000 transferred to Ermitage from the sale of 40 Meadow Lane, including an order directing Ermitage to pay to YH all sums received from the closing of the sale of 40 Meadow Lane directly, and indirectly from Bartolacci, with interest.

c.  Setting aside the transfers described in this Petition.

d.  Directing Meir, Bartolacci and/or Ermitage to deliver to YH the automobiles referred to in the Third Cause of Action, or, alternatively, to pay the value of the fraudulently conveyed automobiles, plus profits thereon and interest, in an amount to be determined by the Court, plus interest from the date of each transfer.

e.  Directing Bartolacci and Ermitage to deliver to YH their current and future indebtedness to YH.

f.  Granting reasonable attorneys' fees in an amount to be determined by the Court, in accordance with DCL § 276.

g.  Directing an accounting of all assets received by Bartolacci and Ermitage.

28

h.  All the foregoing

of judgment enfo

i.  For such other an

Dated:        New York. New

February 10, 202

## **VERIFICATION**

STATE OF NEW YORK          )
                                                ss.:
COUNTY OF NEW YORK     )

ANDREW W. HEYMANN, being duly sworn, states as follows:

1.       I am the manager of Plaintiff/Judgment Creditor/Petitioner in the above-
captioned action.

2.       I have read the foregoing Verified Petition and am familiar with its
contents. The contents of the Verified Petition are true to my own knowledge, except as to
matters therein stated to be alleged on information and belief and as to those matters I believe it
to be true.

_____
Andrew W. Heymann

Subscribed and sworn to before me
this 10th day of February, 2022

_____
           Notary Public

My commission expires:

ROBERT A. LADISLAW
Notary Public, State of New York
No. 02LA6157534
Qualified in New York County
My Commission Expires December 11, 20_22_

30